UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | * |
| | * |
| APPALACHIAN OIL COMPANY, INC. | *   CASE NO. 2:09-bk-50259 |
| | *   Chapter 11 |
| Debtor | * |

**SECOND MOTION FOR INTERIM AND FINAL ORDERS
(a) AUTHORIZING THE DEBTOR'S LIMITED USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363; (b) AUTHORIZING THE DEBTOR TO
PAY CERTAIN PRE-PETITION WAGES; (c) TO MAKE DEDUCTIONS AND
WITHHOLDINGS FROM EMPLOYEE PAYCHECKS; (d) AUTHORIZING
THE DEBTOR TO UTILIZE ITS CURRENT PAYROLL ACCOUNT TO MAKE
SUCH PAYMENTS; AND (e) AUTHORIZING AND DIRECTING THE BANK
ON WHICH THE CHECKS ARE DRAWN TO PAY ALL SUCH CHECKS
MADE BY THE DEBTOR RELATIVE TO SUCH PAYMENTS**

The Debtor, Appalachian Oil Company, Inc. ("APPCO"), pursuant to 11 U.S.C. § 105(a), § 363(b)(1), § 363(c)(2) and Fed. Bankr. R. 6003, moves for interim and final orders authorizing APPCO's: (a) limited use of cash collateral for the purpose of (i) payment of certain pre-petition and post-petition wages, and (ii) payment of certain recurring nominal expenses; (b) to utilize its current payroll account to make such payments; and (c) authorizing the bank on which the checks are drawn to pay all such checks made by the Debtor relative to such payments.

In support of this motion, the Debtor states as follows:

1. The Debtor filed a voluntary petition in bankruptcy on February 9, 2009. It is currently operating its business and managing its properties as debtor-in-possession. No

request for a trustee or examiner has been made and no committees have been designated or appointed.

2. The Debtor is in the business of a petroleum jobber. It also owns and/or operates fifty eight (58) convenience markets located in Tennessee, Virginia and Kentucky. The Debtor's fifty-eight (58) convenience stores continue to be open and operational post-petition.

3. On September 17, 2007, the Debtor entered into a Loan and Security Agreement (the "Loan Agreement") with Greystone Credit II, LLC ("Greystone Credit"), as agent and lender, providing for a revolving line of credit in the maximum amount of $20,000,000, less certain amounts advanced under a Loan and Security Agreement dated December 29, 2006 among Greystone Credit and certain affiliates of the Debtor. The Loan Agreement also provided for term loans of up to $5,200,000. The Loan Agreement is secured by substantially all the assets of the Debtor. The outstanding principal balance under the Loan and Security Agreement was approximately $11,001,828 as of the petition date. The book value of the Debtor's fixed assets on the petition date (exclusive of accounts receivable and inventory) was $12,696,977, thus the Debtor contends that Greystone Credit is fully secured.

4. Currently, the Debtor employs 499 people, 63 of whom are exempt or salaried employees, and 436 of whom are non-exempt or hourly employees. The non-exempt employees include cashiers and workers in the Debtor's convenience markets and these employees are paid on a weekly basis with payment due on February 20, 2009, for the pay period of February 8, 2009 through February 15, 2009. The Debtor seeks the use of approximately $145,390 of cash collateral to pay the one (1) day of pre-petition wages and six (6) days of post-petition wages to this portion of the Debtor's hourly employees. Thus, one day of this pay period represents pre-petition wages, while the balance of this pay period represents

post-petition wages. Of the Debtor's employees, 63 are paid on a bi-weekly basis. These are store level hourly workers, salaried store managers and administrative staff that are not officers of the Debtor. The administrative staff includes accounting clerks, maintenance personnel, transportation employees, IT staff, and fuel oil division staff. The Debtor seeks to use $71,232.30 of cash collateral to pay these employees for the pay period February 2, 2009 to February 15, 2009. This represents 7 days of pre-petition wages and 7 days of post-petition wages. The employees for whom wage payments are being sought by this motion are still employed by the company and have not resigned or been terminated. In addition, approximately $30,000 of the payroll will be reimbursed by a third party, Crescent Fuel, Inc., as certain APPCO employees perform administrative functions for Crescent. Crescent has the ability to immediately fund the $30,000 for the APPCO employees performing services on its behalf. Further, this pay request represents $19,976.16 of wages for personal time off accrued during the year 2008 for persons still employed by the Debtor. If this request is not approved by the Court, then the checks for the persons receiving personal time off will be voided and then re-issued, less the payment for personal time off.

5.  The Debtor has certain recurring nominal expenses in the operation of its convenience stores. These expenses include postage, routine maintenance, grocery items for in-store delis and other nominal expenses. Debtor seeks approval for the use of cash collateral for payment of these expenses not to exceed $500 for any one item and not to exceed a collective amount of $10,000 for the weeks ending February 15, 2009; February 22, 2009; and March 1, 2009. The Debtor does not believe these expenses to be material in the context of its operations or the overall credit relationship with Greystone Credit.

6.  On February 12, 2009, the Debtor filed a Motion For Interim and Final Orders (a) Authorizing the Debtor's Limited Use of Cash Collateral Pursuant to 11 U.S.C. § 363;

(b) Authorizing the Debtor to Pay Certain Pre-Petition Wages, Salaries and Other Compensation; (c) To Make Deductions and Withholdings From Employee Paychecks; (d) Authorizing the Debtor to Utilize Its Current Payroll Account to Make Such Payments; and (e) Authorizing and Directing the Bank On Which The Checks Are Drawn To Pay All Such Checks Made by the Debtor Relative to Such Payments. [Document No. 13]. After a hearing held on February 13, 2009, the Court granted the motion authorizing the Debtor to use cash collateral to pay $75,245.15 in pre-petition wages to the Debtor's hourly employees and to pay $57,489.72 in pre-petition and post-petition wages to the Debtor's salaried employees. [Document No. 19]. As adequate protection for this use of cash collateral, Greystone Credit was granted "a replacement, post-petition security interest in and lien upon all of the Debtor's assets of the same type in which Greystone holds a pre-petition lien or security interest to the extent that the Debtor's use of cash collateral results in any decrease following the petition date, in the value of the collateral securing Greystone's claims, with such replacement lien having the same validity as Greystone's liens and security interests in pre-petition collateral." [Id.] (the "Post-Petition Lien").

7. The Debtor maintains a payroll account at Branch Banking and Trust Company ("BB&T") (the "Payroll Account") which has already been funded to meet the Debtor's pre-petition payroll obligations described above. Payment to the employees is made by check delivered to each employee or sent by overnight courier to the respective convenience stores and then delivered to the employees If this motion is granted, the Debtor will not pay any employee more than $10,950.00 including the amounts paid to employees on February 13, 2009. See 11 U.S.C. § 507(a)(3).

8. During each pay period, the Debtor routinely deducts certain amounts from paychecks including, without limitation, (a) garnishments, child support, and similar deductions,

(b) group health and dental insurance as selected by the employees (collectively the "Deductions"), and forwards those amounts to various third party recipients. Further, the Debtor is required by law to withhold from their employee's wages amounts related to federal, state and local taxes, social security and Medicare taxes for remittance to the appropriate federal, state or local taxing authorities. The Debtor must also pay state and unemployment insurance based on a percentage of gross payroll (collectively with the withheld amounts the "Payroll Taxes").

9. The monies on deposit in the Payroll Account to be used to fund the requested payroll constitutes "cash collateral" within the meaning of 11 U.S.C. § 363(a). The monies the Debtor seeks to use to pay the recurring nominal expenses not to exceed $10,000 per week also constitute "cash collateral" within the meaning of 11 U.S.C. § 363(a). Under 11 U.S.C. § 363(c)(2), the Debtor may not use cash collateral unless each entity with an interest in the cash collateral consents, or the court, after notice and hearing, authorizes such use in accordance with Section 363 of the Bankruptcy Code. Greystone Credit, as the Debtor's secured lender, has an interest in the proceeds of the Payroll Account and the $10,000 of requested monies for weekly expenses, and the Debtor does not currently know whether Greystone Credit will authorize the use of such cash collateral for the purposes requested in this motion. However, the Debtor avers that the Post-petition Lien heretofore granted by the Court to Greystone Credit constitutes adequate protection for the Debtor's uses of the cash collateral requested in this motion in accordance with 11 U.S.C. § 363(e).

10. The Debtor seeks to continue to honor its employee wages and benefit obligations to ensure the continued operation of Debtor's business and to maintain the morale of its employees, many of whom would suffer extreme personal hardship and financial difficulty if not paid. Indeed, the Debtor believes without the requested relief, its hourly employees will seek alternate employment opportunities. This would deplete the Debtor's workforce, hindering

5

the ability to service customers and diminishing the confidence of its creditors of the Debtor's ability to reorganize. This concern likewise holds true if the Debtor is unable to honor its obligation for the monies due for personal time off for current employees.

11. The Debtor maintains the Payroll Account and other operational accounts at BB&T. The Debtor is in the process of opening new DIP accounts at BB&T, but such process has not been completed. However, undue burden and hardship would be imposed on the Debtor if it was unable to utilize the Payroll Account to fund the employee wages for the pay periods set forth in this motion.

12. The requested relief is well within the scope of the authority contemplated by 11 .S.C. § 105(a), which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." Courts have frequently applied Section 105(a) to authorize substantially similar relief whether the debtor has a large workforce that is important to the preservation of its business. See In re Chateaugary Corp., 80 B.R. 279, 287 (S.D. N.Y. 1987); In re Gulf Air, Inc., 112 B.R. 152, 154 (Bankr. W.D. La.); In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D. N.Y.).

13. The Court may also grant the relief requested herein pursuant to Section 363 of the Bankruptcy Code which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize the payment of certain pre-petition claims. See In re Ionosphere Clubs, Inc., 98 B.R. at 175. The Debtor has articulated a business justification for this request in that the failure to pay the days of pre-petition wages sought by this motion, as well as the post-petition wages, would have a material adverse impact on the day-to-day operations of the Debtor's business. In addition, the $10,000 in weekly

expenses are nominal in nature and minimal in comparison to the cost of store operations under normal business conditions and in light of the total indebtedness to Greystone.

14. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a pre-petition claim within twenty (20) days of the petition date if the relief is necessary to avoid immediate and irreparable harm. The payment of the days of employee pre-petition wages in accordance with the terms of this motion is not only necessary for the Debtor's continued operation but is also critical to the survival of the Debtor's business. The business of the Debtor depends on the operation of its workforce. The Debtor also believes in its sound business judgment that continuation of their positive relationship with its hourly employees is imperative to their continued operation and greatly increases the likelihood of a successful reorganization. The Debtor further believes that the request for $10,000 per week for nominal expenses is reasonable in light of the facts and circumstances of this case and are of such an amount they should be approved without the necessity of an itemized budget.

**WHEREFORE,** the Debtor requests that the Court enter interim and final orders: (a) authorizing the Debtor to pay the pre-petition wages and post-petition wages requested herein from the Payroll Account including the $19,976.16 in personal time off for existing APPCO employees; (b) to make the Deductions from the employee paychecks; (c) to make withholdings from the employee paychecks for Payroll Taxes; (d) authorizing and directing the bank on which the payroll checks are drawn to receive, process, honor and pay all such checks presented for payment; (e) to use up to $10,000 for the weeks ending February 16, 2009; February 22, 2009 and March 1, 2009, to pay recurring nominal expenses for operations of its convenience stores with no expenditure for a single item exceeding $500.00 absent the approval of Greystone Credit; and (f) granting such other further relief as is just and proper.

**HUNTER, SMITH & DAVIS, LLP**

By:    */s/Mark S. Dessauer*
       Mark S. Dessauer, Esq.
       TN BPR NO. 010421
       Attorney for Debtor
       Post Office Box 3740
       Kingsport, Tennessee 37664
       (423) 378-8840; Fax: (423) 378-8801

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 19, 2009 the **(1) Second Motion For Interim and Final Orders (a) Authorizing the Debtor's Limited Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (b) Authorizing the Debtor to Pay Certain Pre-Petition Wages; (c) To Make Deductions and Withholdings From Employee Paychecks; (d) Authorizing the Debtor to Utilize Its Current Payroll Account to Make Such Payments; and (e) Authorizing and Directing the Bank On Which The Checks Are Drawn To Pay All Such Checks Made by the Debtor Relative to Such Payments; (2) Notice of Hearing; and (3) Proposed Order** were filed electronically. All parties on the attached Service List will receive copies of this document. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties, if any, have been served by hand delivery, overnight delivery, facsimile transmission, or by mailing a copy of same by United States Mail, postage prepaid.

**HUNTER, SMITH & DAVIS, LLP**

*/s/ Mark S. Dessauer*
Mark S. Dessauer

DESSAUER: A-B
APPALACHIAN OIL
APPCO.85049

8

Re: APPALACHIAN OIL COMPANY, INC., Case No.: 2:09-bk-50259

## CREDITOR MATRIX

Appalachian Oil Company, Inc.
P.O. Box 1500
Blountville, TN 37617-1500

LP Shanks
P.O. Box 1068
Crossville, TN 38557

Western Union
125 Liverpool Drive
Madison, AL 35758

Valero Marketing & Supply Co.
P.O. Box 500
San Antonio, TX 78292-0500

BP Products North America, Inc.
c/o James S. Carr, Esq. and
Jason R. Adams, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Management Properties
c/o Gregory C. Logue, Esq.
Woolf, McClane, Bright Allen &
Carpenter, PLLC
900 Riverview Tower
900 S. Gay Street
Knoxville, TN 37902

Amoco/BP
P.O. Box 460849
Houston, TX 77056

Conoco-Phillips
Box 75201
Charlotte, NC 28275

B & B Distributors
P.O. Box 276
Staffordsville, KY 41256

Crescent Oil Company, Inc.
P.O. Box 6667
Independence, KS 67301

Y A Landholdings, LLC
101 Hudson Street, Suite 3700
Jersey City, NJ 07302

Pepsi-Cola Company
P.O. Box 75948
Chicago, IL 60675-5693

Citgo Petroleum Corp.
P.O. Box 3758
Tulsa, OK 74136

American Management Corp.
P.O. Box 2020
Conway, AZ 72033

Ryder Transportation Services
P.O. Box 96723
Chicago, IL 60693

Marathon Ashland Petroleum, LLC
539 S. Main St.
Findlay, Ohio 45840

Regal Petroleum Terminal
P.O. Box 52975
Knoxville, TN 37950

Pet Dairy
Box 60498
Charlotte, NC 28260-0498

Coca-Cola Bottling Co.
P.O. Box 751356
Charlotte, NC 28275-1356

Frito-Lay #2
P.O. Box 643103
Pittsburg, PA 15264-3103

Royal Cup Coffee, Inc.
P.O. Box 170971
Birmingham, AL 35217

Brown Food Service, Inc.
P.O. Box 690
500 East Clayton Lane
Louisa, KY 41230

Greystone Credit II, LLC
c/o Glenn B. Rose, Esq.
Harwell Howard Hyne Gabbert &
Manner, P.C.
315 Deaderick St., Suite 1800
Nashville, TN 37238

Greystone Credit II, LLC
Craig V. Gabbert, Jr., Esq.
Harwell Howard Hyne Gabbert &
Manner, P.C.
315 Deaderick St., Suite 1800
Nashville, TN 37238

Patricia Foster, Esq.
Attorney for the U. S. Trustee
800 Market Street
Suite 114, Howard Baker U. S. Courthouse
Knoxville, Tennessee 37902

DESSAUER: A-B
APPALACHIAN OIL
APPCO.85049

9