IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

IN RE:                                      )
                                            )
APPALACHIAN OIL COMPANY, INC.,              )        Case No. 2:09-50259
                                            )        Chapter 11
        Debtor.                             )
                                            )

**OBJECTION FILED BY GREYSTONE CREDIT II, LLC TO THE
THIRD MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE
DEBTOR'S LIMITED USE OF CASH COLLATERAL**

COMES NOW, Greystone Credit II, LLC ("Greystone"), by and through counsel, and hereby objects to the Debtor's Third Motion for Interim and Final Orders Authorizing the Debtor's Limited Use of Cash Collateral (the "Motion"). Among the grounds for its objection, Greystone states:

1.      This case was filed on Monday, February 9, 2009. Since the filing of this case almost three weeks ago, ***not one penny's worth*** of new inventory has been purchased or received by the Debtor. Instead, the Debtor has funded two payrolls and other amounts totaling in excess of $350,000 out of Greystone's cash collateral.[1] As alleged adequate protection for the use of this cash collateral, Greystone has been granted replacement liens in the same collateral, and to the same extent, that it held a prepetition lien. However, because the Debtor has not received *any* "replacement collateral," this purported adequate protection has in fact provided *zero* benefit to Greystone. Now, the Debtor seeks to spend another $139,213.93 of Greystone's cash collateral on salary, ***including more than $45,000 for the benefit of employees of Debtor's***

---

[1] Greystone asserts, and Debtor's Motion admits, that Greystone has a security interest in Debtor's cash collateral and that Debtor proposes to use that cash collateral to pay the wages included in the Motion.

411638-1

*parent corporation,* claiming once again that Greystone will be adequately protected by the very same worthless replacement liens.

2. Debtor's most recent motion willfully ignores the fact that post-petition rent and utility deposits on its 58 locations will be due on Monday of next week. Considering these liabilities, the total lack of inventory in the stores, and the fact that additional payroll obligations are accruing every day the stores remain open, the sad truth is that this Debtor has no viable prospect for continuing its business operations, much less reorganizing. Under these unfortunate circumstances, where Debtor has not, and cannot, propose a budget that will generate sufficient funds to pay all administrative expenses as they come due, the Debtor's offer of additional replacement liens as adequate protection is meaningless, and there is simply no legitimate basis to approve the use of cash collateral to pay salaries, *much less more than $45,000 for the benefit of employees of the Debtor's parent corporation*. The motion should be denied.

3. That portion of the motion seeking payments for the benefit of employees of Titan Global Holdings, Inc. ("Titan") is especially inappropriate, given that the Debtor has already paid in connection with its first motion for use of cash collateral, without full and adequate disclosure, more than $35,000 for the benefit of these same Titan employees.

4. On Thursday evening, February 12, Debtor filed its first motion for authority to use cash collateral to pay amounts due to "Debtor's employees" and requested a hearing on February 13. The motion included no itemization of the individuals who would be paid and was not accompanied by any budget showing that Debtor could operate on an on-going basis. The first motion did contain the following representation:

> Currently, the Debtor employs 375 people, 19 of whom are exempt or salaried employees and 356 of which are non-exempt or hourly employees. The exempt employees are due pre-petition wages of $57,489.72 and the 19 non-exempt

411638-1

employees are due pre-petition wages of $75,245.15, for a total of pre-petition compensation due of $132,734.87 (collectively the "Employee Compensation").

(Docket # 13, ¶ 4).

5. Over the objection of Greystone, the Court approved payment of $132,724.87 pursuant to this first motion. Greystone believes that the Court granted the Debtor's motion in reliance on the testimony of Mr. Hensell that a budget would be provided to Greystone early in the week of February 16, 2009 and that the Debtor was in negotiations to obtain debtor-in-possession financing.

6. Despite Mr. Hensell's testimony, no budget was provided to Greystone during the week of February 16, and no debtor-in-possession financing was obtained. The Debtor did provide a list of the individuals paid using Greystone's cash collateral on February 13, 2009. A review of that list indicated that *ten* individuals who were represented in the motion to be *the Debtor's* employees were actually employees of Debtor's parent corporation, Titan, or of other corporations affiliated with Titan. A total of $35,173.17 was paid to these individuals who were really not employees of the Debtor.

7. On Thursday, February 19, the Debtor filed a second emergency motion to use cash collateral to pay salaries and certain other expenses. Greystone did not object to this motion, and pursuant to it, the Debtor spent another $186,622.30 of Greystone's cash collateral.[2]

8. On Wednesday, February 25, the Debtor filed the instant motion, once again seeking a hearing on less than two days' notice. This motion seeks to pay $94,625.07 in salaries for Debtor's true employees, including $24,625.07 for exempt salaried employees. The motion also seeks to pay $45,504.44 for salaries of certain specified employees of Debtor's parent, Titan.

---

[2] In addition, Debtor has informed Greystone that additional amounts of its cash collateral totaling more than $30,000 have been paid to state lottery programs and expended for other purposes.

411638-1

9. Even though this case was filed almost twenty days ago, Debtor's current Motion is still not accompanied by information typically included in connection with motions for the use of cash collateral. Greystone has repeatedly requested a budget reflecting Debtor's anticipated receipts and disbursements during the next week several weeks and for confirmation that this Debtor has a realistic and viable plan to continue operations. Debtor has not yet provided any of that information. Under these circumstances, Greystone does not consent to the use of Cash Collateral as provided for in the Motion.

10. Unlike the Debtor's first motion, the Debtor's current Motion does segregate the amounts that Debtor seeks to pay as salaries for "Titan employees" and admits that more than $45,000 will be used to pay these salaries. Given the precarious financial position of the Debtor and the amount of direct, unpaid "true" liabilities facing the Debtor, there is simply no basis on which this request can be justified.

11. The payments to Titan employees are simply not "actual, necessary costs and expenses of preserving the estate" under section 503(b) of the Bankruptcy Code. *See* 11 U.S.C. Section 503(b)(1)(A). Section 503(b) is to be narrowly construed and the applicant seeking compensation under this section carries "a heavy burden of demonstrating that the costs and fees for which it seeks payment provide an actual benefit to the estate." *In re White Motor Company*, 831 F. 2d 106, 110 (6th Cir. 1987) In order to establish this demonstrable benefit, the 6th Circuit has held that the benefit must have "directly and substantially benefitted the estate." *Id.*

12. Of particular relevance to this case, courts have expressly held that the benefit must run to the debtor and not to a corporate affiliate of the debtor. *In re Bernard Technologies,* 342 B. R. 174, 177-180 (Bankr. D. Del. 2006). In *Bernard*, the court ruled that it could not "ignore the Debtor's and Subsidiary's separate existence and conclude that services performed

for one necessarily benefitted the other." The Court further reasoned that courts should respect the "separateness" of corporate affiliates in making a benefit analysis under Section 503(b)(1)(A) and that the "indirect benefits" provided by the parent/subsidiary relationship were too speculative and "attenuated to support a §503(b)(1)(A) claim." *Id.* at 180 (quoting *In re Owens Corning,* 419 F. 3d 195, 211 (3d Cir. 2005)).

13. In this case, Titan has multiple subsidiaries, including three subsidiaries that have filed separate bankruptcy cases in three separate jurisdictions. Appalachian Oil is one of these three. Titan has not filed bankruptcy, and none of the three subsidiary bankruptcy cases has been consolidated, or even jointly administered.

14. Significantly, Titan's 10Q filed January 20, 2009, emphasizes ***how little*** Titan does for its subsidiaries. It provides:

> Titan Global Holdings (the "Company", "We", "Us", "Our" or "Titan") is a holding company owning subsidiaries engaged in a number of diverse business activities. The most material of these are in the energy and telecommunications industries. We own and are in the process of discontinuing operations in the electronics manufacturing, and apparel industries. The Company is domiciled in the state of Utah and its corporate headquarters are in Richardson, Texas.
>
> **Our operating subsidiaries are managed in a decentralized fashion. Our corporate headquarters provides very limited support to our operating *subsidiaries* and there is minimal involvement by the corporate headquarters in running the day-to-day business activities of our operating units.** Our corporate headquarters participates and is ultimately responsible for arranging financing, allocating capital, sourcing senior leadership and influencing the strategic direction of each operating unit.

Form 10Q for quarter ended November 30, 2008, available at www.sec.gov (emphasis added).

15. Debtor's request for a section 503(b)(1)(A) allowance of $45,000 in salary for employees of a holding company, not of the Debtor, does not meet the applicable "benefit" standard under § 503. There is no evidence that the allowance and payment of these sums will actually and directly benefit the Debtor. Indeed, Titan's own 10Q securities filing states jus the

411638-1

- 5 -

opposite. In the absence of such evidence, the general statements offered in the Motion are nothing more than speculation that does not meet the strict standards of section 503(b)(1)(A). Debtor fails to meet its "heavy burden" that the amount requested will provide direct and actual benefits to the Debtor, and the motion should be denied.[3]

16. Greystone asserts that Debtor cannot establish that there is a reasonable likelihood that it will prevail at the final hearing regarding its use of the cash collateral.

17. Greystone reserves the right to amend its objections at the hearing, given the shortness of notice of this hearing.

WHEREFORE, Greystone respectfully requests the Court to deny Debtor's Motion and to require Debtor to segregate and account for all cash collateral currently in its possession, custody or control, as well as all cash collateral that has been received and/or expended since the filing of this case on Monday, February 9, 2009, and for such other relief as may be just in this cause.

    Respectfully submitted,

    HARWELL HOWARD HYNE
    GABBERT & MANNER, P.C.

    /s/ Glenn B. Rose
    Craig V. Gabbert, Jr.
    Glenn B. Rose
    315 Deaderick Street, Suite 1800
    Nashville, TN 37238
    Telephone: (615) 256-0500
    Facsimile: (615) 251-1059
    Email: cvg@h3gm.com
            gbr@h3gm.com

    and

---

[3] Greystone also notes that Debtor requests payment of these amounts pursuant to an interim order that will be heard on less than two days' notice. Under Bankruptcy Rule 4001(b)(2), at such a preliminary hearing, the "court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Debtor's Motion does not even purport to meet this extremely high standard.

411638-1

        OTTERBURG, STENDLER, HOUSTON
        & ROSEN, P.C.

        Jonathan N. Helfat
        230 Park Avenue
        New York, NY  10169
        Telephone:  (212) 661-9100
        Facsimile:  (212) 682-6104
        Email:  jhelfat@oshr.com
        *Counsel for Greystone Credit II, LLC*

411638-1