IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: ) | |
| ) | |
| APPALACHIAN OIL COMPANY, INC., ) | Case No. 2:09-50259 |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |

**OBJECTION TO SETTING PRELIMINARY HEARING
ON EMERGENCY JOINT MOTION BY THE DEBTOR AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR INTERIM AND FINAL ORDERS APPROVING
TERMS OF POST-PETITION TRADE CREDIT FINANCING BY CRITICAL
VENDORS AND SUBSTANTIVE OBJECTION TO THAT MOTION FILED BY
GREYSTONE CREDIT, II, LLC**

At the hearing on Friday, February 27, 2009 on Debtor's Third Motion for Use of Cash Collateral, this Court indicated, and the Debtor expressly agreed, that no motion for debtor-in-possession financing would be heard on even an interim basis on less than 48-hours' notice to Greystone Credit II, LLC ("Greystone"), the secured creditor that asserts a first priority security interest in substantially all of Debtor's assets.

Despite this express agreement, Debtor now seeks a hearing on such a motion on essentially no notice. For the reasons set forth below, Greystone respectfully requests that no such hearing be conducted tomorrow.

1. The Emergency Joint Motion By The Debtor And Official Committee Of Unsecured Creditors For Interim And Final Orders Approving Terms Of Post-Petition Trade Credit Financing By Critical Vendors (the "Financing Motion") was filed after 4:00 p.m. on March 12, 2009 and requests a preliminary hearing on Friday, March 13, 2009 at 9:00 a.m. This request essentially provides no notice to Greystone or any other creditors. This hearing request

412644-1

flatly contradicts the express agreement of the Debtor made in the presence of the Court during the February 27, 2009 hearing.

2. The Financing Motion relates to only two types of suppliers, fuel vendors and a grocery supplier. For the reasons set forth below, neither type of supplier can justify obtaining the relief requested in the Financing Motion on an emergency basis.

3. No emergency exists for fuel because Debtor has had in place, since February 27, 2009, fuel supply agreements that require no priming of Greystone, but simply grant the supplier a first lien in the express product provided and the proceeds thereof. Given the existence of these agreements, that portion of the Financing Motion relating to fuel suppliers is legally inappropriate and certainly does warrant being heard on no notice.

4. Two weeks ago, when the Court approved these fuel supply agreements, a representative of the Debtor testified that the contracts were "great deals," and these agreements required no priming. Debtor is still free to purchase fuel under the order approving these agreements; thus, there exists no basis for an emergency hearing on no notice to Greystone for alternative fuel suppliers.

5. No emergency exists for groceries because Debtor's representatives also testified at the February 27, 2009 hearing that L.P. Shanks Company was prepared to go forward with a grocery supply arrangement at that time. Debtor has had more than two weeks to file an appropriate motion to proceed with that financing, but has not done so. Debtor's delay and failure to act until Thursday at 4:00 p.m. does not create a legitimate emergency.

6. Conducting the interim hearing on the Financing Motion is also inappropriate because the vendors seek not only to obtain a lien on all unsecured assets and causes of action of

the Debtor, including section 5 causes of action, but also to obtain a first priority priming lien in the amount of $2 million on those assets in which Greystone currently has a first lien.

7. On top of these liens, a condition to the financing is that Debtor be authorized to continue using Greystone's cash collateral. This condition is included because no new money will be supplied by any vendor who seeks these outrageous lien protection terms in exchange for simply providing product pursuant to the Financing Motion.

8. The Financing Motion ignores completely the fact that Debtor has already spent $800,000 in Greystone's cash collateral, that Debtor filed today a 5th motion seeking to spend another $70,000 in cash collateral tomorrow and that the budget attached to the Financing Motion contemplates the use of all the proceeds of the remaining $1.3 million of inventory that was in the stores as of filing, and therefore subject to Greystone's liens. Thus, in addition to seeking a lien on all unencumbered assets of Debtor and a $2 million priming lien, if the Financing Motion is granted, Debtor will also have expended more than $2 million in Greystone cash collateral. When combined, the Debtor and the Financing Motion seek to subordinate Greystone's existing lien position by a total of more than $4 million, yet the only adequate protection offered is junior replacement liens.

9. Under Section 364 of the Bankruptcy Code, such priming can occur only after a hearing to establish that Greystone's interests are adequately protected. If the hearing is conducted tomorrow, Greystone will have no time whatsoever to prepare evidence indicating that its interest cannot be, and are not, adequately protected. Given adequate time, Greystone can easily show that the junior replacement liens offered as adequate protection are woefully inadequate and essentially meaningless.

10. More importantly, under section 364(d)(1) of the Code, a priming lien may be granted only when the trustee or debtor-in-possession is unable to obtain such credit without such a priming lien. In this case, the existence of the already in place PM Fuels and Mountain Express orders for the supply of the fuel conclusively establish that credit is otherwise available. As a matter of law, any effort to prime under these circumstances violates this express requirement of section 364(d)(1) of the Code.

11. The Financing Motion also overreaches greatly through the inclusion of inappropriate benefits to the suppliers and their counsel. These benefits include an allowance of all claims (including section 503(b)(9) administrative claims) of the participating suppliers, a waiver of all chapter 5 causes of action against these entities and budgeted fees for Debtor and Committee professionals totaling $600,000. This last item, if approved, would mean that professionals are being paid prior to their being any assurance that the interests of Greystone are adequately protected. Such a proposal plainly violates section 507(b) of the Code.

12. Under these circumstances, Greystone respectfully submits that any products supplied by Shanks and/or fuel suppliers on an interim basis cannot, and will not, be provided in good faith and that therefore, none of these creditors is entitled to the protections of Section 364(e) of the Code.

13. Given these facts and circumstances, no relief is needed or appropriate with respect to the Financing Motion on an emergency basis. However, Greystone would not object to the entry of an order in favor of Shanks or different fuel vendors identical to the interim order entered with respect to PM Fuels and Mountain Express after the February 27, 2009 hearing. These orders granted those suppliers a first priority lien in only the products supplied and the proceeds thereof. The Debtor and the Committee should not be allowed to have their cake and

eat it, too. They simply cannot on the one hand say that Greystone's security interests and the use of $2 million in cash collateral are adequately protected by junior, subordinated replacement liens, but insist that the proposed suppliers must be given priming liens, liens on unencumbered assets and numerous additional claim benefits.

WHERFORE, Greystone respectfully requests that the Court deny any request by the Debtor or the Committee of Unsecured Creditors to have an interim hearing on the Financing Motion tomorrow, that the Court deny approval of the Financing Motion and that the Court grant Greystone such other and further relief as may be appropriate in this matter.

    Respectfully submitted,

    HARWELL HOWARD HYNE
    GABBERT & MANNER, P.C.

    /s/  Glenn B. Rose
    Craig V. Gabbert, Jr.
    Glenn B. Rose
    315 Deaderick Street, Suite 1800
    Nashville, TN  37238
    Telephone:  (615) 256-0500
    Facsimile:  (615) 251-1059
    Email:  cvg@h3gm.com
           gbr@h3gm.com

    *Counsel for Greystone Credit II, LLC*