**SO ORDERED.**

**SIGNED this 17 day of March, 2009.**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.**

**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| APPALACHIAN OIL COMPANY, INC., | ) | Case No. 2:09-50259 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

**AGREED INTERIM ORDER AUTHORIZING DEBTOR IN POSSESSION FINANCING AND USE OF CASH COLLATERAL**

This matter came on for hearing at 9:00 a.m. on Friday, March 13, 2009 upon consideration of the Emergency Joint Motion by the Debtor Appalachian Oil Company, Inc. (*"APPCO"*) and the Official Committee of Unsecured Creditors (the *"Committee"*) for Interim and Final Orders Approving Terms of Post-petition Trade Credit Financing by Critical Vendors (the *"Emergency Motion"*). Based upon the objection filed by Greystone Credit II, LLC (*"Greystone"*) and the arguments of counsel present at the hearing, the Court determined that adequate notice of the Emergency Motion, which was filed after 4:00 p.m. on Thursday, March 12, 2009, had not been provided and that no relief would be granted absent agreement of all parties present at the hearing. The hearing was adjourned until 3:00 p.m., at which time the parties announced to the Court the terms of an agreed order for interim financing and use of cash collateral, which terms were approved by the Court and are set forth herein.

Thus, based upon the representations and consent of counsel present at the hearing, on the need of the Debtor to obtain immediate financing in order to avoid immediate and irreparable harm, and upon the Court's review of all matters brought to the Court's attention at the interim hearing, pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law applicable to the financing sought by Debtor at the 3:00 p.m. hearing (the "*Interim Hearing*") (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

THE COURT HEREBY FINDS AND DETERMINES:

A. On February 9, 2009 (the "*Petition Date*"), Debtor filed with the Court its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and is continuing to manage its properties and to operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed herein.

B. Debtor operates approximately 58 convenience stores and is a petroleum jobber.

C. Debtor faces an immediate and severe shortage of working capital. Debtor has no fuel inventory for its convenience stores, and no ability to secure the in-store merchandise needed to make the stores fully operational. Absent immediate steps to address these issues, Debtor's ability to continue business operations as a going concern is in peril. Debtor especially needs product in order to generate sales during the automobile races occurring in East Tennessee during the week of March 16, 2009.

D. An immediate and ongoing need exists for Debtor to obtain financing to continue the operation of its business as debtor-in-possession under Chapter 11 of the Bankruptcy Code and to minimize disruption of Debtor's business. Despite diligent efforts, Debtor has been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of

the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code; and Debtor is unable to obtain financing in the form of credit secured solely by liens that are junior to existing liens on property of the estate pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code.

E. Debtor has requested that LP Shanks Company, or another grocery supplier, and certain fuel suppliers (LP Shanks Company, any alternative grocery supplier and the fuel suppliers are hereinafter collectively the "*Product Vendors*") be authorized to provide product on credit in exchange for a first priority lien in the products supplied by that vendor and in the proceeds generated from the sale thereof, and certain other protections set forth in this interim Order.

F. Debtor has requested that Greystone establish a secured revolving credit facility in favor of Debtor (the "*DIP Facility*") pursuant to which Debtor may obtain loans from time to time ("*DIP Loans*"), in an aggregate amount up to $500,000 outstanding at any time for the purposes set forth in the budget attached hereto as Exhibit A (as at any time amended with the written consent of DIP Lender, the "*Budget*"), secured by all assets of Debtor, wherever located and whether arising prior to or after the Petition Date, provided however, that Greystone shall not have any security interest or lien upon any causes of action that Debtor may have pursuant to Chapter 5 of the Bankruptcy Code and provided that Greystone's liens and security interests shall be junior to the liens and security interests granted to the Product Vendors pursuant to this interim Order.

G. Greystone has also consented to the continued use of its cash collateral for purposes set forth in the Budget in exchange for certain adequate protection set forth in this interim Order.

H. Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), Debtor and the parties present at the hearing requested that the Court hold the Interim Hearing to consider authorizing Debtor to obtain, on an interim basis, the relief set forth herein.

I. Good cause has been shown for the entry of this interim Order and authorization for Debtor to obtain credit extensions as hereinafter provided pending a final hearing on the Motion pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) (the "*Final Hearing*"). Debtor's need for financing of the type afforded by this interim Order is immediate and critical. Entry of this interim Order will minimize disruption of Debtor's business and operation, will preserve the assets of Debtor's estate and their value and is in the best interests of Debtor, its creditors and its estate. The terms of the proposed financing appear fair and reasonable, reflect Debtor's exercise of business judgment and are supported by reasonably equivalent value and fair consideration.

J. Based upon the record presented at the Interim Hearing, it appears that the terms of this interim Order have been negotiated in good faith and at arm's length between Debtor, the Committee, Greystone and the proposed Product Vendors. Therefore, all credit extensions to Debtor pursuant to this Interim Order shall be deemed to have been made in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

K. This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1. The Court hereby authorizes and approves on the terms set forth herein (i) the extensions of credit by Greystone to Debtor pursuant to the DIP Facility from time to time up to an aggregate principal amount outstanding at any time not to exceed $500,000 plus interest, fees and other charges payable in connection therewith, which DIP Facility has a maturity date of April 17, 2009, and (ii) the provision of products on credit by the Product Vendors. Debtor is hereby authorized to execute any agreements, instruments, security agreements, assignments, pledges, mortgages, reaffirmations and other documents referred to therein or requested by Greystone or the Product Vendors to give effect to the terms set forth in this interim Order.

2. Pending the Final Hearing and subject to all of the terms and conditions in this interim Order, Debtor may obtain products from Product Vendors and credit extensions from Greystone only for purposes specified and in the amounts shown in the Budget, which Budget reflects authorized expenditures through April 12, 2009. Greystone and the Product Vendors shall not have any obligation or responsibility to monitor Debtor's use of the DIP Loans or the amount of product supplied and may rely upon Debtor's representations that the amount of credit extensions requested at any time, and the use thereof, are in accordance with the requirements of this Order and Bankruptcy Rule 4001(c)(2).

3. Each of the DIP Loans and the amount due for each extension of product on credit by the Product Vendors shall constitute valid and binding obligations of Debtor, enforceable against Debtor in accordance with their terms.

4. Each of the Product Vendors is hereby granted, effective immediately, a first priority, post-petition security interest in and lien upon all of the product supplied pursuant to

this Interim Order by that Product Vendor and in the proceeds resulting from the sale thereof to secure repayment of the amounts due for the product supplied by that Product Vendor pursuant to this Order. The liens and priority granted to each of the Product Vendors shall be perfected by operation of law upon entry of this interim Order, and the Product Vendors shall not be required to enter into or to obtain mortgagee waivers, bailee waivers, or warehouseman waivers or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction, including trademark, copyright, tradename or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or obtain consents from any landlord, licensor or similar party-in-interest, or to take any other action in order to validate and to perfect the security interests and liens granted to each such Product Vendor pursuant to this interim Order.

5. As further security for the extensions of credit by LP Shanks Company (or an alternative grocery supplier), Debtor is authorized to pay LP Shanks Company (or an alternative grocery supplier) up to $150,000 to be held in escrow. The escrowed funds shall secure only the amounts due for grocery products supplied pursuant to this interim Order and shall constitute additional collateral solely for the payment of amounts due for product supplied pursuant to this interim Order. LP Shanks Company (or an alternative grocery supplier) may draw upon the escrowed funds only in the event of a default in the payment of amounts due for product supplied pursuant to this interim Order and only in that amount required to pay the amount past due for product supplied pursuant to this interim Order. Upon request of Debtor, LP Shanks Company (or an alternative grocery supplier) shall execute an escrow agreement confirming the terms pursuant to which the escrowed funds will be held and applied.

6. In consideration of the risk associated with providing product on credit and due to the extreme circumstances and the potential for irreparable harm to Debtor, LP Shanks Company is hereby granted a release and waiver of any claims held by Debtor against it under 11 U.S.C. 547; provided however, that this provision shall remain valid and enforceable only if LP Shanks Company complies with its obligations to provide product to Debtor in the amount and on the credit terms set forth herein until such time as there exists a payment default by Debtor or further order of this Court relieves L P Shanks Company from its obligations hereunder .

7. In order to obtain the waiver of chapter 5 claims and escrowed deposit set forth in this interim Order, LP Shanks Company (or an alternative grocery supplier) must supply on at least fourteen (14) day terms up to $250,000 per week in product as ordered by the Debtor at a pricing schedule agreed upon by Debtor until such time as there exists a payment default by Debtor or further order of this Court.

8. As further security for the extensions of credit by those Product Vendors who provide fuel to Debtor on credit, Debtor is authorized to pay those Product Vendors up to an aggregate amount of $150,000 to be held in escrow. The escrowed funds shall secure only the amounts due for fuel supplied pursuant to this interim Order and shall constitute additional collateral solely for the payment of amounts due for fuel supplied pursuant to this interim Order. Each Product Vendor who obtains an escrowed deposit may draw upon the escrowed funds only in the event of a default in the payment of amounts due for fuel supplied pursuant to this interim Order and only in that amount required to pay the amount past due for fuel supplied pursuant to this Interim Order. Upon request of Debtor, each Product Vendor obtaining an escrow deposit for fuel shall execute an escrow agreement confirming the terms pursuant to which the escrowed funds will be held and applied.

9. In order to obtain the liens and deposit set forth in this interim Order, those Product Vendors who provide fuel pursuant to this interim Order must supply fuel on at least five (5) day terms and must agree to be responsible for payment of all taxes due related to sale of the fuel supplied by that Product Vendor, until such time as there exists a payment default by Debtor or further order of this Court.

10. All DIP Loans and other credit extensions by Greystone pursuant to the DIP Facility, together with all interest, fees and other charges at any time or times payable by Debtor to Greystone in connection therewith (all such credit extensions and all other obligations are collectively called the "*DIP Obligations*") shall be, and hereby are, secured by security interests and liens in favor of Greystone (collectively, the "*DIP Liens*"), as follows:

(a) Unencumbered Collateral. Pursuant to Section 364(c)(2) of the Bankruptcy Code, subject only to the liens and security interests granted to the Product Vendors in this Interim Order, a perfected, first priority senior security interest in and lien upon all of Debtor's pre-petition and post-petition assets (both real and personal), including, without limitation, all of Debtor's cash, accounts, inventory, equipment, real property, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, leasehold interests, and books and records relating to any assets of Debtor and all proceeds (including insurance proceeds) of the foregoing, whether now in existence or hereafter created, acquired or arising and wherever located, that, as of the Petition Date, is not subject to valid, perfected and non-avoidable liens or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date), as permitted by Section 546(b) of the

Bankruptcy Code; provided, however, that the Collateral shall not include Avoidance Claims or Avoidance Proceeds (as those terms are defined below); and

(b) Encumbered Collateral. Pursuant to Section 364(c)(3) of the Bankruptcy Code, perfected junior security interests in and liens upon all all of Debtor's pre-petition and post-petition assets (both real and personal), including, without limitation, all of Debtor's cash, accounts, inventory, equipment, real property, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, leasehold interests, and books and records relating to any assets of Debtor and all proceeds (including insurance proceeds) of the foregoing, whether now in existence or hereafter created, acquired or arising and wherever located that is subject to valid, perfected and non-avoidable liens in existence on the Petition Date or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date), as permitted by Section 546(b) of the Bankruptcy Code.

Notwithstanding the foregoing provisions of this paragraph or any other provision in this Interim Order, the DIP Liens shall not attach to any of the following property: (x) any claims pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code (the "*Avoidance Claims*") or (y) any proceeds or property recovered in connection with the successful prosecution or settlement of Avoidance Claims (the "*Avoidance Proceeds*").

11. The DIP Liens granted to Greystone in this Order shall be perfected by operation of law upon entry of this Order, and Greystone shall not be required to enter into or to obtain mortgagee waivers, bailee waivers, or warehouseman waivers or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments

in any jurisdiction, including trademark, copyright, tradename or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or obtain consents from any landlord, licensor or similar party-in-interest, or to take any other action in order to validate and to perfect the DIP Liens, security interests and liens granted to Greystone pursuant to this interim Order.

12. Interest shall accrue on all DIP Loans and other credit extensions under the DIP Facility at the rate of fifteen per cent (15%) per annum and shall be payable monthly, with the first such payment being due on April 17, 2009. On March 16, 2009, Debtor shall pay, or obtain a DIP Loan to pay, an origination fee to Greystone in the amount of $15,000.

13. Debtor shall provide on each business day a report to Greystone reflecting its receipts and disbursements since the prior report and shall provide to Greystone a weekly reconciliation of its actual as compared to the weekly performance set forth in the Budget. Representatives of Greystone are authorized to visit the business premises of Debtor to (i) inspect any collateral or other assets, (ii) inspect and make copies of any books and records of Debtor, and (iii) verify or to obtain supporting details concerning the financial information to be provided to Lenders hereunder.

14. The DIP Obligations shall be due and payable, and shall be paid as provided herein, without offset or counterclaim. In no event shall Debtor be authorized to offset or recoup any amounts owed, or alleged owed, by Greystone to Debtor or any of its affiliates against any of the DIP Obligations unless and to the extent expressly otherwise agreed to in writing by Greystone.

15. Upon or after the occurrence of any of the following: failure of Debtor duly and punctually to observe, perform or discharge any obligation or duty imposed upon them by this

interim Order; the dismissal or conversion to Chapter 7 of this Chapter 11 case; the filing of a motion by Debtor to convert this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code or to dismiss this Chapter 11 case; this Order is altered, amended, vacated, supplemented, modified, stayed or reversed on appeal or Debtor shall file any motion to alter, amend, vacate, supplement or modify this Order without Greystone's or the Product Vendor's prior consent; or the failure to enter a final financing order acceptable to Greystone and the Product Vendors by April 17, 2009; then, in any such event, Greystone and the Product Vendors shall be fully authorized, each in its separate, sole discretion, to terminate further credit extensions under the DIP Facility or pursuant to the terms of this Order, to demand payment of all DIP Obligations or of all amounts due for product supplied pursuant to this Order, and, upon five (5) business days prior written notice to counsel for Debtor, counsel for the Committee, counsel for Greystone, the Product Vendors and the U.S. Trustee, Greystone and/or each Product Vendor may, upon expiration of the notice period set forth above, enforce the liens and security interests granted in this interim Order, proceed against or realize upon all or any portion of their collateral as if this Chapter 11 case or any superseding Chapter 7 case was not pending and otherwise enforce the rights granted in this Order.

16. As adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code for Debtor's use, consumption, sale, collection or other disposition of any property or cash in which Greystone had an interest as of the Petition Date, subject only to the security interests and liens granted to Product Vendors pursuant to this Interim Order, Greystone is hereby granted, effective immediately, a replacement, post-petition security interest in and lien upon all of the product supplied by the Product Vendors pursuant to this Interim Order, and in the proceeds thereof, to the same extent, validity and priority as Greystone's pre-petition liens and security

interests, to the extent that the Debtor's use of cash collateral or of property in which Greyston held a lien as of the Petition Date results in any decrease, following the Petition Date, in the value of the collateral securing Greystone's claims, with such replacement liens having the same validity as Greystone's liens and security interests in prepetition collateral. The replacement liens and priority granted to Greystone in this Order as adequate protection shall be perfected by operation of law upon entry of this Order, and Greystone shall not be required to enter into or to obtain mortgagee waivers, bailee waivers, or warehouseman waivers or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction, including trademark, copyright, tradename or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or obtain consents from any landlord, licensor or similar party-in-interest, or to take any other action in order to validate and to perfect the replacement security interests and liens granted to Greystone pursuant to this interim Order.

17. As and for additional adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code for Debtor's use, consumption, sale, collection or other disposition of any property or cash in which Greystone had an interest as of the Petition Date, Greystone is hereby granted, effective immediately, a replacement, post-petition security interest in and lien upon all of the Debtor's assets of the same type in which Greystone holds a prepetition lien or security interest to the same extent, validity and priority as Greystone's pre-petition liens and security interests, to the extent that the Debtor's use of cash collateral or of property in which Greyston held a lien as of the Petition Date results in any decrease, following the petition date, in the value of the collateral securing Greystone's claims, with such replacement liens having the same validity as Greystone's liens and security interests in prepetition collateral. The replacement

liens and priority granted to Greystone in this Order as adequate protection shall be perfected by operation of law upon entry of this Order, and Greystone shall not be required to enter into or to obtain mortgagee waivers, bailee waivers, or warehouseman waivers or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including trademark, copyright, tradename or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property), or obtain consents from any landlord, licensor or similar party-in-interest, or to take any other action in order to validate and to perfect the replacement security interests and liens granted to Greystone pursuant to this interim Order.

18. The Final Hearing shall be held at 9:00 a.m. on Wednesday, April 8, 2009. If no objection to this Order is timely filed by the deadline set forth below and asserted at the Final Hearing, then this Order shall continue in effect in accordance with its terms subject to such modifications as the Court may make at the Final Hearing and that are acceptable to Greystone and the Product Vendors. If any or all of the provisions of this Order are modified, vacated or stayed as the result of any objection timely filed and asserted at the Final Hearing, then, without limiting the provisions of this paragraph, any DIP Obligations incurred prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Order, and Greystone and the Product Vendors shall be entitled to the protections afforded under Section 364(e) of the Bankruptcy Code and to all the rights, remedies, privileges, and benefits, including, without limitation, the DIP Liens and the liens to the Product Vendors granted herein.

19. If any party in interest shall have an objection to any of the provisions of this Order, such party shall be authorized to assert such objection at the Final Hearing, provided that

a written statement setting forth the basis for such objection is filed with the Court, and concurrently served upon the Office of the United States Trustee, counsel for the Debtor, counsel for the Committee, and counsel for Greystone, so that such objections and responses are filed on or before 5:00 p.m., prevailing Eastern time on Friday, April 3, 2009. Unless an objection is timely filed and pursued at the Final Hearing, such objection shall be deemed to have been waived and abandoned by such objecting party.

20. This Interim Order shall be deemed to have been effective on Friday, March 13, 2009, the date on which the Court approved the terms set forth herein.

THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE

###

APPROVED FOR ENTRY:

/s/ Mark S. Dessauer
Mark S. Dessauer, Esq. (TN BPR No. 010421)
HUNTER, SMITH & DAVIS, LLP
Attorney for Debtor
Post Office Box 3740
Kingsport, TN 37664
Telephone: (423) 378-8840
Facsimile: (423) 378-8801
*Counsel for the Debtor*

HARWELL HOWARD HYNE
GABBERT & MANNER, P.C.

/s/ Glenn B. Rose
Craig V. Gabbert, Jr.
Glenn B. Rose
315 Deaderick Street, Suite 1800
Nashville, TN 37238
Telephone: (615) 256-0500
Facsimile: (615) 251-1059
Email: gbr or cvg@h3gm.com
*Counsel for Greystone Credit II*

WHITEFORD, TAYLOR & PRESTON, LLP

/s/ John F. Carlton
John F. Carlton
Seven Saint Paul Street
Baltimore, MD 21202-1636
Telephone: (410) 347.8732
Facsimile: (410) 223.3732
Email: jcarlton@wtplaw.com
*Counsel for the Unsecured Creditors Committee*

# Appalachian Oil Company, Inc. - All Appco Divisions - 14 Week Budget

Vendor Term Assumptions: Gas - Net 8 & Grocery - Net 14

| Week Ended: | | Friday 3/13/09 | Saturday 3/14/09 | Sunday 3/15/09 | Week 0 3/16/09 |
|---|---|---|---|---|---|
| Gallons Sold | | 0 | 110,000 | 110,000 | 220,000 |
| Average Sale Price | | | | | |
| Fuel Sales | | $0 | $203,500 | $203,500 | $407,000 |
| Merchandise Sales | | $50,000 | $50,000 | $50,000 | $150,000 |
| Cash Receipts | | $0 | $0 | $0 | $0 |
| Credit Card Receipts | | $0 | $0 | $0 | $0 |
| Total Receipts | | $0 | $0 | $0 | $0 |
| Rents | | $0 | $0 | $0 | $0 |
| Other Income | | $0 | $0 | $0 | $0 |
| Total Cash In | | $0 | $0 | $0 | $0 |
| Cash Outflows | | | | | |
| Gallons Purchased | | 275,000 | 0 | 0 | 275,000 |
| Per Gallon Price | | | | | |
| Vendor Fuel Payments | | $0 | $0 | $0 | $0 |
| Merchandise Vendors | | $0 | $0 | $0 | $0 |
| Rents | | $0 | $0 | $0 | $0 |
| Payroll-Officers and directors | | $5,000 | $0 | $0 | $5,000 |
| Payroll-Corporate employees | | $27,000 | $0 | $0 | $27,000 |
| Payroll C-Store Employees | | $30,000 | $0 | $0 | $30,000 |
| Payroll Taxes | | $10,000 | $0 | $0 | $10,000 |
| 401(k) | | $0 | $0 | $0 | $0 |
| Sales Taxes | | $0 | $0 | $0 | $0 |
| Telephone and Utilities | | $0 | $0 | $0 | $0 |
| Other | | $0 | $0 | $0 | $0 |
| Rent payments | | $0 | $0 | $0 | $0 |
| Trustee | | $0 | $0 | $0 | $0 |
| Greystone DIP Fee/Interest | | | | | $15,000 |
| Trade DIP Fee | | | | | $0 |
| Professional Fees | | $0 | $0 | $0 | $0 |
| Insurance | | $0 | $0 | $0 | $0 |
| Repairs & Maintenance | | $1,500 | $0 | $0 | $1,500 |
| Other Opex | | $8,000 | $0 | $0 | $8,000 |
| Total Cash Out | | $81,500 | $0 | $0 | $96,500 |
| Beginning Cash Balance | | | | | $240,000 |
| Net Daily Cash Flow | $240,000 | $158,500 | $0 | $0 | -$96,500 |
| Ending Cash Before Borrowings | -$195,603 | $158,500 | $158,500 | $158,500 | $143,500 |
| Greystone DIP Available | $200,000 | | | | $200,000 |
| Ending Cash with Greystone DIP | | | | | $343,500 |
| Inventory Rollforward - Fuel | | | | | |
| Beginning Balance | | $200,000 | $475,750 | $285,450 | $200,000 |
| Purchases | | $475,750 | $0 | $0 | $475,750 |
| Sales @ Cost | | $0 | -$190,300 | -$190,300 | -$380,600 |
| Ending Balance | $36,350 | $475,750 | $285,450 | $95,150 | $295,150 |
| Inventory Rollforward - Merchandise | | | | | |
| Beginning Balance | | $1,300,000 | $1,320,000 | $1,340,000 | $1,300,000 |
| Purchases - Replenishment | | $37,500 | $37,500 | $37,500 | $112,500 |
| Purchases - Ramp Up | | $20,000 | $20,000 | $20,000 | $60,000 |
| Sales @ Cost | | -$37,500 | -$37,500 | -$37,500 | -$112,500 |
| Ending Balance | $1,320,000 | $1,320,000 | $1,340,000 | $1,360,000 | $1,360,000 |
| Accounts Receivable | | | | | |
| Beginning Balance | | $0 | $0 | $253,500 | $0 |
| Sales | | $0 | $253,500 | $253,500 | $507,000 |
| Collections | | $0 | $0 | $0 | $0 |
| Ending Balance | $0 | $0 | $253,500 | $507,000 | $507,000 |
| Eligibility Formula | | | | | |
| Appco Fuel Inv Avail @ 75% | | $356,813 | $214,088 | $71,363 | $221,363 |
| Appco Merch Inv Avail @ 50% | | $660,000 | $670,000 | $680,000 | $680,000 |
| Appco AR Avail @ 80% | | $0 | $202,800 | $405,600 | $405,600 |
| Total Availability | | $1,016,813 | $1,086,888 | $1,156,963 | $1,306,963 |
| Availability | $1,175,313 | $1,175,313 | $1,245,388 | $1,315,463 | $1,450,463 |
| Fuel Accounts Payable | | | | | |
| Beginning Balance | $0 | $0 | $475,750 | $475,750 | $0 |
| Purchases - Fuel | | $475,750 | $0 | $0 | $475,750 |
| Less Payments - Fuel | | $0 | $0 | $0 | $0 |
| Ending Fuel Balance | $2,110,850 | $475,750 | $475,750 | $475,750 | $475,750 |
| Merchandise Accounts Payable | | | | | |
| Beginning Balance | $0 | $0 | $57,500 | $115,000 | $0 |
| Purchases - Merchandise | | $37,500 | $37,500 | $37,500 | $112,500 |
| Purchases - Ramp Up | | $20,000 | $20,000 | $20,000 | $60,000 |
| Less Payments - Merchandise | | $0 | $0 | $0 | $0 |
| Ending Balance | $2,988,750 | $57,500 | $115,000 | $172,500 | $172,500 |
| Total Accounts Payable | | $533,250 | $590,750 | $648,250 | $648,250 |

| Week Ended: | Monday 3/16/09 | Tuesday 3/17/09 | Wednesday 3/18/09 | Thursday 3/19/09 | Friday 3/20/09 | Saturday 3/21/09 | Sunday 3/22/09 | Week 1 3/22/09 |
|---|---|---|---|---|---|---|---|---|
| Gallons Sold | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 770,000 |
| Average Sale Price | | | | | | | | |
| Fuel Sales | $203,500 | $203,500 | $203,500 | $203,500 | $203,500 | $203,500 | $203,500 | $1,424,500 |
| Merchandise Sales | $50,000 | $75,000 | $75,000 | $75,000 | $75,000 | $75,000 | $75,000 | $500,000 |
| Cash Receipts | $222,800 | $101,400 | $111,400 | $111,400 | $111,400 | $0 | $0 | $658,400 |
| Credit Card Receipts | $0 | $334,200 | $152,100 | $167,100 | $167,100 | $0 | $0 | $820,500 |
| Total Receipts | $222,800 | $435,600 | $263,500 | $278,500 | $278,500 | $0 | $0 | $1,478,900 |
| Rents | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other Income | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $0 | $0 | $5,000 |
| Total Cash In | $223,800 | $436,600 | $264,500 | $279,500 | $279,500 | $0 | $0 | $1,483,900 |
| Cash Outflows | | | | | | | | |
| Gallons Purchased | 120,000 | 120,000 | 120,000 | 120,000 | 330,000 | 0 | 0 | 810,000 |
| Per Gallon Price | | | | | | | | |
| Vendor Fuel Payments | $0 | $0 | $475,750 | $0 | $0 | $0 | $0 | $475,750 |
| Merchandise Vendors | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Rents | $150,000 | $0 | $0 | $0 | $0 | $0 | $0 | $150,000 |
| Payroll-Officers and directors | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Payroll-Corporate employees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Payroll C-Store Employees | $0 | $0 | $0 | $0 | $175,000 | $0 | $0 | $175,000 |
| Payroll Taxes | $12,000 | $0 | $0 | $0 | $35,000 | $0 | $0 | $47,000 |
| 401(k) | $0 | $0 | $0 | $0 | $800 | $0 | $0 | $800 |
| Sales Taxes | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Telephone and Utilities | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $0 | $0 | $22,500 |
| Other | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Rent payments | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Trustee | $0 | $0 | $0 | $0 | $25,000 | $0 | $0 | $25,000 |
| Greystone DIP Fee/Interest | | | | | | | | |
| Trade DIP Fee | | | | | | | | |
| Professional Fees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Insurance | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Repairs & Maintenance | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $0 | $0 | $7,500 |
| Other Opex | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $0 | $0 | $40,000 |
| Total Cash Out | $176,000 | $14,000 | $489,750 | $14,000 | $249,800 | $0 | $0 | $943,550 |
| Beginning Cash Balance | | | | | | | | $143,500 |
| Net Daily Cash Flow | $47,800 | $422,600 | -$225,250 | $265,500 | $29,700 | $0 | $0 | $540,350 |
| Ending Cash Before Borrowings | $206,300 | $628,900 | $403,650 | $669,150 | $698,850 | $698,850 | $698,850 | $683,850 |
| Greystone DIP Available | | | | | | | | $200,000 |
| Ending Cash with Greystone DIP | | | | | | | | $883,850 |
| Inventory Rollforward - Fuel | | | | | | | | |
| Beginning Balance | $95,150 | $112,450 | $129,750 | $147,050 | $164,350 | $544,950 | $354,650 | $295,150 |
| Purchases | $207,600 | $207,600 | $207,600 | $207,600 | $570,900 | $0 | $0 | $1,401,300 |
| Sales @ Cost | -$190,300 | -$190,300 | -$190,300 | -$190,300 | -$190,300 | -$190,300 | -$190,300 | -$1,332,100 |
| Ending Balance | $112,450 | $129,750 | $147,050 | $164,350 | $544,950 | $354,650 | $164,350 | $364,350 |
| Inventory Rollforward - Merchandise | | | | | | | | |
| Beginning Balance | $1,360,000 | $1,380,000 | $1,400,000 | $1,420,000 | $1,440,000 | $1,460,000 | $1,480,000 | $1,360,000 |
| Purchases - Replenishment | $37,500 | $56,250 | $56,250 | $56,250 | $56,250 | $56,250 | $56,250 | $375,000 |
| Purchases - Ramp Up | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $140,000 |
| Sales @ Cost | -$37,500 | -$56,250 | -$56,250 | -$56,250 | -$56,250 | -$56,250 | -$56,250 | -$375,000 |
| Ending Balance | $1,380,000 | $1,400,000 | $1,420,000 | $1,440,000 | $1,460,000 | $1,480,000 | $1,500,000 | $1,500,000 |
| Accounts Receivable | | | | | | | | |
| Beginning Balance | $507,000 | $537,700 | $380,600 | $395,600 | $395,600 | $395,600 | $674,100 | $507,000 |
| Sales | $253,500 | $278,500 | $278,500 | $278,500 | $278,500 | $278,500 | $278,500 | $1,924,500 |
| Collections | -$222,800 | -$435,600 | -$263,500 | -$278,500 | -$278,500 | $0 | $0 | -$1,478,900 |
| Ending Balance | $537,700 | $380,600 | $395,600 | $395,600 | $395,600 | $674,100 | $952,600 | $952,600 |
| Eligibility Formula | | | | | | | | |
| Appco Fuel Inv Avail @ 75% | $84,338 | $97,313 | $110,288 | $123,263 | $408,713 | $265,988 | $123,263 | $273,263 |
| Appco Merch Inv Avail @ 50% | $690,000 | $700,000 | $710,000 | $720,000 | $730,000 | $740,000 | $750,000 | $750,000 |
| Appco AR Avail @ 80% | $430,160 | $304,480 | $316,480 | $316,480 | $316,480 | $539,280 | $762,080 | $762,080 |
| Total Availability | $1,204,498 | $1,101,793 | $1,136,768 | $1,159,743 | $1,455,193 | $1,545,268 | $1,635,343 | $1,785,343 |
| Availability | $1,410,798 | $1,730,693 | $1,540,418 | $1,828,893 | $2,154,043 | $2,244,118 | $2,334,193 | $2,469,193 |
| Fuel Accounts Payable | | | | | | | | |
| Beginning Balance | $475,750 | $683,350 | $890,950 | $622,800 | $830,400 | $1,401,300 | $1,401,300 | $475,750 |
| Purchases - Fuel | $207,600 | $207,600 | $207,600 | $207,600 | $570,900 | $0 | $0 | $1,401,300 |
| Less Payments - Fuel | $0 | $0 | $475,750 | $0 | $0 | $0 | $0 | $475,750 |
| Ending Fuel Balance | $683,350 | $890,950 | $622,800 | $830,400 | $1,401,300 | $1,401,300 | $1,401,300 | $1,401,300 |
| Merchandise Accounts Payable | | | | | | | | |
| Beginning Balance | $172,500 | $230,000 | $306,250 | $382,500 | $458,750 | $535,000 | $611,250 | $172,500 |
| Purchases - Merchandise | $37,500 | $56,250 | $56,250 | $56,250 | $56,250 | $56,250 | $56,250 | $375,000 |
| Purchases - Ramp Up | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $140,000 |
| Less Payments - Merchandise | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Ending Balance | $230,000 | $306,250 | $382,500 | $458,750 | $535,000 | $611,250 | $687,500 | $687,500 |
| Total Accounts Payable | $913,350 | $1,197,200 | $1,005,300 | $1,289,150 | $1,936,300 | $2,012,550 | $2,088,800 | $2,088,800 |

| Week Ended: | Monday 3/23/09 | Tuesday 3/24/09 | Wednesday 3/25/09 | Thursday 3/26/09 | Friday 3/27/09 | Saturday 3/28/09 | Sunday 3/29/09 | Week 2 3/29/09 | Monday 3/30/09 | Tuesday 3/31/09 | Wednesday 4/1/09 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gallons Sold | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 110,000 | 770,000 | 135,000 | 135,000 | 135,000 |
| Average Sale Price | | | | | | | | | | | |
| Fuel Sales | $203,500 | $203,500 | $203,500 | $203,500 | $203,500 | $203,500 | $203,500 | $1,424,500 | $248,000 | $248,000 | $248,000 |
| Merchandise Sales | $75,000 | $100,000 | $100,000 | $100,000 | $75,000 | $75,000 | $75,000 | $600,000 | $75,000 | $100,000 | $100,000 |
| Cash Receipts | $334,200 | $111,400 | $121,400 | $121,400 | $121,400 | $0 | $0 | $809,600 | $334,200 | $111,400 | $121,400 |
| Credit Card Receipts | $167,100 | $501,300 | $167,100 | $182,100 | $182,100 | $0 | $0 | $1,199,700 | $182,100 | $501,300 | $193,800 |
| Total Receipts | $501,300 | $612,700 | $288,500 | $303,500 | $303,500 | $0 | $0 | $2,009,500 | $516,300 | $612,700 | $315,200 |
| Rents | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other Income | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $0 | $0 | $7,500 | $2,000 | $2,000 | $2,000 |
| Total Cash In | $502,800 | $614,200 | $290,000 | $305,000 | $305,000 | $0 | $0 | $2,017,000 | $518,300 | $614,700 | $317,200 |
| Cash Outflows | | | | | | | | | | | |
| Gallons Purchased | 110,000 | 110,000 | 110,000 | 110,000 | 380,000 | 0 | 0 | 820,000 | 110,000 | 135,000 | 135,000 |
| Per Gallon Price | | | | | | | | | | | |
| Vendor Fuel Payments | $622,800 | $207,600 | $570,900 | $0 | $0 | $0 | $0 | $1,401,300 | $570,900 | $190,300 | $655,900 |
| Merchandise Vendors | $0 | $0 | $0 | $0 | $57,500 | $0 | $0 | $57,500 | $0 | $0 | $0 |
| Rents | $100,000 | $0 | $0 | $0 | $0 | $0 | $0 | $100,000 | $50,000 | $0 | $0 |
| Payroll-Officers and directors | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Payroll-Corporate employees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $45,000 | $0 |
| Payroll C-Store Employees | $0 | $0 | $0 | $0 | $70,000 | $0 | $0 | $70,000 | $0 | $0 | $0 |
| Payroll Taxes | $0 | $0 | $0 | $0 | $15,000 | $0 | $0 | $15,000 | $0 | $0 | $12,000 |
| 401(k) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales Taxes | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Telephone and Utilities | $4,500 | $4,500 | $4,500 | $4,500 | $24,500 | $0 | $0 | $42,500 | $4,500 | $4,500 | $4,500 |
| Other | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Rent payments | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Trustee | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Greystone DIP Fee/Interest | | | | | | | | | | | |
| Trade DIP Fee | | | | | | | | | | | |
| Professional Fees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Insurance | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $110,000 | $0 | $0 |
| Repairs & Maintenance | $1,500 | $1,500 | $1,500 | $1,500 | $3,900 | $0 | $0 | $9,900 | $4,400 | $4,400 | $4,400 |
| Other Opex | $8,000 | $8,000 | $8,000 | $8,000 | $11,600 | $0 | $0 | $43,600 | $12,550 | $12,550 | $12,550 |
| Total Cash Out | $736,800 | $221,600 | $584,900 | $14,000 | $182,700 | $0 | $0 | $1,740,000 | $752,350 | $256,750 | $689,350 |
| Beginning Cash Balance | | | | | | | | $683,850 | | | |
| Net Daily Cash Flow | -$234,000 | $392,600 | -$294,900 | $291,000 | $122,300 | $0 | $0 | $277,000 | -$234,050 | $357,950 | -$372,150 |
| Ending Cash Before Borrowings | $464,850 | $857,450 | $562,550 | $853,550 | $975,850 | $975,850 | $975,850 | $960,850 | $741,800 | $1,099,750 | $727,600 |
| Greystone DIP Available | | | | | | | | $200,000 | | | |
| Ending Cash with Greystone DIP | | | | | | | | $1,160,850 | | | |
| Inventory Rollforward - Fuel | | | | | | | | | | | |
| Beginning Balance | $164,350 | $164,350 | $164,350 | $164,350 | $164,350 | $829,950 | $439,650 | $364,350 | $249,350 | $206,850 | $206,850 |
| Purchases | $190,300 | $190,300 | $190,300 | $190,300 | $855,900 | $0 | $0 | $1,417,100 | $190,300 | $232,800 | $232,800 |
| Sales @ Cost | -$190,300 | -$190,300 | -$190,300 | -$190,300 | -$190,300 | -$190,300 | -$190,300 | -$1,332,100 | -$232,800 | -$232,800 | -$232,800 |
| Ending Balance | $164,350 | $164,350 | $164,350 | $164,350 | $829,950 | $439,650 | $249,350 | $449,350 | $206,850 | $206,850 | $206,850 |
| Inventory Rollforward - Merchandise | | | | | | | | | | | |
| Beginning Balance | $1,500,000 | $1,520,000 | $1,540,000 | $1,560,000 | $1,580,000 | $1,600,000 | $1,620,000 | $1,500,000 | $1,640,000 | $1,660,000 | $1,680,000 |
| Purchases - Replenishment | $56,250 | $75,000 | $75,000 | $75,000 | $56,250 | $56,250 | $56,250 | $450,000 | $56,250 | $75,000 | $75,000 |
| Purchases - Ramp Up | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $140,000 | $20,000 | $20,000 | $20,000 |
| Sales @ Cost | -$56,250 | -$75,000 | -$75,000 | -$75,000 | -$56,250 | -$56,250 | -$56,250 | -$450,000 | -$56,250 | -$75,000 | -$75,000 |
| Ending Balance | $1,520,000 | $1,540,000 | $1,560,000 | $1,580,000 | $1,600,000 | $1,620,000 | $1,640,000 | $1,640,000 | $1,660,000 | $1,680,000 | $1,700,000 |
| Accounts Receivable | | | | | | | | | | | |
| Beginning Balance | $952,600 | $729,800 | $420,600 | $435,600 | $435,600 | $410,600 | $689,100 | $952,600 | $967,600 | $774,300 | $509,600 |
| Sales | $278,500 | $303,500 | $303,500 | $303,500 | $278,500 | $278,500 | $278,500 | $2,024,500 | $323,000 | $348,000 | $348,000 |
| Collections | -$501,300 | -$612,700 | -$288,500 | -$303,500 | -$303,500 | $0 | $0 | -$2,009,500 | -$516,300 | -$612,700 | -$315,200 |
| Ending Balance | $729,800 | $420,600 | $435,600 | $435,600 | $410,600 | $689,100 | $967,600 | $967,600 | $774,300 | $509,600 | $542,400 |
| Eligibility Formula | | | | | | | | | | | |
| Appco Fuel Inv Avail @ 75% | $123,263 | $123,263 | $123,263 | $123,263 | $472,463 | $329,738 | $187,013 | $337,013 | $155,138 | $155,138 | $155,138 |
| Appco Merch Inv Avail @ 50% | $760,000 | $770,000 | $780,000 | $790,000 | $800,000 | $810,000 | $820,000 | $820,000 | $830,000 | $840,000 | $850,000 |
| Appco AR Avail @ 80% | $583,840 | $336,480 | $348,480 | $348,480 | $328,480 | $551,280 | $774,080 | $774,080 | $619,440 | $407,680 | $433,920 |
| Total Availability | $1,467,103 | $1,229,743 | $1,251,743 | $1,261,743 | $1,600,943 | $1,691,018 | $1,781,093 | $1,931,093 | $1,604,578 | $1,402,818 | $1,439,058 |
| Availability | $1,931,953 | $2,087,193 | $1,814,293 | $2,115,293 | $2,576,793 | $2,666,868 | $2,756,943 | $2,891,943 | $2,346,378 | $2,502,568 | $2,166,658 |
| Fuel Accounts Payable | | | | | | | | | | | |
| Beginning Balance | $1,401,300 | $968,800 | $951,500 | $570,900 | $761,200 | $1,417,100 | $1,417,100 | $1,401,300 | $1,417,100 | $1,036,500 | $1,079,000 |
| Purchases - Fuel | $190,300 | $190,300 | $190,300 | $190,300 | $655,900 | $0 | $0 | $1,417,100 | $190,300 | $232,800 | $232,800 |
| Less Payments - Fuel | $622,800 | $207,600 | $570,900 | $0 | $0 | $0 | $0 | $1,401,300 | $570,900 | $190,300 | $655,900 |
| Ending Fuel Balance | $968,800 | $951,500 | $570,900 | $761,200 | $1,417,100 | $1,417,100 | $1,417,100 | $1,417,100 | $1,036,500 | $1,079,000 | $655,900 |
| Merchandise Accounts Payable | | | | | | | | | | | |
| Beginning Balance | $687,500 | $763,750 | $858,750 | $953,750 | $1,048,750 | $1,067,500 | $1,143,750 | $687,500 | $1,220,000 | $1,296,250 | $1,391,250 |
| Purchases - Merchandise | $56,250 | $75,000 | $75,000 | $75,000 | $56,250 | $56,250 | $56,250 | $450,000 | $56,250 | $75,000 | $75,000 |
| Purchases - Ramp Up | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $140,000 | $20,000 | $20,000 | $20,000 |
| Less Payments - Merchandise | $0 | $0 | $0 | $0 | $57,500 | $0 | $0 | $57,500 | $0 | $0 | $0 |
| Ending Balance | $763,750 | $858,750 | $953,750 | $1,048,750 | $1,067,500 | $1,143,750 | $1,220,000 | $1,220,000 | $1,296,250 | $1,391,250 | $1,486,250 |
| Total Accounts Payable | $1,732,550 | $1,810,250 | $1,524,650 | $1,809,950 | $2,484,600 | $2,560,850 | $2,637,100 | $2,637,100 | $2,332,750 | $2,470,250 | $2,142,150 |

EXHIBIT A

| Week Ended: | Thursday 4/2/09 | Friday 4/3/09 | Saturday 4/4/09 | Sunday 4/5/09 | Week 3 4/5/09 | Monday 4/6/09 | Tuesday 4/7/09 | Wednesday 4/8/09 | Thursday 4/9/09 | Friday 4/10/09 | Saturday 4/11/09 | Sunday 4/12/09 | Week 4 4/12/09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gallons Sold | 135,000 | 135,000 | 145,000 | 145,000 | 965,000 | 145,000 | 145,000 | 145,000 | 145,000 | 145,000 | 145,000 | 145,000 | 1,015,000 |
| Average Sale Price | | | | | | | | | | | | | |
| Fuel Sales | $248,000 | $248,000 | $266,500 | $266,500 | $1,773,000 | $266,500 | $266,500 | $266,500 | $266,500 | $266,500 | $266,500 | $266,500 | $1,865,500 |
| Merchandise Sales | $100,000 | $100,000 | $100,000 | $100,000 | $675,000 | $100,000 | $105,000 | $105,000 | $105,000 | $105,000 | $110,000 | $110,000 | $740,000 |
| Cash Receipts | $121,400 | $121,400 | $0 | $0 | $809,800 | $379,000 | $128,800 | $148,600 | $148,600 | $148,600 | $0 | $0 | $953,600 |
| Credit Card Receipts | $208,800 | $208,800 | $0 | $0 | $1,294,800 | $208,800 | $648,600 | $219,900 | $222,900 | $222,900 | $0 | $0 | $1,523,100 |
| Total Receipts | $330,200 | $330,200 | $0 | $0 | $2,104,600 | $587,800 | $777,400 | $368,500 | $371,500 | $371,500 | $0 | $0 | $2,476,700 |
| Rents | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other Income | $2,000 | $2,000 | $0 | $0 | $10,000 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $0 | $0 | $12,500 |
| Total Cash In | $332,200 | $332,200 | $0 | $0 | $2,114,600 | $590,300 | $779,900 | $371,000 | $374,000 | $374,000 | $0 | $0 | $2,489,200 |
| Cash Outflows | | | | | | | | | | | | | |
| Gallons Purchased | 135,000 | 405,000 | 0 | 0 | 920,000 | 135,000 | 135,000 | 135,000 | 135,000 | 435,000 | 0 | 0 | 975,000 |
| Per Gallon Price | | | | | | | | | | | | | |
| Vendor Fuel Payments | $0 | $0 | $0 | $0 | $1,417,100 | $655,900 | $232,800 | $698,400 | $0 | $0 | $0 | $0 | $1,587,100 |
| Merchandise Vendors | $0 | $477,500 | $0 | $0 | $477,500 | $0 | $0 | $0 | $0 | $590,000 | $0 | $0 | $590,000 |
| Rents | $0 | $0 | $0 | $0 | $50,000 | $75,000 | $0 | $0 | $0 | $375,000 | $0 | $0 | $450,000 |
| Payroll-Officers and directors | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Payroll-Corporate employees | $0 | $0 | $0 | $0 | $45,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Payroll C-Store Employees | $0 | $175,000 | $0 | $0 | $175,000 | $0 | $0 | $0 | $0 | $70,000 | $0 | $0 | $70,000 |
| Payroll Taxes | $0 | $35,000 | $0 | $0 | $47,000 | $0 | $0 | $0 | $0 | $15,000 | $0 | $0 | $15,000 |
| 401(k) | $0 | $800 | $0 | $0 | $800 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sales Taxes | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Telephone and Utilities | $4,500 | $4,500 | $0 | $0 | $22,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $0 | $0 | $22,500 |
| Other | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Rent payments | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $25,000 | $0 | $0 | $25,000 |
| Trustee | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Greystone DIP Fee/Interest | | | | | | $6,250 | | | | | | | |
| Trade DIP Fee | | | | | | | | | | | | | |
| Professional Fees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $200,000* | $0 | $0 | $0 | $0 | $200,000 |
| Insurance | $0 | $0 | $0 | $0 | $110,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Repairs & Maintenance | $4,400 | $4,400 | $0 | $0 | $22,000 | $4,400 | $4,400 | $4,400 | $4,400 | $4,400 | $0 | $0 | $22,000 |
| Other Opex | $12,550 | $12,550 | $0 | $0 | $62,750 | $12,550 | $12,550 | $12,550 | $12,550 | $12,550 | $0 | $0 | $62,750 |
| Total Cash Out | $21,450 | $709,750 | $0 | $0 | $2,429,650 | $758,600 | $254,250 | $919,850 | $21,450 | $1,096,450 | $0 | $0 | $3,044,350 |
| Beginning Cash Balance | | | | | $960,850 | | | | | | | | $645,800 |
| Net Daily Cash Flow | $310,750 | -$377,550 | $0 | $0 | -$315,050 | -$168,300 | $525,650 | -$548,850 | $352,550 | -$722,450 | $0 | $0 | -$555,150 |
| Ending Cash Before Borrowings | $1,038,350 | $660,800 | $660,800 | $660,800 | $645,800 | $492,500 | $1,018,150 | $469,300 | $821,850 | $99,400 | $99,400 | $99,400 | $90,650 |
| Greystone DIP Available | | | | | $200,000 | | | | | | | | $200,000 |
| Ending Cash with Greystone DIP | | | | | $845,800 | | | | | | | | $290,650 |
| Inventory Rollforward - Fuel | | | | | | | | | | | | | |
| Beginning Balance | $206,850 | $206,850 | $672,450 | $422,350 | $449,350 | $172,250 | $154,950 | $137,650 | $120,350 | $103,050 | $603,250 | $353,150 | $372,250 |
| Purchases | $232,800 | $698,400 | $0 | $0 | $1,587,100 | $232,800 | $232,800 | $232,800 | $232,800 | $750,300 | $0 | $0 | $1,681,500 |
| Sales @ Cost | -$232,800 | -$232,800 | -$250,100 | -$250,100 | -$1,664,200 | -$250,100 | -$250,100 | -$250,100 | -$250,100 | -$250,100 | -$250,100 | -$250,100 | -$1,750,700 |
| Ending Balance | $206,850 | $672,450 | $422,350 | $172,250 | $372,250 | $154,950 | $137,650 | $120,350 | $103,050 | $603,250 | $353,150 | $103,050 | $303,050 |
| Inventory Rollforward - Merchandise | | | | | | | | | | | | | |
| Beginning Balance | $1,700,000 | $1,720,000 | $1,740,000 | $1,760,000 | $1,640,000 | $1,780,000 | $1,800,000 | $1,820,000 | $1,840,000 | $1,860,000 | $1,880,000 | $1,900,000 | $1,780,000 |
| Purchases - Replenishment | $75,000 | $75,000 | $75,000 | $75,000 | $506,250 | $75,000 | $78,750 | $78,750 | $78,750 | $78,750 | $82,500 | $82,500 | $555,000 |
| Purchases - Ramp Up | $20,000 | $20,000 | $20,000 | $20,000 | $140,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $140,000 |
| Sales @ Cost | -$75,000 | -$75,000 | -$75,000 | -$75,000 | -$506,250 | -$75,000 | -$78,750 | -$78,750 | -$78,750 | -$78,750 | -$82,500 | -$82,500 | -$555,000 |
| Ending Balance | $1,720,000 | $1,740,000 | $1,760,000 | $1,780,000 | $1,780,000 | $1,800,000 | $1,820,000 | $1,840,000 | $1,860,000 | $1,880,000 | $1,900,000 | $1,920,000 | $1,920,000 |
| Accounts Receivable | | | | | | | | | | | | | |
| Beginning Balance | $542,400 | $560,200 | $578,000 | $944,500 | $967,600 | $1,311,000 | $1,089,700 | $683,800 | $686,800 | $686,800 | $686,800 | $1,063,300 | $1,311,000 |
| Sales | $348,000 | $348,000 | $366,500 | $366,500 | $2,448,000 | $366,500 | $371,500 | $371,500 | $371,500 | $371,500 | $376,500 | $376,500 | $2,605,500 |
| Collections | -$330,200 | -$330,200 | $0 | $0 | -$2,104,600 | -$587,800 | -$777,400 | -$368,500 | -$371,500 | -$371,500 | $0 | $0 | -$2,476,700 |
| Ending Balance | $560,200 | $578,000 | $944,500 | $1,311,000 | $1,311,000 | $1,089,700 | $683,800 | $686,800 | $686,800 | $686,800 | $1,063,300 | $1,439,800 | $1,439,800 |
| Eligibility Formula | | | | | | | | | | | | | |
| Appco Fuel Inv Avail @ 75% | $155,138 | $504,338 | $316,763 | $129,188 | $279,188 | $116,213 | $103,238 | $90,263 | $77,288 | $452,438 | $264,863 | $77,288 | $227,288 |
| Appco Merch Inv Avail @ 50% | $860,000 | $870,000 | $880,000 | $890,000 | $890,000 | $900,000 | $910,000 | $920,000 | $930,000 | $940,000 | $950,000 | $960,000 | $960,000 |
| Appco AR Avail @ 80% | $448,160 | $462,400 | $755,600 | $1,048,800 | $1,048,800 | $871,760 | $547,040 | $549,440 | $549,440 | $549,440 | $850,640 | $1,151,840 | $1,151,840 |
| Total Availability | $1,463,298 | $1,836,738 | $1,952,363 | $2,067,988 | $2,217,988 | $1,887,973 | $1,560,278 | $1,559,703 | $1,556,728 | $1,941,878 | $2,065,503 | $2,189,128 | $2,339,128 |
| Availability | $2,501,848 | $2,497,538 | $2,813,163 | $2,726,788 | $2,863,788 | $2,360,473 | $2,578,428 | $2,029,003 | $2,378,578 | $2,041,278 | $2,164,903 | $2,268,528 | $2,429,778 |
| Fuel Accounts Payable | | | | | | | | | | | | | |
| Beginning Balance | $655,900 | $888,700 | $1,587,100 | $1,587,100 | $1,417,100 | $1,587,100 | $1,164,000 | $1,164,000 | $698,400 | $931,200 | $1,681,500 | $1,681,500 | $1,587,100 |
| Purchases - Fuel | $232,800 | $698,400 | $0 | $0 | $1,587,100 | $232,800 | $232,800 | $232,800 | $232,800 | $750,300 | $0 | $0 | $1,681,500 |
| Less Payments - Fuel | $0 | $0 | $0 | $0 | $1,417,100 | $655,900 | $232,800 | $698,400 | $0 | $0 | $0 | $0 | $1,587,100 |
| Ending Fuel Balance | $888,700 | $1,587,100 | $1,587,100 | $1,587,100 | $1,587,100 | $1,164,000 | $1,164,000 | $698,400 | $931,200 | $1,681,500 | $1,681,500 | $1,681,500 | $1,681,500 |
| Merchandise Accounts Payable | | | | | | | | | | | | | |
| Beginning Balance | $1,486,250 | $1,581,250 | $1,198,750 | $1,293,750 | $1,220,000 | $1,388,750 | $1,483,750 | $1,582,500 | $1,681,250 | $1,780,000 | $1,288,750 | $1,391,250 | $1,388,750 |
| Purchases - Merchandise | $75,000 | $75,000 | $75,000 | $75,000 | $506,250 | $75,000 | $78,750 | $78,750 | $78,750 | $78,750 | $82,500 | $82,500 | $555,000 |
| Purchases - Ramp Up | $20,000 | $20,000 | $20,000 | $20,000 | $140,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $140,000 |
| Less Payments - Merchandise | $0 | $477,500 | $0 | $0 | $477,500 | $0 | $0 | $0 | $0 | $590,000 | $0 | $0 | $590,000 |
| Ending Balance | $1,581,250 | $1,198,750 | $1,293,750 | $1,388,750 | $1,388,750 | $1,483,750 | $1,582,500 | $1,681,250 | $1,780,000 | $1,288,750 | $1,391,250 | $1,493,750 | $1,493,750 |
| Total Accounts Payable | $2,469,950 | $2,785,850 | $2,880,850 | $2,975,850 | $2,975,850 | $2,647,750 | $2,746,500 | $2,379,650 | $2,711,200 | $2,970,250 | $3,072,750 | $3,175,250 | $3,175,250 |

* This budget was the one submitted to the Court on Friday, March 13, 2009, but Debtor and Greystone agree that this professional fee amount was incorrectly included in the budget and was intended to be excluded.