IN RE:                                    *
                                          *
**APPALACHIAN OIL COMPANY, INC.**         *     **CASE NO. 2:09-bk-50259**
                                          *     **Chapter 11**
     **Debtor**                            *

## RESPONSE IN OPPOSITION TO MOTION OF McDONALD'S CORPORATION FOR RELIEF FROM AUTOMATIC STAYS [sic], FOR ADEQUATE PROTECTION AND/OR FOR ASSUMPTION OR REJECTION OF LEASE

The Debtor, Appalachian Oil Company, Inc. (the "Debtor" or "APPCO"), submits the following response in opposition to the motion of McDonald's Corporation ("McDonalds") for relief from the automatic stays [sic], for adequate protection and/or for assumption or rejection of lease (the "Motion").

### FACTUAL BACKGROUND

APPCO and McDonalds are parties to a Ground Lease and Operating Agreement dated August 17, 1996 (the "Lease"). The Lease covers 2,285 square feet of real property located at the intersection of Browns Mill Road and North State of Franklin Road in Johnson City, Tennessee on which a convenience store and adjoining McDonalds restaurant are constructed and currently in operation.

Under the current terms of the Lease, APPCO is to pay rent of $2,782.20 on the 1st day of every calendar month. If rent is not paid within fifteen (15) days of the due date, the payments not made accrue interest at a rate of twelve percent (12%) per annum. Section 18A of the Lease also contains a ten (10) day cure period for any rental payment that is not timely made.

Under Section 4A of the Lease, McDonalds is to pay all real estate taxes on the premises covered by the Lease, except that APPCO is obligated to "reimburse McDonald's 50% of the real estate taxes paid by McDonald's pursuant to this Article 4." Under Section 9K of the Lease, APPCO is responsible for fifty percent (50%) of the common area maintenance to be paid "within 30 days after receipt of the Common Area Shared Cost Form from McDonald's . . ." APPCO, under Section 9K, is also responsible for thirty-five percent (35%) of the costs related to the maintenance of trash corral and joint trash removal. These charges are billed in arrears and, to the extent referenced in the Motion, they represent pre-petition obligations of APPCO under the Lease.

The Lease requires APPCO to operate its portion of the leased premises as a "Fuel Facility" and a "Convenience Store," while McDonalds is to operate its portion of the leased premises as a "McDonald's Restaurant." The Lease further requires APPCO to continuously operate the fuel facility and convenience store on APPCO's portion of the leased premises.

On January 14, 2009 and January 23, 2009, McDonalds gave notice to APPCO that it was in default under the Lease for failing to continuously operate a fuel facility and convenience store on APPCO's portion of the leased premises. The January 14, 2009 letter provided APPCO with thirty (30) days to cure such default.

APPCO filed its Chapter 11 petition on February 9, 2009. On March 16, 2009, APPCO commenced stocking this location with fuel and groceries. The location is now fully stocked with both fuel and groceries, thereby curing any default under the Lease related to the requirement of the continuous operation of a fuel facility and convenience store.

McDonalds seeks termination of the stay to exercise state court remedies with respect to the Lease or for adequate protection. McDonalds also seeks to reduce the time for APPCO to assume or reject the Lease. For the reasons set forth herein, APPCO contends that both the Motion and the request to reduce the time for APPCO to assume or reject the Lease are not well founded and should be overruled.

## GENERAL RESPONSE TO MOTION

### 1. Time For Assumption or Rejection

McDonalds in the Motion contends that the Court should require APPCO to assume or reject the Lease in a specified time period with an expiration date of April 10, 2009. APPCO contends that it has a one hundred twenty (120) day period to assume or reject the Lease and that McDonalds has stated no basis or cited no authority which authorizes the Court to reduce that time period.

The time period for assumption or rejection on an unexpired lease of non-residential real property is governed by 11 U.S.C. § 365(d)(4)(A) which provides:

> Subject to subsection (B), an unexpired lease of non-residential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that non-

3

residential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of -

(i)     the date that is 120 days after the date of the order for relief; or

(ii)    the date of the entry of an order confirming a plan.

The Lease is an unexpired lease of non-residential real property. The Debtor, therefore, has at least one hundred twenty (120) days from the date of the order for relief[1] or until June 10, 2009 to assume or reject the Lease. This statutory provision does not authorize a bankruptcy court to reduce this one hundred twenty (120) day time period, nor has McDonalds cited any authority supporting its contention that such period should be reduced. This portion of the Motion should, therefore, be denied.

## 2.    Compliance With 11 U.S.C. § 365(d)(3) and Requested Relief From Automatic Stay

McDonalds contends in the Motion that APPCO has failed to comply with Section 365(d)(3) of the Bankruptcy Code in a number of respects, specifically the non-payment of the February and March 2009 rent and certain other pre-petition obligations under the Lease. APPCO contends that, by its payment of the March and April 2009 rent by the April 7, 2009 hearing date on the Motion, APPCO has complied with its present obligations under § 365(d)(3).

Section 365(d)(3) states in pertinent part:

---

[1]     **The filing of a voluntary petition under Chapter 11 constitute an order for relief. 11 U.S.C. § 301(b).**

4

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of non-residential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

APPCO contends that the failure to pay February rent and the failure to comply with lease covenants pre-petition as asserted by McDonalds cannot form a basis for relief from the automatic stay. APPCO further contends that its § 365(d)(3) obligations are met by its payment of the March and April 2009 rent by the April 7, 2009 hearing date. In support of this position, APPCO relies on In re Koenig Sporting Goods, Inc., 203 F.3d 986 (6th Cir. 2000), and In re Baby N' Kids Bedrooms, Inc., 2007 WL 1218768 (E.D. Mich. 2007).

In Koenig Sporting Goods, the debtor conducted a post-petition liquidation at one of its retail locations as part of its Chapter 11 case. Following the conclusion of the sale, the debtor rejected the lease for the location. The lease required that the rent be paid on the first of the month; however, the debtor's rejection of the lease was effective on the second day of the month. The creditor asserted that it was entitled to the rental payment for the entire month while the debtor contended that it was only required to pay a pro-rated amount for the two (2) days it remained obligated on the lease prior to rejection. The Sixth Circuit concluded that timely performance of the debtor's obligation under the lease required payment of the full month's rent, thereby rejecting adoption of a method of pro-ration recognized by certain other courts. 203 F.3d at 989. The Sixth Circuit stated as follows:

> The specific obligation to pay rent for December 1977 arose on December 1, which was during the post-petition, pre-rejection period. Under these circumstances, § 365(d)(3) is unambiguous as to the debtor's rent obligation and requires payment of the full month's rent.

5

Id. at 988. See also In re Montgomery Ward Holding Corp., 268 F.3d 205 (3rd Cir. 2001) (rejected pro-ration and found that word "obligation" could only be read as requiring payment strictly in accordance with the terms of the lease).

Baby N' Kids Bedrooms, Inc., supra, provides support for APPCO's position that the February rent under the Lease is not due under § 365(d)(3), but represents a pre-petition obligation and must only be paid if APPCO elects to assume the Lease. On June 8, 2006, the debtor in Baby N' Kids Bedrooms, Inc. filed a Chapter 7 petition and, at the time, had not paid rent for June 2006, which was due on June 1, 2006 under its lease. The debtor filed a motion to reject the lease which was granted by the court. The landlord then filed an administrative expense claim for the June and July 2006 rent. The debtor argued that the landlord was only entitled to an administrative expense claim for the July 2006 rent, the June 2006 rent being a pre-petition obligation as it was incurred on June 1, 2006. The bankruptcy court accepted the trustee's argument stating:

> The Koenig case, of course, is binding on this Court, and it and its progeny fully support the trustee's position here. The practical reality of the movant's case is that it reinstates the apportionment theory rejected in Koenig . . .

2007 WL 1218768 at *2.

The district court affirmed the bankruptcy court and held as follows:

> This Court agrees with the Debtor. Although, Landlord is correct in arguing that Koenig dealt with § 356(d)(3), as opposed to § 503(b), this Court believes that the reasoning applied in Koenig governs the outcome in this particular case. Like the lease in Koenig, the lease entered into between Landlord and Debtor provided that the rent was due 'on the first day of each month' for that month's rent . . . Consequently, in this case, Debtor's obligation to pay rent for June 2006 arose on June 1, 2006.

> Koenig, 203 F.3d at 989. Therefore, because the obligation to pay rent for June 2006 arose pre-petition, Landlord's claim is not entitled to priority as an administrative expense under § 503(b)(1) . . .

Id. at *4.

Similarly, here, APPCO's rent under the Lease to pay rent for February 2009 arose on February 1, 2009. APPCO filed its voluntary Chapter 11 petition on February 9, 2009. Under Koenig, which APPCO contends is binding on this Court, APPCO's February 2009 rent under the Lease is not an obligation that APPCO must meet to comply with § 365(d)(3). This analysis, likewise, holds true with respect to the $13,676.39 which McDonalds claims is owning for "taxes, utilities, trash, common area costs, interest and other miscellaneous costs." See Paragraph 10 of Motion. APPCO contends that these are pre-petition obligations under the Lease which are not required to be paid under § 365(d)(3), but only upon assumption of the Lease.

With respect to McDonald's claim that it is entitled to relief from the automatic stay resulting from APPCO's failure to pay the February 2009 rent and meet certain other obligations under the Lease, APPCO contends such relief is unwarranted under the present facts and relies on In re The 1/2 Off Card, Inc., 2001 WL 1822419 (Bankr. E.D. Mich. 2001). In Off Card, Inc., supra, the debtor filed a bankruptcy petition on June 2, 2000, but failed to pay the June rent which was due June 1, although rents for subsequent post-petition months were paid. The landlord filed, among other things, a motion for relief from stay on the basis of failure to pay the June rent contending that the debtor failed to comply with § 363(d)(3). At the time of the consideration of the motion, the debtor had rejected the lease at issue.

The Bankruptcy Court for the Eastern District of Michigan, after discussing Koenig, held as follows:

> In conclusion, the Court finds that the Debtor's obligation to pay rent for June 2000 arose on June 1, 2000 and Debtor was in default on this obligation when it filed for relief on June 2, 2000. However, the unambiguous language of § 365(d)(3) does not encompass an administrative claim as a result of this pre-petition default. Given the consequent status of the claim as prepetition claims, there necessarily does not exist sufficient cause to permit lifting of the stay to enable the landlords to pursue those claims in another forum.

2001 WL 1822419 at *3. Similarly, here, the failure of APPCO to pay the February rent or the other pre-petition charges does not give rise to a basis to lift the stay. APPCO contends that it will be in compliance with § 365(d)(3) by the April 7, 2009 hearing date by the payment of the March and April rent or a total of $5,564.40. The payment of this amount provides McDonalds with the necessary adequate protection under § 362(d)(1) and/or § 361, a form of the relief sought by McDonalds in the Motion.

## SPECIFIC RESPONSES TO ALLEGATIONS OF MOTION

APPCO, in response to the specific enumerated paragraphs of the Motion, states as follows:

1. Answering Paragraph 1, the allegations contained therein are admitted.

2. Answering Paragraph 2, the allegations contained therein are admitted.

3. Answering Paragraph 3, the allegations contained therein are denied as the terms of the Lease speak for themselves.

4. Answering Paragraph 4, the allegations contained therein are admitted.

5. Answering Paragraph 5, the allegations contained therein are admitted.

6. Answering Paragraph 6, it is admitted that, for a period of time prior to its bankruptcy filing, APPCO did not sell fuel at the leased premises.

7. Answering Paragraph 7, the allegations contained therein are denied as APPCO continued to operate the convenience store at the leased premises, albeit on a reduced basis.

8. Answering Paragraph 8, it is admitted that APPCO has not paid certain pre-petition obligations under the Lease including its share of real property taxes, to the extent such taxes are due and owing.

9. Answering Paragraph 9, it is admitted that APPCO has not paid the January 2009 and February 2009 rent under the Lease which are pre-petition obligations. APPCO intends to pay the March 2009 rent prior to the hearing on April 7, 2009.

10. Answering Paragraph 10, APPCO is without knowledge or information as to the exact amount of these pre-petition obligations under the Lease.

11. Answering Paragraph 11, the allegations contained therein are denied and it is further denied that McDonalds is entitled to relief from the automatic stay.

12. Answering Paragraph 12, the allegations contained therein are denied and it is further denied that McDonalds is entitled to relief from the automatic stay.

13. Answering Paragraph 13, APPCO avers that fuel and a complete stock of groceries were supplied to the leased premises commencing on March 16, 2009 and APPCO has continued to fully supply this location with fuel and groceries since that date. APPCO further avers that it anticipates paying the March and April 2009 rent by the April 7, 2009 hearing date.

14. Answering Paragraph 14, APPCO is without knowledge or information with respect to the allegations contained therein.

15. Answering Paragraph 15, APPCO denies the allegations contained therein and contends that pursuant to 11 U.S.C. § 365(d)(4)(A), it has until June 10, 2009 to assume or reject the Lease.

16. Answering Paragraph 16, APPCO denies the allegations contained therein and contends that pursuant to 11 U.S.C. § 365(d)(4)(A), it has until June 10, 2009 to assume or reject the Lease.

17. Answering Paragraph 17, the allegations contained therein are denied. APPCO contends that payment of the March and April 2009 rent under the Lease brings it into compliance with § 365(d)(3) and thereby provides McDonalds with adequate protection under 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 361.

18. Answering Paragraph 18, the allegations contained therein are denied as the requirements of adequate assurance of performance are not required until APPCO seeks to assume the Lease.

## CONCLUSION

For the reasons set forth herein, the Motion should be denied.

**HUNTER, SMITH & DAVIS, LLP**

By: __/s/Mark S. Dessauer__
Mark S. Dessauer, Esq. (TN BPR NO. 010421
Attorney for Debtor
Post Office Box 3740
Kingsport, Tennessee 37664
(423) 378-8840; Fax: (423) 378-8801

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 2, 2009 the **Response In Opposition to Motion of McDonald's Corporation For Relief From Automatic Stays [sic], For Adequate Protection and/or For Assumption Or Rejection of Lease** was filed electronically. The following parties will receive copies of this document. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties, if any, have been served by hand delivery, overnight delivery, facsimile transmission, or by mailing a copy of same by United States Mail, postage prepaid.

McDonald's Corporation
c/o Walter N. Winchester, Esq.
Suite 100, 800 S. Gay St.
Knoxville, TN 37929

Patricia Foster, Esq., Attorney for the U. S. Trustee
800 Market Street
Suite 114, Howard Baker U. S. Courthouse
Knoxville, Tennessee 37902

John F. Teitenberg, Esq.
Frost Brown Todd, LLC
424 Church Street, Suite 1600
Nashville, Tennessee 37219-2308
Counsel for Committee of Unsecured Creditors

Douglas L. Lutz, Esq.
Frost Brown Todd, LLC
2200 PNC Center, 201 East Fifth Street
Cincinnati, Ohio 45202
Counsel for Committee of Unsecured Creditors

Brent C. Strickland, Esq. and Stephen B. Gerald, Esq.
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street
Baltimore, Maryland 21202
Counsel for Committee of Unsecured Creditors

**HUNTER, SMITH & DAVIS, LLP**
*/s/ Mark S. Dessauer*
Mark S. Dessauer

DESSAUER: A-B: APPALACHIAN OIL
APPCO.85049