UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE

IN RE:      *
     *
APPALACHIAN OIL COMPANY, INC.      *    CASE NO. 2:09-bk-50259
     *    Chapter 11
Debtor      *


# RESPONSE IN OPPOSITION TO MOTIONS FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION

The Debtor, Appalachian Oil Company, Inc. (the "Debtor" or "APPCO"), submits the following responses in opposition to: (a) motion for relief from automatic stay filed by Michael Cummins, Kevin Cummins and Anthony Cummins (collectively the "Cummins") **[Document No. 129]** (the "Cummins Motion"); (b) MacLean, Inc.'s ("MacLean") motion for relief from the automatic stay or, in the alternative, for adequate protection **[Document No. 133]** (the "MacLean Motion"); and (c) Management Properties, Inc.'s ("MPI") motion for relief from the automatic stay or, in the alternative, for adequate protection **[Document No. 135]** (the "MPI Motion") (the Cummins Motion, the MacLean Motion and the MPI Motion sometimes collectively hereinafter the "Motions").

## FACTUAL BACKGROUND

In September 2007, Titan Global Holdings, Inc. ("Titan") purchased substantially all the issued and outstanding stock of APPCO from The James R. MacLean Revocable Trust, Sara G. MacLean, The Linda R. MacLean Irrevocable Trust and Jeffrey H. Benedict for a gross

purchase price of some $37 million which, with the exception of $1 million placed in escrow, was paid in cash at closing. At the time of the acquisition, APPCO leased several of its convenience store locations, its corporate offices and bulk plants from the then-shareholders of APPCO and APPCO's affiliate companies, MacLean and MPI. MacLean and MPI are owned in part and controlled by Jim MacLean and Jeff Benedict, former shareholders of APPCO. Mr. MacLean and Mr. Benedict continue to be on APPCO's payroll and have been paid and received both pre-petition and post-petition compensation from the Debtor. They also occupy office space at APPCO's corporate headquarters in Blountville, Tennessee. MPI is a creditor of the Estate and is owed $150,545 in pre-petition rent for the months of January 2009 and a similar amount for the month of February 2009. The Cummins are owed $8,000 in pre-petition rent (February 2009) and MacLean is owed $24,135 in pre-petition rent (February 2009).

The leases at issue in the Cummins Motion, the MacLean Motion and the MPI Motion were drafted by Mr. Benedict and are identical in form and content, except for the name of the respective landlords, the tenants, the property leased and the rent. The following are the material terms of the three (3) lease agreements as they relate to specific issues raised in the Motions.

### CUMMINS LEASE

| | |
|---|---|
| **Properties Leased:** | APPCO No. 7 - Johnson City, Tennessee |
| | APPCO No. 21 - Johnson City, Tennessee |
| **Rent:** | $8,000 per month |
| **Rent Due Date:** | Fifth day of each month commencing on August 1, 2006 |
| **Current Term:** | August 1, 2006 through July 1, 2011 |

2

**MACLEAN LEASE**

### Properties and Rental:

| | | |
|---|---|---|
| 1. | APPCO No. 2, Bristol, TN - | $2,500 per month |
| 2. | APPCO No. 16, Bristol, VA - | $3,100 per month |
| 3. | APPCO No. 27, Johnson City, TN - | Rent equal to 1/2 of profit above $3,000 per month |
| 4. | APPCO No. 35, Kingsport, TN - | $1,600 per month |
| 5. | Bloomingdale - | $2,050 per month |
| 6. | Blountville Bulk Plant (Corporate Offices) - | $14,885 per month |

**Total Rent:** $24,135 per month

**Rent Due Date:** Fifth day of each month commencing on August 1, 2006

**Current Term:** August 1, 2006 through July 1, 2011.

**MPI LEASE**

### Fee Properties:

1. Abingdon Truck Stop, Abingdon, VA
2. APPCO No. 1, Rogersville, TN
3. APPCO No. 3, Bristol, VA
4. APPCO No. 6, Blountville, TN
5. APPCO No. 10, Johnson City, TN
6. APPCO No. 11, Johnson City, TN
7. APPCO No. 12, Bristol, VA
8. APPCO No. 14, Bristol, TN
9. APPCO No. 19, Piney Flats, TN
10. APPCO No. 22, Blountville, TN
11. APPCO No. 22, Adjacent Property, Blountville, TN
12. APPCO No. 24, Roan Mountain, TN
13. APPCO No. 25, Wise, VA
14. APPCO No. 29, Pennington Gap, VA
15. APPCO No. 30, Norton, VA
16. APPCO No. 31, Clintwood, VA
17. APPCO No. 33, Bristol, TN
18. APPCO No. 37, Gray, TN
19. APPCO No. 38, Abingdon, VA
20. APPCO No. 40, Elizabethton, TN
21. APPCO No. 49, Pound, VA
22. APPCO No. 57, Rogersville, TN
23. APPCO No. 60, Appalachia, VA
24. APPCO No. 63, Bristol, VA
25. APPCO No. 65, Johnson City, TN
26. APPCO No. 66, Erwin, TN
27. APPCO No. 67, Big Stone Gap, VA
28. Big Stone Gap Bulk Plant

29. Broadway Boulevard, Jefferson City, TN
30. Broadway, Johnson City, TN (vacant land)
31. Bulls Gap Market, Bulls Gap, TN
32. Interstate 26, Gray, TN
33. Eastside, Morristown, TN
34. Ewing 66, Ewing, VA
35. Exit 14, Abingdon, VA
36. Fort Chiswell, Max Meadows, VA
37. Gate City 66, Gate City, VA
38. Greendale, Abingdon, VA
39. Greenway Damascus, Damascus, VA
40. Greenway Lot 47, Damascus, VA
41. Greenway Lot 39, Damascus, VA
42. Hayter Bulk Plant, Morristown, TN
43. Hi Cliff, Hampton, VA
44. Lincoln Street Underpass, Kingsport, TN
45. Lincoln Street, Kingsport, TN
46. Mountview Restaurant, Newport, TN
47. Mountview - Vacant Lot, Newport, TN
48. Pennington Gap Plant, Pennington Gap, VA
49. Purley Property, Morristown, TN
50. Red Onion - Clinton, Clinton, VA
51. Roan Street, Johnson City, TN
52. Rogers 66, Big Stone Gap, VA (East 5th Street)
53. Rogers 66, Big Stone Gap, VA (421 E. 5th Street)
54. Southside 66, Morristown, TN

**Leased Properties:**

1. APPCO No. 8, Kingsport, TN (Subleased by APPCO)
2. APPCO No. 23, Kingsport, TN (Subleased by APPCO)
3. APPCO No. 23 Truck Wash, Kingsport, TN (Subleased by APPCO)
4. APPCO No. 9, Johnson City, TN (Leased by APPCO)
5. APPCO No. 16, Mountain City, TN (Subleased by APPCO)
6. APPCO No. 32, Elizabethton, TN
7. APPCO No. 39, Max Meadows, VA (Subleased by APPCO)
8. APPCO No. 62, Marion, VA (Leased by APPCO)
9. APPCO No. 64, Johnson City, TN (Leased by APPCO)
10. Mountain View Truck Stop, Newport, TN (Leased by APPCO)
11. Old APPCO No. 18, Johnson City, TN (Subleased by APPCO)

**Rent:** $150,545 per month[1]

**Rental Due Date:** 5th day of each month commencing on August 1, 2006

**Term:** August 1, 2006 through July 1, 2011

---

[1] Unlike the MacLean Lease, the rent is not allocated or divided among the various properties under the MPI Lease.

4

The terms of the three (3) leases are identical in all other respects. The total present monthly rent payable to the MacLean and Benedict related entities is $182,680.00.

**GENERAL RESPONSE TO MOTION**

1.  **Motion to Extend Time**. The Debtor has heretofore filed a Motion for Additional Time to Meet Debtor's Obligations under 11 U.S.C. § 365(d)(3) which requests an extension until April 13, 2009 or such additional time as may deem proper for the Debtor to perform its such post-petition obligations under the leases of non-residential real property to which it is a party. If and to the extent this motion may be granted by the Court, then the Cummins Motion, the MacLean Motion and the MPI Motion are premature.

2.  **Post-Petition Arrearage.** Each motion alleges a post-petition arrearage which presumably includes the stub-period of February 10-28, 2009 and that the Debtor has failed to meet its post-petition obligations under 11 U.S.C. § 365(d)(3) by failing to pay such stub-period rent as well as the rent for March 2009. APPCO acknowledges that it has not fully paid the March 2009 rent, but contends that it is not obligated to pay the February 2009 stub-period rent in order to meet its § 365(d)(3) post-petition rental obligations under the three (3) leases and relies on In re Koenig Sporting Goods, Inc., 203 F.3d 986 (6th Cir. 2000); In re Baby N' Kids Bedrooms, Inc., 2007 WL 1218768 (E.D. Mich. 2007); In re The 1/2 Off Card Shop, Inc., 2001 WL 1822419 (Bankr. E.D. Mich. 2001).

In Koenig Sporting Goods, the debtor conducted a post-petition liquidation at one of its retail locations as part of its Chapter 11 case. Following the conclusion of the sale, the debtor rejected the lease for that location. The lease required that the rent be paid on the first of the month; however, the debtor's rejection of the lease was effective on the second day of the

5

month. The creditor asserted that it was entitled to the rental payment for the entire month while the debtor contended that it was only required to pay a pro-rated amount for the two (2) days it remained obligated on the lease prior to rejection. The Sixth Circuit concluded that timely performance of the debtor's obligation under the lease required payment of the full month's rent, thereby rejecting adoption of a method of pro-ration recognized by certain other courts. 203 F.3d at 989. The Sixth Circuit stated as follows:

> The specific obligation to pay rent for December 1997 arose on December 1, which was during the post-petition pre-rejection period. Under these circumstances, § 365(d)(3) is unambiguous as to the debtor's rent obligations and requires payment of the full month's rent.

Id. at 988.

Baby N' Kids Bedrooms, Inc., supra, provides support for APPCO's position that the February rent under the Cummins Lease, the MacLean Lease, and the MPI Lease is not due under § 365(d)(3), but represents a pre-petition obligation and must only be paid if APPCO elects to assume such leases. On June 8, 2006, the debtor in Baby N' Kids Bedrooms, Inc. filed a Chapter 7 petition and, at the time, had not paid rent for June 2006, which was due on June 1, 2006 under its lease. The debtor filed a motion to reject the lease which was granted by the court. The landlord then filed an administrative expense claim for the June and July 2006 rent. The debtor argued that the landlord was only entitled to an administrative expense claim for the July 2006 rent, the June 2006 rent being a pre-petition obligation as it was incurred on June 1, 2006. The bankruptcy court accepted the trustee's argument stating:

> The Koenig case, of course, is binding on this Court, and it and its progeny fully support the trustee's position here. The practical reality of the movant's case is that it reinstates the apportionment theory rejected in Koenig . . .

2007 WL 1218768 at *2.

6

The district court affirmed the bankruptcy court and held as follows:

> This Court agrees with the Debtor. Although, Landlord is correct in arguing that Koenig dealt with § 356(d)(3), as opposed to § 503(b), this Court believes that the reasoning applied in Koenig governs the outcome in this particular case. Like the lease in Koenig, the lease entered into between Landlord and Debtor provided that the rent was due 'on the first day of each month' for that month's rent . . . Consequently, in this case, Debtor's obligation to pay rent for June 2006 arose on June 1, 2006. Koenig, 203 F.3d at 989. Therefore, because the obligation to pay rent for June 2006 arose pre-petition, Landlord's claim is not entitled to priority as an administrative expense under § 503(b)(1) . . .

Id. at *4. Similarly, here, APPCO's rent under the Cummins Lease, the MacLean Lease, and the MPI Lease to pay rent for February 2009 arose on February 5, 2009. APPCO filed its voluntary Chapter 11 petition on February 9, 2009. Under Koenig, which APPCO contends is binding on this Court, APPCO's February 2009 rent under the three leases is not an obligation that APPCO must meet to comply with § 365(d)(3). APPCO's obligation to pay the February 2009 rent arose on February 5, 2009 and represents pre-petition obligations to Cummins ($8,000), MacLean ($24,135), and MPI ($150,545), respectively. Their position or contentions to the contrary should be rejected.

In re The 1/2 Off Card Shop, Inc., supra, provides further support for the Debtor's argument with respect to the February 2009 rent. In The 1/2 Off Card Shop, Inc., the debtor filed a bankruptcy petition on June 2, 2000, but failed to pay the June rent under its lease which was due on June 1, although rents for subsequent post-petition months were paid. The landlord filed, among other things, a motion for relief from the stay on the basis of the debtor's failure to pay the June rent contending that the debtor failed to comply with § 363(d)(3). At the time of the court's consideration of the motion, the debtor had rejected the leases at issue.

The Bankruptcy Court for the Eastern District of Michigan, after discussing Koenig, held as follows:

> In conclusion, the Court finds that Debtor's obligation to pay rent for June 2000 arose on June 1, 2000 and Debtor was in default of this obligation when it filed for relief on June 2, 2000. However, the unambiguous language of § 365(d)(3) does not encompass an administrative claim as a result of this pre-petition default. Given the consequent status of the claim as pre-petition claims, there necessarily does not exist sufficient cause to permit lifting of the stay to enable the landlords to pursue those claims in another forum.

2001 WL 1822419 at *3. Similarly, here, the failure of APPCO to pay the February rent under the Cummins Lease, the MacLean Lease and the MPI Lease does not give rise to a basis to lift the stay for the movants to pursue their state court remedies to obtain possession of the leased premises. This is because the February rent represents a pre-petition obligation. Additionally, APPCO contends that its compliance with § 365(d)(3) in the post-petition/pre-assumption/rejection period constitutes sufficient adequate protection such that any relief from or modification of the stay is not warranted.

## SPECIFIC RESPONSES TO ALLEGATIONS OF MOTIONS

APPCO, in response to the enumerated paragraphs of the three (3) motions, states as follows.

### A. Cummins Motion

1. Answering Paragraph 1, the allegations contained therein are admitted.

2. Answering Paragraph 2, it is denied that the parcels subject to the lease agreement are described with particularity. The remaining allegations contained therein are admitted.

3. Answering Paragraph 3, the Debtor admits that it has failed to pay the March and April rent under the Cummins Lease. The remaining allegations contained therein are denied. The Debtor avers that the present post-petition rental obligations under the Cummins Lease total $16,000 (March and April), but contends that the February stub-period rent and the 2008 taxes are pre-petition obligations which need not be met in order for the Debtor to meet its § 365(d)(3) obligations.

4. Answering Paragraph 4, the Debtor admits that no rental payments from the March 16, 2009 budget were paid to the Cummins. The remaining allegations contained in Paragraph 4 are denied. The Debtor avers that, pursuant to 11 U.S.C. § 365(d)(4)(A), it has a period of one hundred twenty (120) days or until June 10, 2009 to assume the Cummins Lease and, therefore, has no obligation to meet the statutory requirements for the assumption of the Cummins Lease at this time.

5. Answering Paragraph 5, the Debtor admits that it has presently failed to meet its § 365(d)(3) obligation under the Cummins Lease but avers that it plans to cure or propose a means to cure such non-performance that will provide the Cummins with adequate protection such that relief from the automatic stay is not warranted.

6. Answering Paragraph 6, the Debtor intends to provide or propose a plan to provide the Cummins with adequate protection in consideration for the use of the leased premises under the Cummins Lease.

B. **MacLean Motion**

1. Answering Paragraph 1, the allegations contained therein are admitted.

2. Answering Paragraph 2, it is denied that the parcels subject to the MacLean Lease are described with particularity. The remaining allegations contained therein are admitted.

3. Answering Paragraph 3, the Debtor admits that it has failed to pay the March and April rent under the MacLean Lease. The remaining allegations contained therein are denied. The Debtor avers that the post-petition rental obligations under the MacLean Lease are $48,270 (March and April), but contends that the February stub-period rent and the 2008 taxes are pre-petition obligations which need not be met in order for the Debtor to meet its § 365(d)(3) obligations.

4. Answering Paragraph 4, the Debtor admits that no rental payments from the March 16, 2009 budget were paid to MacLean. The remaining allegations contained in Paragraph 4 are denied. The Debtor avers that, pursuant to 11 U.S.C. § 365(d)(4)(A), it has a period of one hundred twenty (120) days or until June 10, 2009 to assume the MacLean Lease and, therefore, has no obligation to meet the statutory requirements for the assumption of the MacLean Lease at this time.

5. Answering Paragraph 5, the Debtor admits that it has presently failed to meet its § 365(d)(3) obligation under the MacLean Lease but avers that it plans to cure or propose a means to cure such non-performance that will provide MacLean with adequate protection such that relief from the automatic stay is not warranted.

6.      Answering Paragraph 6, the Debtor intends to provide or propose a plan to provide MacLean with adequate protection in consideration for the use of the leased premises under the MacLean Lease.

## C.    MPI Motion

1.      Answering Paragraph 1, the allegations contained therein are admitted.

2.      Answering Paragraph 2, it is denied that the parcels subject to the MPI Lease are described with particularity. The remaining allegations contained therein are admitted.

3.      Answering Paragraph 3, the Debtor admits that it has failed to pay the entirety of the March and April rent under the MPI Lease. The remaining allegations contained therein are denied. The Debtor avers that the post-petition rental obligations under the MPI Lease are $226,090 (March and April), but contends that the February stub-period rent and the 2008 taxes are pre-petition obligations which need not be met in order for the Debtor to meet its § 365(d)(3) obligations.

4.      Answering Paragraph 4, the Debtor avers that rental payments of $75,000 designated in the March 16, 2009 budget were paid to MPI. The remaining allegations contained in Paragraph 4 are denied. The Debtor avers that, pursuant to 11 U.S.C. § 365(d)(4)(A), it has a period of one hundred twenty (120) days or until June 10, 2009 to assume the MPI Lease and, therefore, has no obligation to meet the statutory requirements for the assumption of the MPI Lease at this time. It is admitted that the Debtor paid MPI $75,000, but avers that the post-petition arrearage (March and April) is $226,090.

11

5. Answering Paragraph 5, the Debtor admits that it has presently failed to meet its § 365(d)(3) obligation under the MPI Lease but avers that it plans to cure or propose a means to cure such non-performance that will provide MPI with adequate protection such that relief from the automatic stay is not warranted.

6. Answering Paragraph 6, the Debtor intends to provide or propose a plan to provide MPI with adequate protection in consideration for the use of the leased premises described in the MPI Lease.

**WHEREFORE,** APPCO requests that the Cummins Motion, the MacLean Motion and the MPI Motion be denied.

        **HUNTER, SMITH & DAVIS, LLP**
By:    */s/Mark S. Dessauer*
        Mark S. Dessauer, Esq.
        TN BPR NO. 010421
        Attorney for Debtor
        Post Office Box 3740
        Kingsport, Tennessee 37664
        (423) 378-8840; Fax: (423) 378-8801

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 5, 2009 the **Response In Opposition to Motions for Relief From The Automatic Stay Or, Alternatively, For Adequate Protection** was filed electronically. The following parties will receive copies of this document. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties, if any, have been served by hand delivery, overnight delivery, facsimile transmission, electronic mail, or by mailing a copy of same by United States Mail, postage prepaid.

> Management Properties, Inc.
> c/o Gregory C. Logue, Esq.
> Woolf, McClane, Bright Allen & Carpenter
> 900 Riverview Tower, 900 S. Gay Street
> Knoxville, TN 37902
>
> Michael Cummins, Anthony Cummins, Kevin Cummins
> c/o Thomas Shields, III, Esq.
> P.O. Box 4210 CRS
> Johnson City, TN 37602
>
> MacLean, Inc.
> c/o Gregory C. Logue, Esq.
> 900 S. Gay Street, Suite 900
> Knoxville, TN 37902
>
> Patricia Foster, Esq., Attorney for the U. S. Trustee
> 800 Market Street
> Suite 114, Howard Baker U. S. Courthouse
> Knoxville, Tennessee 37902
>
> John F. Teitenberg, Esq.
> Frost Brown Todd, LLC
> 424 Church Street, Suite 1600
> Nashville, Tennessee 37219-2308
> Counsel for Committee of Unsecured Creditors
>
> Douglas L. Lutz, Esq.
> Frost Brown Todd, LLC
> 2200 PNC Center, 201 East Fifth Street
> Cincinnati, Ohio 45202
> Counsel for Committee of Unsecured Creditors
>
> Brent C. Strickland, Esq.
> Stephen B. Gerald, Esq.
> Whiteford, Taylor & Preston, LLP
> Seven Saint Paul Street
> Baltimore, Maryland 21202
> Counsel for Committee of Unsecured Creditors

**HUNTER, SMITH & DAVIS, LLP**

*/s/ Mark S. Dessauer*
Mark S. Dessauer

DESSAUER: A-B: APPALACHIAN OIL
APPCO.85049