UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION AT GREENEVILLE

| | |
|---|---|
| In Re : | : |
| | : |
| APPALACHIAN OIL COMPANY, INC., | : CASE NO. 09-50259 |
| | : Chapter 11 |
| Debtor. | : |

**YA LANDHOLDINGS, LLC AND
YA LANDHOLDINGS 7, LLC RESPONSE TO
DEBTOR'S MOTIONS TO REJECT LEASES**

YA Landholdings, LLC and YA Landholdings 7, LLC (collectively "YA") for their response to the Debtor's motions (docket nos. 278, 279, 280 and 281) to reject certain leases states as follows:

**BACKGROUND**

1. YA leases the non-residential real property where many of the Debtor's operations are conducted.

2. On April 30, 2009, the Debtor filed four motions, each relating to a lease of non-residential real property between YA and the Debtor (docket nos. 278 to 281). The Properties are identified by the Debtor as APPCO Store No. 43, 78, 45 and 41 (the "Properties"). In each instance, the Debtor seeks as Order deeming the pertinent lease (the "Leases") rejected "as of April 30, 2009."

3. In each motion, the Debtor states that it "reserves the right to withdraw this motion if it is able to reach a satisfactory re-negotiation of the rent . . . under the Lease."

4. Throughout the month of May, the Debtor requested significant rent reductions on its various long term leases. When YA refused to make such concessions, the Debtor indicated that it would go forward with its request to reject the Leases. Nevertheless, throughout the month of May, the Debtor has revisited the issue time and time again in the hopes of gaining

2849781.1

1

global rent concessions and dangling the prospect of assuming at least some of the Leases. While not obtaining a rent concession, the Debtor utilized this time to continue operating and selling fuel from the Properties thereby increasing its revenues and decreasing its unsold inventories from April 30, 2009.

5. Throughout the month of May, the Debtor has continued to enjoy the full use and benefit of the Properties that are the subject of the Leases. The Debtor continues to have full access to the Properties and retains keys to the structures at the Properties. The Debtor continues to keep inventory and equipment at the Properties. Upon information and belief, the Debtor continues to make sales at some or all of the Properties.

6. Despite its continued use of the Properties, and despite a prior Order of this Court requiring the Debtor to pay rent, (docket no. 243), the Debtor refuses to pay rent due under the Leases for the month of May. Similarly, the Debtor refuses to remove its possession from the Properties. The Debtor further refuses to confirm that it will remove its possession from the Properties by a date certain.

7. Accordingly, the Debtor is attempting to have its cake and eat it too. When it comes time to pay rent for the month of May, or to honor any of its other going forward obligations under the Leases, the Debtor claims it does not have to do so because it filed the equivocating motions to reject. However, when it comes time to enjoy the benefits of the Properties, to conduct operations there, to store inventory and equipment there, the Debtor fully avails itself of the benefits under the Leases as if they were in full force and effect. When it comes time to shirk its rental obligations, the Debtor is quick to point to the "as of April 30" references in its proposed Order. However, when it comes time to respond to YA's requests for finality as to when the Debtor will fully vacate and surrender the Properties, the Debtor's response has been vague and non-committal.

**ARGUMENT**

8. YA does not object to the Debtor's rejection of the four Leases in issue. However, YA does object to the proposed form of Order that states the rejection is "as of April 30, 2009." The rejection should be "as of" the date it is so Ordered by the Court. This is especially so where the Debtor has continued to enjoy all the benefits of the Leases without honoring any of the post-petition obligations --- even in the face of a Court order requiring the payment of rent.

9. The determination of the effective date of rejection is significant because 11 U.S.C. § 365(d)(3) obligates a debtor in possession to timely perform all the obligations under an unexpired lease "until such lease is assumed or rejected." 11 U.S.C. §365(d)(3) (emphasis added). A lease cannot be rejected until such rejection is approved by the court. See 11 U.S.C. §365(a)("the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." (emphasis added)). See also, Matter of Federated Dept. Stores, Inc., 131 B.R. 808 (S.D.Ohio 1991). While there is some split of authority on the issue, see, e.g., Matter of Federated Dept. Stores, Inc., 131 B.R. at 814 - 815, it appears that the majority rule is that a court should not deem a lease rejected retroactively to the date the motion was filed or any time earlier than the actual ruling by the Court. Id. Indeed, such retroactive rejection "would run counter to the policy behind the very rules that ensure lessors notice and the opportunity to be heard, see Bankr.Rules 6006(a) and 9014, as well as the court approval requirement of § 365(a), which necessarily contemplates that some time will be needed by the court to determine whether the rejection is in the best interests of the debtor." Id. at 815. See also, Paul Harris Stores, Inc. v. Mabel L. Slater Realty Trust, 148 B.R. 307. 309-310 (S.D.Ind. 1992)(and cases cited therein)( "Ten courts have considered the precise issue raised here, and eight have agreed that a lease rejection is effective only after being approved by the bankruptcy

court."). This view is also supported by the First Circuit in In re Thinking Machines Corp., 67 F.3d 1021, 1025 (1st Cir. 1995)("[W]e believe that section 365(a) is most faithfully read as making court approval a condition precedent to the effectiveness of a trustee's rejection of a nonresidential lease. Therefore, the date of court approval, not the motion filing date, controls."). In In re Thinking Machines, the First Circuit held that retroactive rejection was appropriate only where equitable principles so dictate.

10. Further, the Debtor should be compelled to immediately pay the rent on the Leases for the month of May, 2009. This is appropriate for the reasons set forth above, including the terms of this Court's prior Order and for the simple reason that the Debtor continued to use and enjoy the benefits of the Properties during that time. See, e.g, In re Koenig Sporting Goods, Inc., 203 F.3d 986 (6th Cir. 2000). The Debtor's proposed action runs directly contrary to Koenig.

11. The Debtor should be compelled to fully vacate all of the Properties by a date certain. If the Debtor has assets at the Properties those assets should be removed or formally abandoned pursuant to an Order of this Court. The Debtor's continued presence on the Properties interferes with YA's rights and ability to relet the premises. After rejection, such continued presence is nothing more than mere trespass.

12. Finally, until such time as the Debtor vacates the Properties, removes its assets, and restores YA to full and undisturbed possession, the Debtor should be ordered to pay YA ongoing rent under the terms of the Leases. Absent this remedy, YA will be held at bay in its efforts to relet or otherwise use the Properties and the Debtor will obtain a windfall of avoiding its own responsibilities.

13. Simply put, if the Debtor wants to get out, it should be ordered to do so. Until the Debtor gets out, it should honor its obligations under the Leases and pay rent.

## CONCLUSION

WHEREFORE, YA respectfully requests that this Court:

A. Order the Leases in issue rejected as of the date of the Order, not as of April 30, 2009;

B. Order the Debtor to pay rent under the Leases for May 2009 within five days;

C. Order the Debtor to remove itself, and any and all of its assets at the Properties in issue within five days or to file a motion to abandon said assets; and

D. Order the Debtor to continue making payments on the first of each month under the terms of the Leases until such time as the Debtor full removes itself and its property from the Properties in issue.

May 20, 2009
/s/ Robert A. Guy, Jr.
Robert A. Guy, Jr., Esq. (TN # 16715)
Jason J. Shields, Esq. (TN# 025688)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219-8966
Tel: (615) 244-6380
Fax: (615) 244-6804
bobby.guy@wallerlaw.com
jason.shields@wallerlaw.com

*Attorneys for YA Landholdings, LLC and YA Landholdings 7, LCC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing response was served on this 20th day of May, 2009, via the Court's ECF electronic noticing system to those who are registered to receive electronic notice in this case.

/s/ Robert A. Guy, Jr.

2849781.1