UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| APPALACHIAN OIL COMPANY, INC. | * | CASE NO. 2:09-bk-50259 |
| | * | Chapter 11 |
| Debtor | * | |

## OBJECTIONS TO FIRST APPLICATION OF WHITEFORD, TAYLOR & PRESTON, L.L.P. FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FEBRUARY 26, 2009 THROUGH MAY 31, 2009

The Debtor Appalachian Oil Company, Inc. (the "Debtor") submits the following objections to first application of Whiteford, Taylor & Preston, L.L.P. (the "Applicant") for allowance of interim compensation for services rendered and reimbursement of expenses incurred for the period February 26, 2009 through May 31, 2009 (the "Application") [Doc. No. 496].

1. <u>The Committee has not met its burden that hourly rates requested in the Application represents the prevailing market rate for the Eastern District of Tennessee. Accordingly, the Application should be denied or the hourly rates requested therein reduced so as to be in accordance with such prevailing rates</u>.

Compensation awards are authorized by 11 <u>U.S.C.</u> § 330 which provides in part for "reasonable compensation for actual, necessary services, and the cost of comparable services other than in a case under this title . . ." 11 <u>U.S.C.</u> § 330(a)(1). The party requesting a

statutory fee bears the burden of substantiating that request. Reed v. Rhodes, 179 F.3d 453, 472 (6th Cir. 1999) (citing Webb v. Dyer County Bounty Bd. of Educ., 471 U.S. 234, 242, 104 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985)). The Sixth Circuit has adopted the lodestar method in calculating fees in bankruptcy cases. In re Boddy, 950 F.2d. 334, 337 (6th Cir. 1991).

The "lodestar" is the proven number of hours reasonably expended on the case by the attorney, multiplied by the court-ascertained reasonable hourly rate. Hensley v. Eckehart, 461 U.S. 423, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); Reed, 179 F.3d at 471.[1]

To determine a reasonable hourly rate, the Sixth Circuit has stated that:

> courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to commend within the venue of the court of record.

(emphasis added). B & G Mining, Inc. v. Director, Office of Comp. Programs, 552 F.3d 657, 663 (6th Cir. 2008), (quoting Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 618 (6th Cir. 2007)); In re Williams, 357 B.R. 434, 438-39 (B.A.P. 6th Cir. 2007) (A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable comparable skill, experience and reputation). The fee movant bears the burden of establishing the prevailing market rate. Blum v. Stenson, 465 U.S. 866, 895 N. 11, 104 S.Ct. 1541, 79 L.Ed. 2d 891 (1984).

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in

---

[1.] See also Section 330(a) of the Bankruptcy Code which codifies the criteria for evaluating fee requests.

> this way is normally deemed to be reasonable and is referred to
> for convenience as the prevailing market rate.

Id.


In the Application, the Applicant seeks to be compensated for the following hours at the following hourly rates:

| Name | Hours | Hourly Rate |
|---|---|---|
| Brent C. Strickland | 54.8 | $430.00 |
| John F. Carlton | 188 | 460.00 |
| Stephen B. Gerald | 118.6 | 390.00 |
| Kenneth Oestreicher | 3.0 | 510.00 |
| Scott D. Freed | 9.9 | 460.00 |
| Susan J. Roberts | 2.6 | 370.00 |
| Todd M. Brooks | 25.3 | 290.00 |

Application, p.3. In its Lodestar analysis, Applicant states as follows with respect to the customary fee:

> WT&P submits that the fees and expenses sought herein are warranted, and are generally less than or equal to competitive fees in the Washington/Baltimore legal market for firms with comparable practices, given the complex and time-sensitive nature of these proceedings.

However, the Eastern District of Tennessee, not the Washington/Baltimore legal market is the applicable market or relevant legal community. B & G Mining, Inc. This statement or position by Applicant is, therefore, incorrect under applicable law.


It is incumbent upon Applicant to establish that the requested hourly rates are in line with those prevailing in the Eastern District of Tennessee for similar services by lawyers of reasonable comparable skill and experience. Applicant has failed to meet this burden in the Application. In addition, the Application contains no affidavits or other evidence establishing that the requested rates are in line with those prevailing in the Eastern District of Tennessee,

3

and the fee applications heretofore filed in this case indicate otherwise. Therefore, the Debtor requests that the Application be denied or alternatively, the hourly rates sought by the Applicant be reduced to those prevailing in the Eastern District of Tennessee upon the establishment of those rates by Applicant.

2. <u>The source of payment of any compensation or reimbursement of expenses awarded Applicant should not be from the bankruptcy estate, but limited to funds previously allocated for the benefit of unsecured creditors and/or directly funded by Greystone Business Credit II, L.L.C. through a separate DIP loan</u>.

On June 10, 2009, the Court signed and filed an Order Approving Compromise and Settlement By and Among Debtor, Official Committee of Unsecured Creditors (the "Committee"), Greystone Business Credit II, L.L.C. ("Greystone"), Former Shareholders and Landlords [Doc. No. 461] (the "Settlement Order"). Under the Settlement Order, the Committee is to receive (a) $750,000[2] from the $1,000,000 Escrow Fund as part of the settlement, and (b) a defined percentage of the net sale proceeds from the sale of the assets of the Debtor's estate.[3] The Debtor contends that the funds for payment of the Committee's professional fees should come from these sources of funds already designated for the benefit of unsecured creditors and not from the Debtor's estate. It is reasonable to conclude that if monies are set aside for the benefit of unsecured creditors, any approved compensation for the unsecured creditors' professionals should be paid from those funds.

---

[2.] This amount will be reduced by $25,000 for approved fees of Debtor's counsel.

[3.] This amount is estimated to be $637,500 assuming $10 million of net sale proceeds. This results in a total of $1,362,500 of funds allocated for the benefit of the committee, more than sufficient to fund the Application and any subsequent applications.

The Debtor recognizes that Paragraph 23 of the Final Order Authorizing Debtor in Possession Financing and Use of Cash Collateral (the "Final Order") [Doc. No. 242] authorizes the payment of Committee professionals, "to the extent that such compensation and expense reimbursement is set forth in the Budget and approved by Court Order." The Debtor further recognizes that the most recent budget filed with the Court [Doc. No. 480] has a line item for professional fees. Notwithstanding this line item, the Debtor does not currently have the available funds to pay the fees requested by the Committee, absent funding for such purpose by Greystone under the DIP Facility. The Debtor also needs the remaining funds under its DIP Facility to meet other operating expenses.

If Greystone refuses to fund from the DIP Facility for the Committee's approved fees and expenses or available funds under the DIP Facility area fully advanced, then the Committee has the option under Paragraph 24 of the Final Order to seek a direct funding from Greystone for "Authorized Committee Fees" of $15,000 for March, 2009 and $25,000 for each month thereafter. Thus, the Committee may seek payment of the approved fees and expenses directly from Greystone by an additional DIP loan unrelated to the existing DIP Facility for the Debtor.

Therefore, the Debtor contends that to the extent that the Committee's Application is approved, that the funding for such fees be limited to the monies to be received by the Committee under the Settlement Order and/or from a separate DIP Facility funded by Greystone for that purpose.

**CONCLUSION**

In sum, the Debtor requests that the Application be denied given the lack of evidence that the hourly rates sought by Applicant are in line with the prevailing rates in the Eastern District of Tennessee for similar services by lawyers with comparable skill and experience, or alternatively such rates be reduced to comport with such prevailing market rates and the Application be considered in light of such prevailing rates. The Debtor also contends that the source of payment for any fee approved by the Court for Applicant be from the funds to be paid to the Committee under the Settlement Order and/or directly funded by Greystone in a separate DIP loan.

**Respectfully submitted,**

**HUNTER, SMITH & DAVIS, LLP**

By:    _/s/Mark S. Dessauer_
       Mark S. Dessauer, Esq.
       TN BPR NO. 010421
       Attorney for Debtor
       Post Office Box 3740
       Kingsport, Tennessee 37664
       (423) 378-8840; Fax: (423) 378-8801

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 8, 2009, the forgoing: **Objections to First Application of Whiteford, Taylor & Preston, L.L.P. for Allowance of Interim Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period February 26, 2009 Through May 31, 2009** was filed electronically. The following parties will receive copies of this pleading. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties, if any, have been served by hand delivery, overnight delivery, facsimile transmission, or by mailing a copy of same by United States Mail, postage prepaid.

>Patricia Foster, Esq.
>Attorney for the U. S. Trustee
>800 Market Street
>Suite 114, Howard Baker U. S. Courthouse
>Knoxville, Tennessee 37902
>
>Glenn B. Rose
>HARWELL HOWARD HYNE GABBERT & MANNER, PC
>315 Deaderick Street, Suite 1800
>Nashville, Tennessee 37238
>Counsel for Greystone Credit II, LLC.
>
>John F. Teitenberg, Esq.
>Frost Brown Todd, LLC
>424 Church Street, Suite 1600
>Nashville, Tennessee 37219-2308
>Counsel for Committee of Unsecured Creditors
>
>Douglas L. Lutz, Esq.
>Frost Brown Todd, LLC
>2200 PNC Center, 201 East Fifth Street
>Cincinnati, Ohio 45202
>Counsel for Committee of Unsecured Creditors
>
>Brent C. Strickland, Esq. and Stephen B. Gerald, Esq.
>Whiteford, Taylor & Preston, LLP
>Seven Saint Paul Street
>Baltimore, Maryland 21202
>Counsel for Committee of Unsecured Creditors

>**HUNTER, SMITH & DAVIS, LLP**
>BY  */s/Mark S. Dessauer*
>Mark S. Dessauer

DESSAUER: A-B: APPALACHIAN OIL
APPCO.85049

7