**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| APPALACHIAN OIL COMPANY, INC. | * | CASE NO. 2:09-bk-50259 |
| | * | Chapter 11 |
| Debtor | * | |

# OBJECTIONS TO FIRST INTERIM APPLICATION OF PROTIVTI AS FINANCIAL ADVISORS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR MARCH 2, 2009 THROUGH MAY 31, 2009

The Debtor Appalachian Oil Company, Inc. (the "Debtor") submits the following objections to first interim application of Protiviti, Inc. (the "Applicant") as financial advisors for the Official Committee of Unsecured Creditors (the "Committee") for allowance of compensation and for reimbursement of expenses for March 2, 2009 through May 31, 2009 (the "Application") [Doc. No. 497].

1. <u>The Application fails to contain any evidence that the services of Applicant were of benefit to the bankruptcy estate or necessary to the administration of the case, and the Debtor contends that the services described in the Application fail to meet such tests. 11 USC § 330 (a)(4)(A)(ii). As a result, the Application should not be approved by the Court</u>.

Compensation awards are authorized by Section 330 of the Bankruptcy Code which provides in pertinent part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328 and 329, the court may award to a . . . professional person employed under section 327 or 1103 -

(A) reasonable compensation for actual, necessary services rendered by the . . . professional person . . . ; and

(B) reimbursement of out of pocket expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to a . . . professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including

(A) the time spent on such services;

(B) the rate charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time the services were rendered toward the completion of the case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparable skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B)[1], the court shall not allow compensation for –

(i) unnecessary duplication of services; or

(ii) services that were not –

---

[1] 11 U.S.C. § 330 (a) (4) (B) addresses chapter 12 and chapter 13 cases and, therefore is inapplicable here.

> (I) <u>reasonably likely to benefit the debtor's estate; or</u>
>
> (II) <u>necessary to the administration of the estate</u>.

11 <u>U.S.C.</u> § 330(a)(1), (2), (3), 4(A). (emphasis added). In order for the services of a professional to be "necessary," they must benefit the debtor's estate. <u>In re Robinson</u>, No. 05-1066, 2006 U.S. App. LEXIS 16336 at *374 (6th Cir. June 22, 2006) (citing <u>In re Gibbs-Inman Co.</u>, 114 F.3d 1187 (6th Cir. 1997) (unpublished table decision).

The Application submitted by the Applicant contains no substantive evidence of how the services Applicant rendered to the Committee benefited the bankruptcy estate or were necessary to the administration of this bankruptcy case. There is no indication in the Application that Applicant assisted in negotiating or securing vendor financing arrangements for the Debtor; in negotiating the Debtor's DIP Facility with Greystone or the amendments thereto; in negotiating or securing the Debtor's retention of a Chief Restructuring Officer; or in assisting with the preparation or sale of the Debtor's assets. There is not even any substantive evidence in the Application that Applicant assisted the Committee in securing the funds for the benefit of unsecured creditors in the Settlement Order. (See <u>infra</u>).

The Application sets out in a general fashion the work done by Applicant in the areas of case administration, financing, meetings of creditors, accounting/auditing, business analyses and data analyses, but contains no specifics tying this work to being of benefit to the Debtor's estate or necessary for the administration of this bankruptcy case. The Application states only in a conclusory fashion that this work was of benefit to the Committee. Further, the Application does not state why the employment of Applicant was necessary for the Committee

to perform its function as an unsecured creditors committee and even if that is the case, it follows that the payment of Applicant should come from funds allocated to the Committee. (See infra.)

Applicant's summary of work performed for which compensation is sought reflects the following:

| Description | Hours |
|---|---|
| <u>Bankruptcy - Case Administration</u>: Coordination and compliance activities, including preparation of statement of financial affairs; schedules, list of contacts; United States Trustee interim statements and operating reports; contracts with the United States Trustee; general credit inquiries. | 23.60 |
| <u>Bankruptcy - Financing</u>: Matters under sections 361, 363 and 364 including cash collateral, and secured claims; loan document analyses. | 10.30 |
| <u>Bankruptcy - Meeting of Creditors</u>: Preparing for and attending the conference of creditors, the Section 341(a) meeting and other creditors' committee meetings. | 5.30 |
| <u>Bankruptcy - Accounting/Auditing</u>: Activities related to maintaining and auditing books of account, preparation of financial statements and account analyses. | 20.30 |
| <u>Bankruptcy - Business Analysis</u>: Preparation and review of company business plan; development and review of strategies; preparation and review of cash flow forecasts and feasibility. | 19.00 |
| <u>Bankruptcy - Data Analysis</u>: Management information systems review, installation and analysis, construction, maintenance and reporting of significant case financial data, lease rejections, claims, etc. | 168.90 |
| Total Fees for Client No. 9004 - Appalachian Oil Company[2] | 247.40 |

---

[2] Although this reference may be a mistake or misnomer, it should be noted for the record that Appalachian Oil Company is <u>not</u> the client of the Applicant.

4

(See Exhibit B (Summary of Task) to Application) [Doc. 497-2]

Despite these representations to the Court, the Applicant did not assist the Debtor in preparation of its statement of financial affairs or schedules, nor was it involved at all in that process. Further, the Applicant did not attend the section 341(a) meeting of creditors as claimed in the summary of work. This document shows that of the 247.40 hours for which the Applicant seeks compensation, 168.90 or 68.27% was spent performing data analyses. The Debtor submits that the analyses of the Debtor's own data was neither necessary, nor did it benefit the Debtor's estate. This work certainly had no bearing on the administration of this bankruptcy case. To the extent such data analyses benefit the Committee, then the Applicant should be compensated for this work not from the bankruptcy estate, but from the funds allocated for the benefit of the Committee. (See infra.)

Given the Application fails to establish that the Applicant's services for which compensation is sought benefited the estate or necessary to the administration of the estate, the Application should not be approved by the Court.

2. <u>The Applicant has not met its burden that the hourly rates requested in the Application represent the prevailing market rate for an accountant or financial advisor in the Eastern District of Tennessee. Accordingly, the Application should be denied or the hourly rates requested therein reduced so as to be in accordance with such prevailing rates</u>..

The Sixth Circuit has adopted the lodestar method in calculating fees for professionals in bankruptcy cases. In re Boddy, 950 F.2d. 334, 337 (6th Cir. 1991). The lodestar method is also utilized for financial advisors and is especially applicable here in that Applicant seeks to be compensated based on specific hourly rates. See In re EWI, Inc., 208 B.R. 885 (Bankr. N.D. Ohio 1997); In re Commerical Financial Services, Inc., 427 F. 3d 804,

811 (10th Cir. 2005); In re Citation Corp., 493 F. 3d 1313, 1321 (11th Cir. 2007) (it is not improper to consider the lodestar methodology in awarding a financial advisor a professional fee).

The "lodestar" is the proven number of hours reasonably expended on the case by the attorney (professional), multiplied by the court-ascertained reasonable hourly rate. Hensley v. Eckehart, 461 U.S. 423, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); Reed, 179 F.3d at 471.

To determine a reasonable hourly rate, the Sixth Circuit has stated that:

> courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to commend <u>within the venue of the court of record.</u>

B & G Mining, Inc. v. Director, Office of Comp. Programs, 552 F.3d 657, 663 (6th Cir. 2008), (quoting Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 618 (6th Cir. 2007)) (emphasis added); In re Williams, 357 B.R. 434, 438-39 (B.A.P. 6th Cir. 2007) (A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable comparable skill, experience and reputation). The fee movant bears the burden of establishing the prevailing market rate. Blum v. Stenson, 465 U.S. 866, 895 N. 11, 104 S.Ct. 1541, 79 L.Ed. 2d 891 (1984).

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable and is referred to for convenience as the prevailing market rate.

In the Application, the Applicant seeks to be compensated for the following hours at the following hourly rates:

| Name | Hourly Rate |
|---|---|
| Misty D. Torbert | $220.00 |
| Camilla A. Johnson | 210.00 |
| Michael L. Atkinson | 470.00 |
| Jason N. Crockett | 330.00 |
| Andrew M. Frisvold | 220.00 |

Application, p.3.  In its lodestar analysis, Applicant states as follows with respect to the customary fee:

> The hourly rate for the individual professionals of Applicant working in this case are the normal customary rates charged by Applicant for its services to debtor, trustee and committees in other bankruptcy cases and to clients in matters not involving bankruptcy in the Baltimore and Washington D.C. area.  The hourly rates are within the customary rates charged by other accountants and financial advisors in the Baltimore-Washington area, and the total compensation sought is reasonable compared with fees charged by other similarly situated firms, in cases of this magnitude and complexity.

However, the Eastern District of Tennessee, not the Washington/Baltimore area is the applicable market.  B & G Mining, Inc.  This statement or position by Applicant is, therefore, incorrect under applicable law.

It is incumbent upon Applicant to establish that the requested hourly rates are in line with those prevailing in the Eastern District of Tennessee for similar services by accountants or financial advisors of reasonable comparable skill and experience.  Applicant has failed to meet this burden in the Application.  In addition, the Application contains no affidavits or other evidence establishing that the requested rates are in line with those prevailing in the Eastern District of Tennessee, for accountants and financial advisors.  Therefore, the Debtor requests that the Application be denied or alternatively, the hourly rates sought by the Applicant be reduced to those prevailing in the Eastern District of Tennessee upon the establishment of those rates by Applicant.

3. <u>The source of payment of any compensation or reimbursement of expenses awarded Applicant should not be from the bankruptcy estate, but limited to funds previously allocated for the benefit of unsecured creditors and/or directly funded by Greystone Business Credit II, L.L.C. through a separate DIP loan.</u>

On June 10, 2009, the Court signed and filed an Order Approving Compromise and Settlement By and Among Debtor, Official Committee of Unsecured Creditors (the "Committee"), Greystone Business Credit II, L.L.C. ("Greystone"), Former Shareholders and Landlords [Doc. No. 461] (herein the "Settlement Order"). Under the Settlement Order, the Committee is scheduled to receive (a) $750,000[3] from the $1,000,000 Escrow Fund as part of the settlement, and (b) a defined percentage of the net sale proceeds from the upcoming sale of the assets of the Debtor's estate.[4] The Debtor contends that the funds for payment of the fees sought by Applicant should come from such sources of funds already designated for the benefit of unsecured creditors and not from the Debtor's estate. It is reasonable to conclude that if monies are set aside for the benefit of unsecured creditors, any approved compensation for the unsecured creditors' professional should be paid form those funds.

The Debtor recognizes that Paragraph 23 of the Final Order Authorizing Debtor in Possession Financing and Use of Cash Collateral (the "Final Order") [Doc. No. 242] authorizes the payment of Committee professionals, "to the extent that such compensation and expense reimbursement is set forth in the Budget and approved by Court Order." The Debtor further recognizes that the most recent budget filed with the Court [Doc. No. 480] has a line item for professional fees. Notwithstanding this line item, the Debtor does not currently have the available funds to pay the fees requested Applicant, absent funding for such purpose by Greystone under the DIP Facility. The Debtor also needs the remaining funds under its DIP Facility to meet other operating expenses.

---

[3.] This amount will be reduced by $25,000 for approved fees of Debtor's counsel.

[4.] This amount is estimated to be $637,500 assuming $10 million of net sale proceeds. This results in a total of $1,362,500, more than sufficient to fund the Application and any subsequent applications.

If Greystone refuses to fund from the DIP Facility for the Applicant's approved fees and expenses, then the Applicant or the Committee has the option under Paragraph 24 of the Final Order to seek a direct funding from Greystone for "Authorized Committee Fees" of $15,000 for March, 2009 and $25,000 for each month thereafter. Thus, the Applicant or the Committee on behalf of Applicant may seek payment of the approved fees and expenses directly from Greystone by an additional DIP loan unrelated to the existing DIP Facility for the Debtor.

Therefore, the Debtor contends that to the extent that the Application is approved, that the funding for such fees be limited to the monies to be received by the Committee under the Settlement Order and/or from a separate DIP Facility funded by Greystone for that purpose.

In sum, the Debtor requests that the Application be denied given the lack of evidence that (a) the services rendered were of benefit to the bankruptcy estate and necessary for the administration of this bankruptcy case, and (b) the hourly rates sought by Applicant are in line with the prevailing rates in the Eastern District of Tennessee for similar services by accountants or financial advisors with comparable skill and experience. Alternatively, the rates sought by Applicant should be reduced to comport with such prevailing market rates and the Application be considered in light of such prevailing rates. The Debtor also contends that the source of payment for any fee approved by the Court for Applicant be from the funds to be paid

to the Committee under the Settlement Order and/or directly funded by Greystone in a separate DIP loan.

**Respectfully submitted,**

**HUNTER, SMITH & DAVIS, LLP**

By:    **/s/Mark S. Dessauer**
Mark S. Dessauer, Esq.
TN BPR NO. 010421
Attorney for Debtor
Post Office Box 3740
Kingsport, Tennessee 37664
(423) 378-8840; Fax: (423) 378-8801

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 8, 2009, the forgoing: **Objections to First Interim Application of Protiviti as Financial Advisors for the Official Committee of Unsecured Creditors for Allowance of Compensation and for Reimbursement of Expenses for March 2, 2009 Through May 31, 2009** was filed electronically. The following parties will receive copies of this pleading. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties, if any, have been served by hand delivery, overnight delivery, facsimile transmission, or by mailing a copy of same by United States Mail, postage prepaid.

Patricia Foster, Esq.
Attorney for the U. S. Trustee
800 Market Street
Suite 114, Howard Baker U. S. Courthouse
Knoxville, Tennessee 37902

Glenn B. Rose
HARWELL HOWARD HYNE GABBERT & MANNER, PC
315 Deaderick Street, Suite 1800
Nashville, Tennessee 37238
Counsel for Greystone Credit II, LLC.

John F. Teitenberg, Esq.
Frost Brown Todd, LLC
424 Church Street, Suite 1600
Nashville, Tennessee 37219-2308
Counsel for Committee of Unsecured Creditors

Douglas L. Lutz, Esq.
Frost Brown Todd, LLC
2200 PNC Center, 201 East Fifth Street
Cincinnati, Ohio 45202
Counsel for Committee of Unsecured Creditors

Brent C. Strickland, Esq. and Stephen B. Gerald, Esq.
Whiteford, Taylor & Preston, LLP

Seven Saint Paul Street
Baltimore, Maryland 21202
Counsel for Committee of Unsecured Creditors

**HUNTER, SMITH & DAVIS, LLP**
BY  */s/Mark S. Dessauer*
Mark S. Dessauer

**DESSAUER: A-B: APPALACHIAN OIL**
**APPCO.85049**