

**SIGNED this 31 day of August, 2009.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

In re

APPALACHIAN OIL COMPANY, INC.,　　　　No. 09-50259
　　　　　　　　　　　　　　　　　　　　　　Chapter 11
　　　　　　　　Debtor.

## M E M O R A N D U M

APPEARANCES:

> Daniel R. Bieger, Esq.　　　　　　　Mark S. Dessauer, Esq.
> Copeland & Bieger, P.C.　　　　　　Hunter, Smith & Davis, LLP
> Post Office Box 1296　　　　　　　 Post Office Box 3740
> Abingdon, Virginia 24212　　　　　　Kingsport, Tennessee 37664
> *Attorney for Agnes Davis*　　　　　*Attorney for Appalachian Oil Company*

**Marcia Phillips Parsons United States Bankruptcy Court**. This chapter 11 case is before the court on a motion by Agnes C. Davis ("Davis") for relief from the automatic stay in order to evict the debtor Appalachian Oil Company ("Debtor") from certain leased, non-residential property. Davis asserts that the lease was terminated prior to the Debtor's bankruptcy filing such that the stay is inapplicable and the Debtor is precluded from assuming the lease. As set forth in the following

discussion, the court concludes that the lease was not terminated. Accordingly, Davis' motion will be denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(G).

I.

On February 9, 2009, the Debtor filed a voluntary petition for reorganization under chapter 11 and is continuing to operate its business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. On March 25, 2009, Davis filed the motion for relief from stay that is presently before the court. Pursuant to an agreed order entered July 14, 2009, the parties submitted the motion for resolution on the record and set a briefing schedule. Briefs have now been filed.

The property at issue is located in Wytheville, Virginia. The Debtor leased the realty from Davis pursuant to an agreement dated September 3, 1991, which provides for monthly rental payments, payable "in advance." After the Debtor failed to pay rent for January 2009, the Debtor received the following handwritten letter from Davis on January 26, 2009:

> Wytheville, Virginia
> January 24, 2009
>
> Appalachian Oil Co. Inc.
> Box 1500 Highway 75
> Blountville, Tenn. 37617
>
> Dear Sir:
>
> Due to breach of Contract I will be compelled to Contract another Oil Co. to take over the business at my Station at Fort Chiswell.
>
> Sincerely,
>
> Agnes C. Davis

Davis argues that pursuant to the terms of the parties' lease agreement, the Debtor had ten days after receipt of this letter to cure the default in payment, and that absent payment the lease terminated. Because the Debtor made no payment during the ten-day period, Davis contends that the lease terminated on February 6, 2009, prior to the debtor's February 9, 2009 bankruptcy filing. The Debtor responds that the letter from Davis was legally insufficient to constitute a termination notice and that under the specific provisions of the lease, she was required to enter and retake

2

possession of the premises in order for the lease to terminate. The Debtor remains in possession of the leased premises and has paid all postpetition rent with the exception of the rent due for February 2009.

> The pertinent provisions of the lease agreement provide the following:
>
> If tenant shall fail to pay any rent to LESSOR when such rent is due and payable under the terms of this lease, and such default shall continue for a period of ten (10) days after written notice thereof has been given to LESSEE by LESSOR, or if LESSEE shall fail to perform any other duty or obligation imposed upon him by the terms of this lease, and such default shall continue for a period of twenty (20) days after written notice of such default has been given to LESSEE by LESSOR, or if LESSEE shall be adjudged bankrupt, or make a general assignment for the benefit of its creditors, or if a receiver of any property of LESSEE in or upon the demised premises be appointed in any action, suit or proceeding by or against LESSEE and such appointment shall not be vacated or annulled within sixty (60) days, or if the interest of LESSEE in the demised premises shall be sold under execution or other legal process, then and in any such event LESSOR shall have, in addition to any other rights and remedies to which she may be entitled, the right to enter upon the demised premises and again have, repossess and enjoy the same as if this lease had not been made, and thereupon this lease shall terminate without prejudice, however, to the right of LESSOR to recover from LESSEE all rent due under this Lease . . . .

II.

As recognized by one bankruptcy court:

> The termination of a lease under state law prior to tenant's filing a bankruptcy petition has a preclusive effect in the bankruptcy, and a bankruptcy court cannot reinstate the terminated lease. However, where the former lease has been terminated prepetition and the tenant filing bankruptcy retains possession of the premises under a tenancy at will or at sufferance, the debtor's possessory right is subject to the automatic stay of 11 U.S.C. 362(a)(1),(2), and (3). Even so, a landlord's desire to evict a debtor tenant whose lease has been terminated prepetition is sufficient cause for the bankruptcy court to grant relief from stay under § 362(d)(1).

*In re Nasir*, 217 B.R. 995, 997 (Bankr. E.D. Va. 1997) (internal citations omitted).[*]

---

[*] Section 362(b)(10) of the Bankruptcy Code provides that the automatic stay does not apply to "any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property." 11 U.S.C. § 362(b)(10). There is a dispute in the
(continued...)

The Debtor contests the motion because it intends to assume the lease with Davis and assign it in connection with a proposed sale. Under 11 U.S.C. § 365(c), however, assumption of a lease is precluded if "such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." In this context, "applicable nonbankruptcy law" means state law. *In re Memphis-Friday's Assoc.*, 88 B.R. 830, 834 (Bankr. W.D. Tenn. 1988).

Davis, who is a Virginia resident, and the Debtor, a Virginia corporation, agree that the applicable nonbankruptcy law to be considered in determining whether a lease of property in the state of Virginia has been terminated is that of Virginia. This court concurs. *See Anderson, Inc. v. Consol, Inc.*, 348 F.3d 496, 501(6th Cir. 2003) (a federal court is to apply the choice of law rules of the state in which the court sits); *Ohio Casualty Ins. Co. v. The Travelers Indemnity Co.*, 493 S.W.2d 465, 466 (Tenn. 1973) (The "rights and obligations under a contract are governed by the law of the state with the view to which it is made and . . . the intentions of the parties in this respect to be gathered from the terms of the instruments and all of the attending circumstances control.").

In Virginia, "a notice to terminate a landlord and tenant relationship must be clear and unequivocal, leaving no doubt as to the intention of the party giving it." *Patterson v Nat'l Adver. Co.*, 193 S.E.2d 676, 678 (Va. 1973). In order to be clear and unequivocal, a phrase must be capable of being understood in just one way and free from uncertainty or doubt. The notice must be "the expression of a clear and definite purpose to end the tenancy;" it cannot be conditional and it cannot leave a fair doubt as to its intention and meaning. *C.B Antrim's Executor v. Parker*, 163 S.E. 71 (Va. 1932); *Epes v. Palmieri*, 25 S.E.2d 279 (Va. 1943).

Applying this standard to the case at hand, this court is unable to conclude that the letter sent by Davis was a clear and unequivocal notice of termination. Because no particular breach of

---

*(...continued)
reported cases as to whether a termination of a lease after a default constitutes a termination "by the expiration of the stated term of the lease" within the scope of § 362(b)(10). *See In re Southcoast Exp., Inc.*, 337 B.R. 739 (Bankr. D. Mass. 2006), and cases cited therein. Because the court concludes, as discussed in the body of this opinion, that the lease did not terminate prepetition, it is not necessary for this court to resolve this dispute.

contract was identified in the letter, it was unclear whether the Debtor would have a ten or twenty-day cure period under the lease.  More importantly, the future tense language used by Davis, "I *will be* compelled to Contract another Oil Co.," could be viewed as a threat to lease to another tenant rather than an expression of a present intention.  While, as Davis argues, the letter also could be construed to mean that Davis was giving notice that she considered the lease terminated and that she planned to re-lease the premises, the fact that the letter is capable of more than one meaning renders it equivocal and, thus, lacking the necessary definiteness to constitute an effective termination notice.

Additionally, the court finds merit in the Debtor's argument that the lease default provision requires the lessor to re-enter the premises before the lease is terminated.  Under Virginia law, a court must glean "the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used."  *Boedeker v. Larson*, 605 S.E.2d 764, 769 (Va. App. 2004).   If the contract is "is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.  This is so because the writing is the repository of the final agreement of the parties." *Harris v. Woodrum*, 350 S.E.2d 667, 669 (Va. App. 1986) (quoting *Berry v. Klinger*, 300 S.E.2d 792, 796 (Va. 1983)).  Further, any lease provisions for re-entry or forfeiture must be strictly construed.  *See tenBraak v. Waffle Shops, Inc.*, 542 F.2d 919, 925 (4th Cir. 1976) (applying Virginia law); *Beckner v. Friendly Ice Cream Corp.*, 65 Va. Cir. 132, 2004 WL 1662290, *2 (Va. Cir. June 11, 2004) ("[T]he Supreme Court of Virginia has made clear that 'every required formality must be strictly observed' before a forfeiture will be allowed, as the law disfavors forfeitures.").

The relevant text of the lease recites a list of types of defaults beginning with the first which is default in payment: "If tenant shall fail to pay any rent to LESSOR when such rent is due and payable under the terms of this lease, and such default shall continue for a period of ten (10) days after written notice thereof has been given to LESSEE by LESSOR, or . . ., or . . . , or . . . [.]"  After setting forth these defaults and cure periods, the provision goes on to state:

> <u>then</u> and in any such event LESSOR shall have, in addition to any other rights and remedies to which she may be entitled, the right to enter upon the demised premises and again have, repossess and enjoy the same as if this lease had not been made, *and thereupon this lease shall terminate* without prejudice, however, to the right of

5

>LESSOR to recover from LESSEE all rent due under this lease. *In the event of any such default and re-entry, LESSOR shall have the right at its election to re-let the demised premises . . .* (emphasis added).

Under this exact language, if a default is not cured, *then* the Lessor has a right to re-enter the premises and *thereupon*, the lease shall terminate. Pursuant to the rule of construction known as the last antecedent doctrine, the word "thereupon" modifies the immediately preceding phrase. *See, e.g., Alger v. Virginia*, 590 S.E.2d 563, 565-66 (Va. 2004) (citing 2A Norman J. Singer, *Sutherland on Statutory Construction* § 47.33 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of a sentence.' Thus, a proviso usually is construed to apply to the provision or clause immediately preceding it."). In other words, the event that effects termination is re-entry and repossession by the Lessor after a default, rather than the default alone. This construction is confirmed by the last sentence in the provision that "in the event of any such default and re-entry, LESSOR shall have the right at its election to re-let the demised premises." Thus, an event of default gave Davis the right to enter upon the demised premises and "thereupon the exercise of that right, [the] lease shall terminate without prejudice . . . ."

Notwithstanding the foregoing, it appears to be the law in Virginia that *actual* re-entry is unnecessary. By statute in Virginia, "[a]ny person who shall have a right of reentry into lands by reason of any rent issuing thereout being in arrear . . . may serve a declaration in ejectment on the tenant in possession . . . and such service shall in lieu of a demand and reentry." Va. Code Ann. § 55-239; *Pence v. Tidewater Townsite Corp.*, 103 S.E. 694, 696 (1920) ("But in modern practice the forfeiture is usually enforced by the action of ejectment; and in order to bring this action no actual entry is required at common law, and it is dispensed with by the provisions of the statutory action."). Nonetheless, there is no indication in the present case that Davis took any action that operated as a legal substitute for re-entry by Davis. Other than the single letter which was legally insufficient to constitute a notice of termination because of its ambiguity, no declaration was served; nor did Davis commence a detainer action. Consequently, due to the lack of re-entry or its legal substitute, the lease did not terminate prior to the Debtor's bankruptcy filing. Because this argument is the sole basis of Davis' stay relief motion, it must be denied.

III.

In accordance with the foregoing, the court will, contemporaneously with the filing of this memorandum opinion, enter an order denying Davis' motion for relief from stay.

# # #