**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| APPALACHIAN OIL COMPANY, INC. | * | CASE NO. 2:09-bk-50259 |
| | * | Chapter 11 |
| Debtor | * | |

**ORDER AUTHORIZING AND APPROVING (1) EXECUTION AND DELIVERY OF ASSET PURCHASE AGREEMENT, (2) SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES TO FLORIDA SUNSHINE INVESTMENTS I, INC. PURSUANT TO 11 U.S.C. § 363, (3) THE ASSUMPTION AND ASSIGNMENT TO FLORIDA SUNSHINE INVESTMENTS I, INC. OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH SALE PURSUANT TO 11 U.S.C. § 365; (4) EXECUTION AND DELIVERY OF A MANAGEMENT AGREEMENT BETWEEN DEBTOR AND FLORIDA SUNSHINE INVESTMENTS I, INC., AND (5) EXCUTION AND DELIVERY OF ALL DOCUMENTS AND AGREEMENTS <u>NECESSARY AND APPROPRIATE TO IMPLEMENT THE TERMS</u>**

Now on this 1st day of September, 2009, this matter having come before the

Court the Debtor's *Motion to: Sell Property and Assume and Assign Executory Contracts and*

*Unexpired Leases Free and Clear of Liens and Encumbrances; (2) Amend Sale Procedures; and (3) Authorize Debtor to Enter into Management Agreement* (the "Motion")[1], filed on August 25, 2009 in the above captioned Chapter 11 case (the "Bankruptcy Case"), which seeks, *inter alia*, seeks (a) authorization and approval for the Debtor to execute and deliver a proposed purchase and sale agreement as filed with the Motion (the "Purchase Agreement") with Florida Sunshine Investments, I, Inc. **("FSI")** for substantially all of the Debtor's assets other than excluded assets, if any, (the "Assets"); (b) authorization to consummate the sale of the Assets free and clear of all liens, claims, encumbrances, and other interests (the "Transaction"); (c) authorization to assume and assign certain executory contracts and unexpired leases in connection with the Transaction to FSI; (d) authorization to amend sale procedures; and (e) authorization for the Debtor to enter into and the approval of a management agreement between the Debtor and FSI. For purposes of this Order and the Agreement, FSI shall mean FSI and/or each newly organized limited liability company designated by FSI to hold and/or manage the acquired assets.[2] Notice, as approved by this Court, having been served on all parties in interest; the Court on September 1, 2009, having conducted and having held a hearing and heard the testimony of the Debtor and other parties in interest (the "Sale Hearing"), having considered the evidence and argument presented at such hearing and having considered the files and records herein and having heard statements of the parties and/or their counsel, and good cause appearing therefor:

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion or the Purchase Agreement as applicable.

[2] FSI's designees shall include but not be limited to: Sunshine Energy Kentucky I, LLC; Sunshine Energy Virginia I, LLC; Sunshine Energy Tennessee I, LLC; Sunshine Energy Tennessee II, LLC; Sunshine RE Tennessee I, LLC; Sunshine RE Tennessee II, LLC; Sunshine RE Kentucky I, LLC,; Sunshine RE Virginia I, LLC and Sunshine Management, LLC.

**NOW, THEREFORE, THE COURT HEREBY FINDS THAT**:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought in the Motion are sections l05(a), 362, 363(b), (f), (m), and (n), 365, and 1146(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. Notice of the Motion having been given as described above is adequate under the circumstances.

5. All parties have been afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Assets.

6. Based on the evidence presented at the Sale Hearing, through extensive marketing efforts undertaken for several months prior to the commencement of the Bankruptcy Case, the Debtor conducted an extensive, good faith, arm's length private marketing of the Assets involving numerous potential purchasers, affording interested potential purchasers a full, fair, and reasonable opportunity to make an offer to purchase the Assets.

7. The marketing process was non-collusive, fair and reasonable, conducted in good faith and resulted in the Debtor obtaining the highest value for the Assets. The consideration to be paid by FSI pursuant to the Purchase Agreement (i) is fair, reasonable and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and any state, territory, possession, and the District of

Columbia, (ii) is the highest and best offer for the Assets, and (iii) will provide a greater recovery to the Debtor's creditors than would be provided by any other practical, available alternative. The terms and conditions of the Purchase Agreement are also fair and reasonable.

8. A reasonable opportunity to object or be heard with respect to the Sale Motion and relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Assets in accordance with the Bid Procedures, has been afforded to all parties-in-interest.

9. FSI (the "Purchaser") as permitted by the terms of the Bid Procedures has acted in good faith and is a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code.

10. The Debtor has reasonably exercised its sound business judgment in deciding to enter into the Purchase Agreement and to sell and transfer the Assets and to sell, assume and assign the Leases, Sub-Leases, Dealer Service Agreements and other executory contracts to the Purchaser. The relief requested in the Sale Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest.

11. The Debtor (i) has full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale of the Assets and all of the other aspects of the Transaction have been duly and validly authorized by all necessary corporate action of the Debtor, (ii) has all of the corporate power and authority necessary to consummate the Transaction, (iii) has taken all corporate action necessary to authorize and approve the Purchase Agreement, all other documents contemplated thereby, and the consummation by the Debtor of the Transaction, and (iv) other than the consent of this Court, no consents or approvals are required for the Debtor or Purchaser to consummate the Transaction.

12. The Purchaser would not have agreed to the sale expressed in the Purchase Agreement and would not consummate the Transaction if the sale of the Assets to the Purchaser or the assumption of the applicable assumed real estate Leases, Sub-leases and Dealer Supply Agreements were not free and clear of all encumbrances and liabilities of any kind or nature whatsoever, except for the specifically assumed liabilities, if any, or if the Purchaser would, or in the future could, be liable for any encumbrances or liabilities, including, but not limited to any theories of successor liability (the "Successor Liabilities"): including without limitation (1) any employee, worker's compensation, occupational disease or unemployment or temporary disability related claims, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the Worker Adjustment and Retraining Act, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act of 1967, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with the Debtor or any predecessors; (2) any products liability or similar claims, whether pursuant to any state or federal laws or otherwise, including, without limitation, asbestos-related claims; (3) environmental or other claims or liens arising from conditions first existing on or prior to the date of entry of this Order (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statute; (4) any bulk

sales or similar law; and (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended.

13. With respect to any and all entities holding a lien or other encumbrance against the Assets, either (i) such entity consented to the sale with the lien or other encumbrance attaching to the proceeds of such sale, (ii) applicable non-bankruptcy law permits the sale free and clear of such lien or other encumbrance, (iii) such lien or other encumbrance is in bona fide dispute, or (iv) such entity could be compelled to accept a money satisfaction of such lien or other encumbrance, so that the conditions of Section 363(f) of the Bankruptcy Code have been met.

14. Any lien or other encumbrance may be discharged under Section 1141(c) of the Bankruptcy Code, so that the Assets can be sold free and clear of those liens or other encumbrances under Section 105(a) of the Bankruptcy Code.

15. The Purchaser has provided adequate assurance of its future performance within the meaning of Sections 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code under any executory contracts or unexpired leases designated by Purchaser for assumption and assignment along with the Assets.

16. The Debtor is a party to numerous, leases and sub-leases for its convenience store locations which are being assumed by the Purchaser. Each of these locations are subject to numerous licenses and permits issued by various state and local agencies, including licenses and permits providing authorization to transact business in a particular state, off-premises beer permits and other permits necessary to dispense store petroleum products. As part of this Transaction as set forth in the Purchase Agreement, the Debtor further requests approval to enter into a management agreement under which the Debtor will allow FSI to utilize all permits,

licenses,, insurance and employees of Debtor for a defined period of time until such items can be reissued in the name of FSI, and Debtor's employees that are employed by FSI become FSI's employees.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.   The Sale Motion is granted. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled are hereby overruled on the merits with prejudice for the reasons set forth on the record and as set forth herein.

B.   All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

C.   The Purchase Agreement and the consideration for the purchase of the Assets as therein set forth is hereby approved in all respects and shall be deemed in full force and effect, binding and benefiting the Debtor and the Purchaser. The Purchase Agreement shall not be subject to rejection.

D.   Pursuant to the provisions of §§ 105 and 363 of the Bankruptcy Code, the Debtor is authorized, empowered and directed to implement and consummate all aspects of the Transaction with the Purchaser, to sell the Assets, assume and assign the Purchaser pursuant to § 365 of the Bankruptcy Code any and all the Leases, Subleases, Dealer Supply Agreements, and assumed contracts, including but not limited to those identified in Exhibit 2 to the Sale Motion which is incorporated herein, and/or as referred to or identified in the Purchase Agreement, pay the Cure Amounts in the amounts determined by the Court, the payment of which Cure Amounts

are and shall be and remain the sole and exclusive responsibility of Debtor, all for the purchase price set forth in and determined in accordance with the Purchase Agreement (the "Purchase Price").

E.  Pursuant to 11 U.S.C. § 363(f) and this Court's general equitable powers under 11 U.S.C. § 105(a), upon the entry of this Order and the Transaction shall close and the Purchaser shall take title to and possession of the Assets (other than the Excluded Assets) free and clear of any and all liens, claims, liabilities, interests or encumbrances.  The transfer of the Assets shall be free and clear of any and all liens, claims, liabilities, interests and encumbrances whatsoever,  including but not limited to the claim of Greystone Business Credit II, L.L.C. ("Greystone") and other secured creditors or tax claimants whose claims could act as liens on the Assets, whether such claims are contingent, unliquidated, unmatured or otherwise, and whether of or against the Debtor, the Purchaser or the Assets, including, without limitation: (a) any demands or claims of creditors of, or claimants against, the Debtor; (b) any interests of shareholders or other interests in the Debtor; and (c) any person claiming through, by or on behalf of the Debtor, whether such claim, demand, lien, or interest be direct or indirect, known or unknown, or claiming that Purchaser is a successor, successor-in-interest or pursuant to any other theory including the Successor Liabilities.  All other such liens, claims, liabilities, interests and encumbrances as set forth above, **shall attach solely to the net proceeds of the Transaction** with the same validity and priority as they attached to the applicable Assets.

F.  Except for any assumed liabilities expressly provided for in the Motion, this Order or the Purchase Agreement, Purchaser shall not have any liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the

Purchase Agreement, Purchaser shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, the Successor Liabilities, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the entry of this Order, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the date of entry of this Order, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the applicable Assets prior to the date of the entry of this Order.

G. All entities who are presently, or on the date of the entry of this Order that may be, in possession of some or all of the Assets, are hereby directed to surrender possession of the Assets either (a) to the Debtor prior to the date of the entry of this Order, for subsequent transfer to Purchaser on the on the date of entry of this Order, or (b) to Purchaser on or after the date of entry of this Order.

H. Purchaser has given substantial consideration under the Purchase Agreement which consideration will benefit the holders of any liens or other encumbrances. The consideration given by Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of Purchaser, which releases shall be deemed to have been given in favor of Purchaser by all holders of Liabilities and liens, claims or other encumbrances against the Debtor or the applicable Assets.

I. Effective on the date of entry of this Order, all persons and entities, to the extent allowed by law, are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative,

arbitral or other proceeding against the Purchaser, its successor and assigns, or the Assets, based upon or with respect to any interest, claim, and liability of which the sale of the Assets is free and clear under the terms of this Order. Without limiting the generality of the foregoing, and except as set forth in the Purchase Agreement, the Purchaser shall not assume or be obligated to pay, perform or otherwise discharge any:

(i) Workers' compensation debts, obligations and liabilities of the Debtor arising pursuant to state law or otherwise, including, but without limitation, workers' compensation claims or suits of any type, whether known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination or other incidents, acts of injuries prior to the date of the entry of this Order, including, without limitation, any workers' compensation claims filed to or to be filed, or reopenings of those claims, by or on behalf of any of the Debtor's current or former employees, persons laid-off, inactive or retired status, or their respective dependants, heirs or assigns, as well as any and all premiums, assessments or other obligations of any nature whatsoever of the Debtor relating in any way to workers' compensation liability; and

(ii) Debts, obligations and liabilities of the Debtor arising pursuant to the Debtor's ownership or operation of the Assets prior to the date of the entry of this Order, including, without limitation, any Successor Liabilities;

J. Purchaser does not constitute a successor to the Debtor because:

(i) Except as otherwise set forth in the Purchase Agreement, Purchaser is not expressly or impliedly agreeing to assume any of the Debtor's liabilities or debts;

(ii) The transaction contemplated by the Purchase Agreement does not amount to a consolidation, merger or de facto merger of Debtor and Purchaser;

(iii) Purchaser is not merely a continuation of the Debtor; and

(iv) The transaction contemplated by the Purchase Agreement is not being entered into fraudulently or in order to escape liability from the Debtor's debts.

K. Any amounts that become payable by the Debtor to Purchaser pursuant to the Purchase Agreement (and related agreements executed in connection therewith) as of the date of the entry of the Order shall constitute allowed administrative expenses of the Debtor's estate and shall be paid by the Debtor in the time and manner provided for in the Purchase Agreement.

L. The Debtor has established sound business justifications in support of the Transaction. After considering the circumstances of this case, the Court determines that the Purchase Price, having been arrived at after extensive negotiations and the failure of prior sale proposals, presents the best opportunity for the Debtor's estate to realize the highest distribution possible to all creditors. The Purchase Price, as approved herein, is the highest and best offer for the Assets. The Purchase Price constitutes full and adequate consideration and reasonably equivalent value for the Assets. The transfer of the Assets on the date of the entry of this Order to Purchaser for the Purchase Price is in the best interest of the Debtor's estate, its creditors and all parties-in-interest.

M. The Purchase Agreement must be approved and consummated promptly in order to preserve the viability and value of the Debtor's business as a going concern.

N. The Management Agreement must be approved and consummated promptly in order to preserve the viability and value of the Debtor's business as a going concern, and to maintain the ability of the Purchaser to use the Assets while new permits and licenses are obtained.

O. The Debtor has carried the burden of demonstrating that the proposed sale will aid the Debtor's liquidation and/or reorganization and that the Debtor has met the established standards regarding sales outside the ordinary course of business pursuant to 11 U.S.C. §363(b)(1).

P. The transactions contemplated in the Sale Motion, as approved and implemented herein, are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, including but not limited to Sections 363(b), (f) and (m) and Section 365. The terms and conditions of the sale of the Assets, and the assumption and assignment of the Leases, Sub-leases, Dealer Supply Agreements and other executory contract and the other transactions approved by this Order are fair and reasonable.

Q. The Transaction contemplated by the Purchase Agreement does not constitute a *sub rosa* plan of reorganization. The Transaction outside of a plan of reorganization pursuant to the Purchase Agreement does not specify the terms under which a reorganization plan of the Debtor is to be adopted, or otherwise affect the claims of any parties-in-interest against the Debtor, and does not bind any parties or creditor constituencies under any future plan of reorganization to be promulgated by the Debtor.

R. For good and valid reasons, the Court may authorize and approve a sale of assets of the Debtor pursuant to Section 363(b) of the Bankruptcy Code without the necessity of following the procedures and making the findings required for confirmation of a plan of reorganization. Such relief is within the sound discretion of the Court in light of the existing business exigencies of the Debtor's bankruptcy case, and is both justified and appropriate in light of the legitimate and compelling reasons stated in the Sale Motion. The relief requested in the Motion at this time prior to, and outside of, a plan of reorganization is further justified by the compelling circumstances described in the Motion, including the Debtor's conclusion that it is

likely not able to sustain further losses on operations while a formal reorganization process takes place. Accordingly, the entry of this Order and the approval of (a) the Transaction and the (b) assumption and assignment of any Leases, Sub-leases, Dealer Supply Agreements and other executory contract to Purchaser under the Purchase Agreement, pursuant to Bankruptcy Code §§ 363(b), 363(f), and 365, are necessary and appropriate to maximize the value of the Debtor's estate.

S. Purchaser is a third party purchaser unrelated to the Debtor, and the terms of Purchaser's purchase of the Assets as set forth in the Purchase Agreement are fair and reasonable under the circumstances of this case. Purchaser is not an "insider" or an "affiliate" of the Debtor, as such terms are defined in Bankruptcy Code § 101, and is completely unrelated to the Debtor. The Purchase Price was not controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code § 363(n). The Purchase Agreement was negotiated and proposed, and will be entered into, by the Debtor and Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtor nor the Purchaser engaged in any conduct that would cause or permit the Purchase Agreement or any part of the Transactions to be avoided under Bankruptcy Code § 363(n).

T. The transfer of the Assets to Purchaser represents an arm's-length transaction and has been negotiated in good faith between the parties. Purchaser has acted in good faith with respect to all aspects of the Transaction and, as transferee of the Debtor's property, is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code. See *In re Lady H Coal Co., Inc.*, 193 BR. 233, 244 (Bankr. S.D.W.V. 1996), (citing *In re Abbots Dairies, Inc.*, 788 F.2d 143 (3d Cir. 1986)). Assuming that no validly entered stay is in place at the time of the entry of

this Order, the protections of section 363(m) shall apply to Purchaser regardless of whether this Order or any authorization contained herein is reversed or modified on appeal. Purchaser has proceeded in good faith in all respects in connection with this proceeding in that:

(i) Purchaser recognized that that Debtor was free to deal with any other party interested in acquiring the Assets that complied with the Bidding Procedures and made a qualifying bid;

(ii) All payments to be made by Purchaser in connection with the transaction have been disclosed; and

(iii) Purchaser has not violated Section 363(n) of the Bankruptcy Code by any action or inaction.

U. Subject to the fulfillment of the terms and conditions of the Purchase Agreement, and pursuant to this Order the Debtor will sell, transfer, assign and convey to the Purchaser and/or its assigns all of the Debtor's rights, title and interest in, to and under the Assets (other than the Excluded Assets), including without limitation the right to enforce any rights it has, in any contract, Lease, Sub-Lease, Dealer Supply Agreement or otherwise, to preservation of the Assets, including non-competition and non-solicitation clauses, to the extent such clauses are enforceable by their terms. The Debtor is authorized, empowered and hereby directed to deliver special warranty deeds, bills of sale, assignments and other such documentation that may be necessary **or requested** by Purchaser in accordance with the terms of the Purchase Agreement to evidence the transfers and assignments required herein on or effective as of the date of the entry of this Order with such documentation to be finalized as soon after the entry of this Order as is practicable.

V. Debtor is authorized pursuant to the Management Agreement approved by this Order to operate for and on behalf of the Purchaser under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the relevant Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are directed to be transferred to Purchaser as required or contemplated by the Purchase Agreement and the Management Agreement

W. This Order is and shall be binding upon and govern the acts of all entities to the extent allowed by law, including, without limitation, all administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement. A certified copy of this Order may be filed with the appropriate Clerk and/or recorded with the Recorder to act to cancel the liens and encumbrances of record and/or to publish Purchaser's interests in such Assets.

X. Purchaser shall pay the Purchase Price as required by the Purchase Agreement.

Y. The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order.

Z. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance

with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

  AA. That the net proceeds generated by the sale of the Debtor's assets and the assignment of the Leases, Sub-Leases, Dealer Supply Agreements and other contracts to FSI, determined by the purchase price less certain sale expenses including, without limitation, the commission due NRC Realty, the amount necessary to cure the defaults under the Assumed Leases and other miscellaneous transaction expenses approved by Greystone, shall be paid to Greystone in payment of the DIP obligations of the Debtor under the post-petition DIP Facility or in satisfaction of Greystone's superpriority lien as described and approved by the Court in Final Order Authorizing Debtor in Possession Financing and Use of Cash Collateral [Document No. 242], Amendment to Final Order Authorizing Debtor in Possession Financing and Use of Cash Collateral [Document No. 418], Second Amendment to Final Order Authorizing Debtor in Possession Financing and Use of Cash Collateral [Document No. 471], Third Amendment to Final Order Authorizing Debtor in Possession Financing and Use of Cash Collateral and Amendment of Settlement Order (the "Third Amendment") [Document No. 553], and Fourth Amendment to Final Order Authorizing Debtor in Possession Financing and Use of Cash Collateral [Document 566], subject to the rights and interests, if any, of the Official Committee of Unsecured Creditors under Order Approving Compromise and Settlement By and Among Debtor, Official Committee of Unsecured Creditors, Greystone Business Credit II, L.L.C., Former Shareholders, and Landlords [Document No. 461], as amended by the Third Amendment.

  BB. Except with respect to the commission due NRC Realty that is to be paid as described in "AA" above, there were no brokers involved with the negotiation or consummation

of the Purchase Agreement, and, therefore, neither the Debtor nor Purchaser shall be liable for any brokers' commissions.

CC. This Court shall retain jurisdiction over this transaction for purposes of enforcing the provisions of this Order and the Purchase Agreement.

DD. As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry. Time is of the essence in closing the Transactions, and the Debtors and Purchaser intend to close the Transaction upon the entry of this Order. Therefore, any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot. Pursuant to Rule 6004(h) and 6006(d), this Order shall not be stayed for 10 days after the entry hereof, but instead shall be effective and enforceable immediately upon entry.

EE. The Clerk is directed to transmit copies of the Order to the parties in interest.

# # #


**APPROVED FOR ENTRY:**

*s/ Mark S. Dessauer*
Mark S. Dessauer, Esq.
TN BPR NO. 010421
HUNTER, SMITH & DAVIS, LLP
Post Office Box 3740
Kingsport, Tennessee 37664
E-mail: dessauer@hsdlaw.com
(423) 378-8840; Fax: (423) 378-8801
Attorney for Debtor