**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
(Greeneville Division)**

| | | |
|---|---|---|
| In re: | * | Chapter 11 |
| | * | |
| **APPALACHIAN OIL COMPANY, INC.,** | * | Case No. 2:09-bk-50259 |
| Debtor. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
OBJECTION TO DEBTOR'S PLAN OF LIQUIDATION**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy case of Appalachian Oil Company, Inc. ("APPCO" or the "Debtor"), the above-captioned debtor and debtor-in-possession, by and through its undersigned counsel, files this Objection (the "Objection") to the Debtor's proposed Plan of Liquidation (the "Plan") and in support thereof, states as follows.

**Introduction**

1. The Debtor's proposed Plan seeks to prohibit distributions to unsecured creditors until, *inter alia*, a determination is made with respect to the Debtor's ability to pay Administrative Claims and Priority Claims. The Debtor's proposed treatment to unsecured creditors is in violation of this Court's prior Order that created a separate fund to be used exclusively for distributions to unsecured creditors and for the Committee's professional fees. The Debtor now seeks to use the plan process to thwart the Court approved, extensively negotiated global settlement between the Debtor, the Committee, the Debtor's secured lender, certain of the Debtor's major landlords, and the Debtor's former shareholders. Because the

Plan's proposed treatment to unsecured creditors violates the Court's prior final order, the Plan fails to satisfy § 1129(a)(3) of the Bankruptcy Code and should not be confirmed in its current form.

**Background**

2. On June 10, 2009, the Court entered an Order Approving Compromise and Settlement by and Among Debtor, Official Committee of Unsecured Creditors, Greystone Business Credit II, L.L.C., Former Shareholders, and Landlords (the "Settlement Order"). The Settlement Order approved an extensively negotiated global compromise and settlement by and between the Debtor, the Committee, Greystone Business Credit II, L.L.C. ("Greystone"), Management Properties, Inc. ("MPI"), MacLean, Inc. ("MacLean"), and the Jack W. Cummins, Sr. Irrevocable Trust for the Children of Jack W. Cummins, Jr., Sara G. MacLean, Inc. (the successor to the Jack W. Cummins, Sr. Irrevocable Trust for the Children of Jill C. Maclean), and the Linda R. Maclean Irrevocable Trust (collectively, the "Cummins Trust", and together with MPI and MacLean, the "Landlords"), and the Debtor's former shareholders (the "Former Shareholders").

3. Pursuant to the Settlement Order, upon the closing of the settlement agreement (as defined in the Motion for Approval of Compromise and Settlement filed with the Court on May 8, 2009 and attached thereto as an exhibit), the Former Shareholders and the Debtor directed and authorized Branch Banking and Trust Company (the "Escrow Agent") under the Escrow Agreement dated September 7, 2007 among the Debtor, Titan Global Holdings, Inc, the Former Shareholders and the Escrow Agent to release and disburse $750,000 of the monies on deposit (the "Escrow Monies") in the Escrow Fund (as defined in the Escrow Agreement) to counsel for the Committee.

4. As set forth in the Settlement Order, the Escrow Monies, upon their release or disbursement from the Escrow Fund, to the Committee, shall be segregated and held by counsel for the Committee to be used solely for distributions to general unsecured creditors and payment of approved fees and expenses of the Committee's professionals. Settlement Order at p. 3. Landlords and Former Shareholders, however, are precluded from recovering on any of their claims against the Debtor and the Debtor's estate from the Escrow Monies. Settlement Order at p. 4. Additionally, Greystone's share of any distributions made to general unsecured creditors from the Escrow Monies shall be limited to 17% of the amount distributed to general unsecured creditors from such funds. *Id.*

5. The Settlement Order also provides that, upon the closing of the settlement agreement, there shall be carved out from Greystone's liens and claims to the net sale proceeds from the sale of the assets of the Debtor's estate for the benefit of general unsecured creditors, the following amounts:

   A. $250,000 of the first proceeds in excess of $4 million of the net sale proceeds paid to Greystone;

   B. 5% of all net sale proceeds in excess of $4,250,000 until net sale proceeds of $8 million are reached;

   C. 10% of all net sale proceeds in excess of $8 million until net sale proceeds of $10 million are reached; and

   D. 5% of all net sale proceeds in excess of $10 million.

(the "Unsecured Creditor Carveout", and together with the Escrow Monies, the "Committee Fund"). Settlement Order at 5. Pursuant to the Settlement Order, the Unsecured Creditor Carveout must be set aside and paid to counsel for the Committee and used solely for distribution

to general prepetition unsecured creditors and payment of allowed fees and expenses of the Committee's professionals. Settlement Order at 6.

6.  As the result of subsequent agreements and resolution of disputes, the Unsecured Creditor Carveout was revised so that the Committee was entitled to the first of $275,000 of the first proceeds distributed to Greystone in excess of $4.5 million. Thereafter, the Committee is entitled to a percentage of sale proceeds received by Greystone over $4,750,000.

7.  Following closing of the sale of substantially all of the Debtor's assets, the Committee has received approximately $304,000 of sale proceeds.[1]

**The Disclosure Statement and the Committee's Objection Thereto**

8.  On October 2, 2009, the Debtor filed its proposed Disclosure Statement and Plan of Liquidation (the "Disclosure Statement"). Section VII.F of the Disclosure Statement provided as follows:

> The Plan proposed a liquidation of APPCO. Proceeds from the Committee Fund have by the Settlement Order been directly allocated to Claims of Unsecured Creditors and the payment of Committee professionals. If the Debtor is unable to collect sufficient monies through preference recoveries to pay Allowed Administrative Claims and Priority Claims in full, then an issue may arise under the absolute priority rule. <u>If necessary or required, the Debtor will make demand and seek recovery of these funds from the Committee for the benefit of creditors whose Claims have priority to those of Unsecured Creditors</u>.

Disclosure Statement at p. 30 (emphasis added).

---

[1] The Committee is entitled, under the Unsecured Creditor Carveout, to an additional amount of sale proceeds, in an amount in excess of $45,000, for which it has made demand on Greystone to pay.

4

9. On November 6, 2009, the Committee filed its Objection to Debtor's Disclosure Statement [Dkt. No. 768] on the grounds that the Disclosure Statement failed to state that any such action by the Debtor would violate the Settlement Order. The Committee also objected to the Disclosure Statement because it failed to disclose that the Committee would vigorously oppose any such actions and seek all appropriate remedies against the Debtor and its estate.

10. Ultimately, the Debtor agreed to add the following language to the Disclosure Statement:

> Any effort by the Debtor to seek recovery from the Committee for the payment of administrative expenses or priority claims of the bankruptcy estate will be strenuously opposed by the Committee. It is the Committee's position that any such effort by the Debtor would be a breach of the Debtor's previous agreement as set forth in the Settlement Order and a violation of the Settlement Order itself. Moreover, the Committee also takes the position that the provisions of the Settlement Order regarding the use of the Committee Fund is an integral part of the agreements that constitute the Settlement Order, which included multiple other parties, payments to other parties and releases of parties against which the Debtor had numerous claims (all of which were resolved in the Settlement Order). Thus, it is the Committee's position that any action to vacate the Settlement Order provisions relating to the Committee Fund would require unwinding of the series of interrelated settlements approved therein, including releases given, an action the Committee believes that is both legally impermissible and impractical.

**The Plan**

11. Section 7.03 of the Plan provides that the source of payment for Unsecured Creditors is the "Committee Fund" and the proceeds from preference recoveries. The "Committee Fund" is defined as the monies held by counsel for the Committee pursuant to the Settlement Order. Section 7.03 also provides that "[n]o distribution from the Committee Fund will be made until a determination is made with respect to the Debtor's ability to pay Administrative Claims and Priority Claims and all objection to Claims are resolved.

**Argument**

12. The Committee has no objection to delaying distributions to unsecured creditors until all objections to unsecured claims are resolved. However, neither the extent to which Administrative Claims and Priority Claims are paid in full, nor the extent to which Administrative Claims and Priority Claims are subject to objection and ultimately resolved, is relevant to the timing of distributions to unsecured creditors. Therefore, the Committee objects to the Plan insofar as Section 7.03 prohibits distributions to unsecured creditors before the Debtor has determined that Administrative Claims and Priority Claims have been paid in full and until all objections to Administrative Claims and Priority Claims are resolved.

13. Section 1129(a)(3) of the Bankruptcy Code provides that "[t]he court shall confirm a plan only if ... [t]he plan has been proposed in good faith and not by any means forbidden by law." The Plan's proposed treatment to unsecured creditors as set forth in Section 7.03 is clearly in violation of the Settlement Order and thus forbidden by law.

14. The settlement that the Debtor now seeks to challenge has already been approved by the Court by final order and all parties have acted in reliance on that settlement. See Ades-Berg Investors v. Breeden (In re The Bennett Funding Group, Inc.), 439 F.3d 155, 160 (2d Cir. 2006) ("'a bankruptcy court's approval of a settlement order,' pursuant to Fed. R. Bankr. P. 9019 'that brings to an end litigation between parties is a final order.'"); Adam v. Itech Oil Co. (In re Gibraltar Resources, Inc.), 210 F.3d 573, 576 (5th Cir. 2000) (same). Funds have been paid to multiple parties, in addition to the Committee, based on the Settlement Order. If the Debtor believed that it was not permissible to set aside funds for the unsecured creditors, it should not have (i) agreed to do so, and (ii) asked the Court to approve the settlement doing so. However, it did both and now suggests it can, months after the Settlement Order and reliance on the

Settlement Order by all of the parties, seek to unilaterally vacate the global settlement that it presented to the Court for approval.

15. The settlement at issue was premised upon the release of claims against former shareholders as well as claims against Greystone. The Committee, thus, released valuable rights in exchange for the settlement proceeds for the benefit of unsecured creditors. The Committee would not have entered into the settlement if not for the benefits it received under the Settlement Order. The Debtor is now asking the Court to re-write the Settlement Order, which means the entire settlement would have to be unwound and the parties put back to their original position. In addition, the Debtor also paid funds to landlords under the settlement, which funds would now have to be returned. Numerous parties have acted in reliance on, and enjoyed the benefits of, the Settlement Order, including the Debtor, because the Settlement Order was and is a final order no longer subject to appeal or revision.

WHEREFORE, the Official Committee of Unsecured Creditors respectfully requests that the Court deny confirmation of the Plan.

Respectfully submitted,

WHITEFORD, TAYLOR & PRESTON L.L.P.

/s/ John F. Carlton
Brent C. Strickland (MD#22704)
John F. Carlton (MD#06591)
Stephen B. Gerald (MD#26590)
Seven Saint Paul Street
Baltimore, Maryland 21202
Telephone: (410) 347-8700
Facsimile: (410) 725-6510
Email: bstrickland@wtplaw.com
　　　　jcarlton@wtplaw.com
　　　　sgerald@wtplaw.com

-and-

FROST BROWN TODD, LLC

John F. Teitenberg (TN#21940)
424 Church Street, Suite 1600
Nashville, Tennessee 37219-2308
Telephone: (615) 251-5550
Facsimile (615) 251-5551
Email: jteitenberg@fbtlaw.com

Douglas L. Lutz (OH#0064761)
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Telephone: (513) 651-6800
Facsimile: (513) 651-6981
Email: dlutz@fbtlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing OBJECTION TO DEBTOR'S PLAN OF LIQUIDATION was served upon all parties on the attached service list via ECF Notification on this 23rd day of March, 2010, as well as the following via U.S. Mail:

**Mark S. Dessauer**
Hunter, Smith & Davis
1212 North Eastman Road
P. O. Box 3740
Kingsport, TN 37664
(423) 378-8840
Fax : (423) 378-8801
Email: dessauer@hsdlaw.com
*Attorney for the Debtor*

Glenn B. Rose
Harwell Howard Hyne Gabbert & Manner, P.C.
315 Deaderick Street, Suite 1800
Nashville, TN 37238
Telephone: 615-256-0500
Facsimile: 615-251-1058
Email: gbr@h3gm.com
*Attorney for Greystone Credit II, LLC*

**United States Trustee**
800 Market Street, Suite 114
Howard H. Baker Jr. U.S. Courthouse
Knoxville, TN 37902

                                                /s/ John F. Teitenberg