

**SIGNED this 11 day of June, 2010.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

In re

APPALACHIAN OIL COMPANY, INC.,         No. 09-50259
                                        Chapter 11
    Debtor.

### M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Eric B. Schultenover, Esq. | Mark S. Dessauer, Esq. |
| Waller, Lansden, Dortch & Davis, LLP. | Hunter, Smith & Davis, LLP |
| 511 Union Avenue, Suite 2700 | Post Office Box 3740 |
| Nashville, Tennessee 37219 | Kingsport, Tennessee 37664 |
| *Attorney for YA Landholdings, LLC and YA Landholdings 7, LLC* | *Attorney for Appalachian Oil Company* |

**Marcia Phillips Parsons United States Bankruptcy Court**. This chapter 11 case is before the court upon the motion of YA Landholdings LLC and YA Landholdings 7 LLC, requesting that Debtor Appalachian Oil Company, Inc. be required to pay over to YA Landholdings $25,000 in business interruption insurance proceeds which the Debtor received after a fire at one of its

convenience stores. YA Landholdings asserts that because it is the owner of the realty and a named-insured under the policy and because the Debtor will no longer be operating the store and thus no longer paying rent to YA Landholdings, it would be inequitable for the Debtor to retain the insurance proceeds. Because the court disagrees as discussed hereafter, YA Landholdings' motion will be denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

I.

On February 9, 2009, Appalachian Oil Company filed a voluntary petition for bankruptcy relief under chapter 11 and is currently operating as a debtor in possession. Thereafter, on January 15, 2010, YA Landholdings filed the present motion, originally couched as a request for payment of an administrative expense claim. After YA Landholdings subsequently amended the motion, the Debtor filed a response in opposition. At a hearing on the motion held on March 2, 2010, counsel for the parties announced that there were no material facts in dispute and that the motion could be decided on stipulations and briefs. The parties filed stipulations of fact on April 12, 2010, and thereafter filed memoranda of law regarding the motion. Accordingly, the motion is ready for resolution.

From the stipulations, as well as the attached exhibits, the following facts are established:

> Pursuant to a lease agreement dated September 17, 2007, the Debtor leased certain real property and improvements in Carter County, Kentucky from YA Landholdings for the purpose of operating a convenience store, APPCO Store #80. The equipment, inventory, tanks, canopies and other leasehold improvements at the store were owned by the Debtor. Under the terms of the Lease, the Debtor was not entitled to any rent abatement, during or resulting from partial or total destruction of the leased premises. Additionally, the Debtor was required to keep in place an insurance policy covering damage or loss to the leased premises, with YA Landholdings as an loss payee under the policy. The lease did not expressly require the Debtor to maintain business interruption insurance.
>
> In accordance with the terms of the lease, the Debtor obtained an insurance

2

policy from Empire Fire and Marine Insurance and named YA Landholdings as an additional insured. A copy of the policy is attached to the parties' stipulations.

On May 20, 2009, a fire occurred at APPCO Store #80 causing significant damage and giving rise to a claim under the insurance policy. After the fire, the Debtor filed three separate claims under the policy: (a) a claim for damage to the structure; (b) a claim for loss of personal property; and (c) a claim for loss under the business interruption portion of the policy, which had a policy limit of $25,000. Empire computed the loss to the structure at $108,103.25; the loss for personal property as $15,420.32; and the business interruption loss at $25,000. YA Landholdings received the monies for the structure, the check for which had been payable to both the Debtor and YA Landholdings. The checks for both the personal property loss and the business interruption loss were made payable to the Debtor solely and were in fact paid to the Debtor.

By order entered by this court on May 21, 2009, the Debtor was granted additional time, through September 7, 2009, to assume or reject the leases of non-residential real property to which the Debtor was a party, including the lease with YA Landholdings for APPCO Store #80. On May 29, 2009, the debtor filed a motion to reject this lease. YA Landholdings did not object or otherwise file a response to the motion to reject. By order entered June 22, 2009, the motion to reject was granted and the lease was rejected effective May 31, 2009. The debtor has paid the post-petition rent due YA Landholdings under the lease through May 31, 2009, but has not operated the store since the fire.

In its reply brief filed April 26, 2010, YA Landholdings concedes that its claim that it should be paid the business interruption insurance proceeds of $25,000 "does not fall within traditional administrative claim analysis and that it really is a claim simply arising in equity." YA Landholdings' argument in this regard is essentially that the Debtor's business interruption insurance policy is to compensate for lost profits and continuing business expenses, which would include rent to YA Landholdings, and because the Debtor is no longer operating the store and thus no longer

3

incurring a rent obligation, it would be an abuse of process and an unjust enrichment to the estate for the Debtor to retain business interruption insurance proceeds for a business that it has abandoned. Characterizing the Debtor's retention of the proceeds as a conversion, YA Landholdings asserts that it has a greater claim to the insurance proceeds because it is a named insured under the policy and because it has lost rental income due to the fire and the Debtor's rejection of the lease.

II.

To the extent that YA Landholdings' claim is for an administrative expense, traditional or otherwise, it must be rejected. Section 503(b)(1)(A) of the Bankruptcy Code provides for priority in payment of administrative expenses including the "actual, necessary costs and expenses of preserving the estate . . . ." The Sixth Circuit Court of Appeals has adopted the "well-accepted 'benefit of the estate' test, which states that a debt qualifies an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate." *Pension Benefit Guaranty Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc).*, 126 F.3d 811, 816 (6th Cir. 1997). The benefit of the estate test limits administrative claims to those where the consideration for the claim was received during the postpetition period. *Id*. The benefit provided must be more than a speculative or potential benefit. *Id.* Moreover, "[s]ection 503 priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors." *In re United Trucking Serv., Inc.*, 851 F.2d 159, 164 (6th Cir. 1988).

In the present case, YA Landholdings has provided no postpetition benefit to the Debtor for which it was not paid. As previously recited, the lease with YA Landholdings was rejected effective May 31, 2009, and the Debtor paid all postpetition rent due through May 31, 2009. While the parties' stipulations of fact do not indicate when the Debtor surrendered the leased premises or otherwise ceased occupying them, there is no indication that the Debtor's occupancy extended after May 31, 2009, such that YA Landholdings would have an administrative expense claim for any occupancy period after the lease rejection date. *Cf. In re TSB, Inc.*, 302 B.R. 84, 88 (Bankr. D. Idaho 2003) (administrative expense accrued for post-rejection period after rejection of lease while trustee continued to store estate property on premises). Although the parties' September 17, 2007 lease

4

provided for a twenty-year term and no rent abatement such that the Debtor would be legally obligated to pay rent for the remainder of the lease term notwithstanding the fire, because of the bankruptcy filing and the Debtor's subsequent rejection of the lease, the rent remaining owing under the lease is paid as a rejection claim with prepetition, rather than postpetition status. *See* 11 U.S.C. § 502(g); *see also 4 Collier on Bankruptcy* ¶ 502.08 (16th ed. 2010) ("The statute itself mandates that postpetition rejection fixes the liability of the debtor, and therefore the recovery of the creditor, as of the petition date."). Accordingly, YA Landholdings' request for payment, to the extent it is premised as an administrative expense, must be denied.

The court turns now to the primary issue in this matter, whether YA Landholdings has a claim to the business interruption insurance proceeds that is superior to that of the Debtor's. In this regard, it must first be noted that YA Landholdings does not argue that it is entitled to the insurance proceeds based on the express terms of the lease or of the policy itself. With respect to the lease, the parties have stipulated that the lease did not require the Debtor to maintain business interruption insurance.[1] Regarding the policy, no argument has been made that Empire erred in not paying the business interruption insurance proceeds directly to YA Landholdings or that YA Landholdings is entitled to payment of these proceeds under the express terms of the policy.[2]

Rather, YA Landholdings' argument is an equitable one, that essentially it is not fair for the Debtor to receive these insurance proceeds because it has ceased business at this location rather than than a mere business interruption and because the proceeds include compensation for operating

---

[1] The lack of any such provision is understandable in light of the lease provision that the Debtor as tenant would not be entitled to any rent abatement notwithstanding partial or total destruction of the leased premises. YA Landholdings would not need business interruption insurance on the premises because it was entitled to the continued receipt of rent under the lease regardless of any interruption in the tenant's business.

[2] Although not stipulated by the parties, a review of the policy indicates that the business interruption coverage did not include payment of rental value, which is defined as net income that would have been earned or incurred as rental income from tenant occupancy of the premises. Had the policy included such coverage, YA Landholdings would have had an argument that it was entitled to the proceeds since it was the only named insured that earned rental income from the premises.

expenses which would include rent, even though the Debtor will no longer be making any rent payments due to the lease rejection. Taking the former point first, the distinction between a business interruption and total cessation of operations, it must be noted that the insurance policy itself does not limit coverage to insureds who resume business operations and even contemplates that an insured may decide to discontinue operations at an insured site. Paragraph 3(d) on page 5 of that policy provides that "if you do not resume operations, or do not resume operations as quickly as possible, we will pay based on the length of time it would have taken to resume operations as quickly as possible." From this language, it would appear that not only was the Debtor's decision to forego resumption of operations not invalid, but also was presumably taken into account by Empire in its payment to the Debtor.

With respect to the assertion that it is unfair for the Debtor to receive insurance proceeds that compensate for operating expenses, which presumably would include rent, even though the Debtor is no longer paying rent, the court has a couple of observations. First, the insurance proceeds paid to the Debtor for business interruption not only covered operating expenses, they also covered "net income," defined as "net profit that would have been earned or incurred." The parties' stipulations do not address how Empire arrived at its decision that the Debtor was entitled to the entire $25,000 coverage, or what portion of the $25,000 is for net income and what portion is for operating expenses. To the extent that YA Landholdings has any argument that it is entitled to the $25,000, such entitlement at most would be limited to the portion which was designed to compensate the Debtor for the rent it would have had to pay to YA Landholdings, and YA Landholdings would have no claim to the Debtor's lost profits or for reimbursement of the Debtor's other operating expenses. The failure to provide this information must be attributed to YA Landholdings because it has the burden of establishing its claim against the estate. *See In re Liberty Fibers Corp.*, 383 B.R. 713, 717 (Bankr. E.D. Tenn. 2008).

This court's second observation in this regard is that even though the $25,000 proceeds are designed to compensate in part for operating expenses, the exact wording in the policy is that coverage includes "continuing normal operating expenses incurred." As previously noted, if an insured chooses not to resume business operations, the policy limits recovery to expenses incurred prior to the date operations could have been resumed. Thus, to the extent that the $25,000 includes

6

payment for rent, the amount paid would be limited to rent for the period of time in which the premises were inoperable, rather than the remaining term of the lease. Again, no proof of this amount has been offered.

Based on the foregoing, this court is unable to conclude, as a general matter, that it would be inequitable for the Debtor to retain the business interruption insurance proceeds or that YA Landholdings has established that it has a greater claim to the proceeds than the Debtor. And, as described hereafter, with respect to the more specific equitable assertions of "abuse of process" and "unjust enrichment" mentioned by YA Landholdings in its initial brief, and its assertion in its amended motion that the Debtor "converted" property of YA Landholdings by collecting the insurance proceeds, none of these allegations provide YA Landholdings a basis for relief.

As to the abuse of process assertion, YA Landholdings argues that "[p]ermitting the Debtor to retain the $25,000 worth of proceeds from the business interruption insurance amounts to an abuse of process," and notes that this court has the authority under 11 U.S.C.§ 105(a) to prevent an abuse of process. For purposes of this section, abuse of process has been defined as "maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system." *In re Eagle-Picher Indust., Inc*., 169 B.R. 135, 138 (Bankr. S.D. Ohio 1994). To the extent that YA Landholdings is arguing that the Debtor's retention of the proceeds combined with its rejection of YA Landholdings' lease is an abuse of process, the court disagrees. The Debtor's valid exercise of its ability under the Bankruptcy Code to reject the lease does not constitute a maneuver or scheme that has the effect of undermining the integrity of the bankruptcy system, regardless of the Debtor's receipt of the insurance proceeds. Furthermore, the court notes that YA Landholdings did not object to the Debtor's rejection motion, and no request has been made that the order granting the motion be set aside. The powers granted by § 105(a) "may be exercised only in a manner consistent with the provisions of the Bankruptcy Code. That statue does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986). Accordingly, any assertion by YA Landholdings that the Debtor's retention of the $25,000 insurance proceeds amounts to an abuse of process is without merit.

YA Landholdings' unjust enrichment allegation similarly fails. In this regard, YA Landholdings states in its brief that "allowing the Debtors to retain these business interruption insurance proceeds would unjustly enrich the estate at the expense of YA Landholdings." YA Landholdings does not reference the elements of an unjust enrichment claim under state law. To the extent that Kentucky law is applicable because of the location of the leased premises, YA Landholdings must prove that a benefit was conferred upon the Debtor at YA Landholdings' expense, the resulting appreciation of the benefit by the Debtor, and the inequitable retention of the benefit by the Debtor without payment for its value. *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009). In this respect, YA Landholdings can neither satisfy the requirement that it conferred a benefit upon the Debtor or that the Debtor retained the benefit without payment for its value. The benefit conferred, the insurance proceeds, was paid by Empire pursuant to the provisions of the insurance policy for which the Debtor presumably paid the premiums. While YA Landholdings did arguably confer a benefit in agreeing to provide the leased premises, the Debtor's rejection of the lease is expressly permitted by the Bankruptcy Code as previously discussed, and also as previously addressed, the evidence presented does not establish that the insurance proceeds are directly and exclusively attributable to the Debtor's rent liability.

Lastly, as to the conversion theory, YA Landholdings makes the unsupported allegation in its amended motion that the debtor "converted property of YA by collecting insurance proceeds, including business income insurance proceeds that were intended to be used to pay the rent expense associated with the Facility, and not remitting these funds to YA. The Debtor converted these funds despite YA being an additional insured party under the Policy." Under Kentucky law, "conversion is the wrongful exercise of dominion and control over property of another." *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. App. 1990). The record in this case does not establish that the insurance proceeds were the property of YA Landholdings such that they were capable of being converted by the Debtor. The mere fact that YA Landholdings was an insured on the insurance policy does not equate with its ownership of the insurance proceeds for business interruption coverage. It was the Debtor, not YA Landholdings, that operated a business at the leased site; it was the Debtor whose business was interrupted by the fire; and it was the Debtor that purchased the insurance policy providing for business interruption coverage. While the lease

8

agreement did require that the Debtor obtain insurance on the structure and that YA Landholdings be an additional insured, there was no requirement under the lease that the Debtor obtain business interruption insurance, or that YA Landholdings be a covered insured in the event the Debtor chose to purchase such a policy.  In fact, Empire implicitly recognized the Debtor's contractual entitlement to the proceeds and YA Landholdings' lack of any interest therein by issuing the check solely to the Debtor.  Accordingly, YA Landholdings' conversion argument must be rejected.

### III.

The bottom line in this case is that YA Landholdings is simply unhappy that the Debtor has received these insurance proceeds, which YA Landholdings sees as a windfall, while at the same time rejecting its lease and limiting its claim for future rents to unsecured status.  Although the court can sympathize with the position in which YA Landholdings has found itself, there is no basis for the court to order the proceeds to be paid to YA Landholdings.  YA Landholdings has no greater claim to the proceeds than any other unsecured creditor.  Consequently, YA Landholdings' motion for an order approving administrative claim must be denied.  An order will be so entered.

# # #